# Exhibit D
## to Declaration of Seok Ki Kim
## in Support of *Ex Parte* Application
## for Order Vacating or Modifying
## Temporary Protective Orders

## Case No. C 07-2769 JL

1  RICHARD T. BOWLES (#46234)
   DAVID W. TROTTER (# 97121)
2  BOWLES & VERNA LLP
   2121 N. California Boulevard, Suite 875
3  Walnut Creek, California 94596
   Telephone: (925) 935-3300
4  Facsimile: (925) 935-0371

5  Attorneys for Plaintiff
   Frank Nemirofsky

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10 FRANK NEMIROFSKY,                    Case No. 07-463428

11      Plaintiff,                      MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
12 v.                                   PLAINTIFF'S EX PARTE APPLICATION
                                        FOR RIGHT TO ATTACH ORDER AND
13 SEOK KI KIM; STV ASIA, Ltd., a British Virgin   ORDER FOR ISSUANCE OF WRIT OF
   Islands corporation; and DOES 1 through 20,     ATTACHMENT
14 Inclusive,

15      Defendants.                     Date: May 16, 2007
                                        Time: 11:00 a.m.
16                                      Dept: ___

17

18      Plaintiff Frank Nemirofsky ("Nemirofsky" or "Plaintiff") submits the following Memorandum

19 of Points and Authorities in support of his Ex Parte Application for Right to Attach Order and Order

20 for Issuance of Writ of Attachment.

21      I.    **PRELIMINARY STATEMENT.**

22      Plaintiff brings this action against Defendants SEOK KI KIM ("KIM") and STV ASIA,

23 LTD.("STV ASIA") for breach of contract, fraud, conversion, breach of fiduciary duty and imposition

24 of a constructive trust. The operative facts are set forth in the Complaint filed herewith, and in the

25 Declaration of Frank Nemirofsky, filed herewith ("Nemirofsky Decl."), and the Supplemental

26 Declaration of Frank Nemirofsky, filed herewith under seal ("Nemirofsky Supp. Decl."). By this

27 application, Plaintiff seeks to attach $1,921,688. This amount represents 50 percent of the net recovery

28 under a patent infringement litigation settlement which Defendants have reached with PRN

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

MAY 16 2007

GORDON PARK-LI, CLERK
BY: _____
        Deputy Clerk

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-1-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION

1  Corporation ("PRN"), and in which Plaintiff has a contractual interest. These funds are owed to

2  Plaintiff under the terms of his oral contract with Defendants. These moneys either have already been

3  paid or will be paid by PRN within the next 24-48 hours to STV ASIA via the client trust account of

4  its litigation counsel, Squire, Sanders & Dempsey L.L.P. ("SSD") under the terms of the settlement

5  agreement with PRN.

6       A right to attach order and writ of attachment is vital to protect Plaintiff's interests in these

7  moneys. Defendants have recently denied and disavowed their contractual obligation to pay 50

8  percent of the net recovery to Plaintiff. Unless this Court grants this ex parte application, Plaintiff will

9  be left without any effective means of protecting his 50 percent interest in the net proceeds of the

10  settlement with PRN. STV ASIA is incorporated in the British Virgin Islands and has its principal

11  place of business in Hong Kong. It is not registered with the California Secretary of State and is not

12  qualified to do business in the State of California. Similarly, KIM is a South Korean national who

13  spends most of his time outside California. He is not a United States citizen or resident of California,

14  either.

15       Thus, absent intervention by this Court and order requiring Defendants and their counsel, SSD,

16  to retain in California Plaintiff's 50 percent share of the net recovery from PRN, there is a high

17  probability that the moneys paid by PRN will be sent by wire transfer to bank accounts maintained by

18  STV ASIA and/or KIM in foreign countries outside the United States. It was necessary to file this

19  application on an ex parte basis, without notice to Defendants, because otherwise it is highly likely that

20  Defendants would have taken immediate steps to transfer the settlement proceeds offshore before this

21  Court could take necessary actions to prevent Defendants from doing so.

22  **II.    FACTUAL BACKGROUND.**

23       Briefly, STV ASIA is the assignee of two valuable patents (the "Patents"). Plaintiff was the

24  inventor of one of the patents, issued on May 2, 1995, for a unique "Video Media Distribution

25  Network Apparatus and Method", allowing video programs (usually advertisements) to be transmitted

26  from a distribution center to a multitude of receiving sites, typically retail stores, dispersed over a wide

27  geographic area. Plaintiff was also instrumental in and knowledgeable concerning a second patent,

28  issued on November 9, 1999, for a "Point of Purchase Video Distribution System."

Bowles & Verna LLP
!121 N. California Blvd.
Suite 875
Walnut Creek 94596

-2-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION

1    In or about 1995, KIM acquired a controlling interest in STV ASIA. KIM is an investor and

2  investment banker, and does not have detailed technical knowledge regarding the intellectual property

3  that comprises the Patents. Thereafter, Defendants discovered that PRN was unlawfully infringing

4  upon the Patents to develop "Premier Retail Networks" at more than 5,000 retail stores located within

5  and throughout the United States.

6    On or about March 2, 2006, at KIM's direction, STV ASIA filed a patent infringement action

7  against PRN (STV Asia Ltd., Plaintiff, v. PRN Corporation and Best Buy Company, Inc., Defendants,

8  Case No. C06-1664-JCS) in the United States District Court for the Northern District of California.

9  The action is venued in the San Francisco Division of the District Court. See Nemirofsky Decl. Ex. 1.

10    In 2005, several months before the patent infringement action against PRN was filed, KIM

11  contacted Plaintiff. Over the course of several meetings which took place in Northern California, KIM

12  advised Plaintiff that he wanted Plaintiff to be "a partner" with him and STV ASIA in the

13  contemplated litigation against PRN. On behalf of Defendants, and each of them, KIM sought to

14  obtain Plaintiff's business, operational and technical advice and assistance in connection with the

15  patent infringement litigation against PRN. Because KIM did not have operational and technical

16  knowledge regarding the Patents and Plaintiff did, KIM told Plaintiff that he wanted Plaintiff to take

17  the lead in working with and advising patent litigation counsel on the lawsuit against PRN. Shortly

18  before the filing of the patent infringement lawsuit, Defendants and Plaintiff entered into an initial oral

19  agreement pursuant to which Plaintiff agreed to provide business, operational and technical advice and

20  assistance to Defendants in exchange for fifteen percent (15%) of the net recovery from PRN (i.e.,

21  after reimbursement of the costs and expenses of the litigation), plus a 50 percent interest in a new

22  "STV America" company to be formed for the purpose of using and exploiting the Patents in the

23  United States.

24    Prior to entering into the initial agreement, the parties contemplated that Plaintiff's work and

25  technical assistance would be on a limited, as needed basis. This understanding was the basis for the

26  fifteen percent (15%) share initially allocated to Plaintiff. In fact, Plaintiff provided a substantial

27  amount of critical and important technical support and assistance to Defendants in connection with the

28  litigation against PRN – significantly more time and effort than the parties had anticipated at the time

Bowles & Venia LLP
121 N. California Blvd.
Suite 375
Walnut Creek 94596

-3-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION

that they entered into the initial agreement. In or about October 2006, in recognition of the time already spent and the anticipated future time commitment and value of Plaintiff's business, operational and technical advice and assistance to Defendants, Plaintiff and KIM met and orally agreed to modify Plaintiff's compensation arrangements, consistent with the partnership between Plaintiff and Defendants, such that Plaintiff and Defendants would split any net recovery from PRN on an equal, fifty-fifty (50/50) basis, after reimbursement of the costs and expenses of the patent infringement litigation.

After entering into the modified agreement, KIM acknowledged the existence of the 50/50 split between Plaintiff and Defendants in his dealings with Plaintiff and with third parties. See Nemirofsky Decl., Exs. 2 and 3.

In April and May, 2007, the parties to the patent infringement litigation participated in mediation in San Francisco, California. As a result of said mediation, Defendants have reached an agreement in principle with PRN to settle the patent infringement litigation, and to sell STV ASIA's rights under the Patents to PRN, for a total monetary recovery of less than $5 million. Plaintiff is informed that the completion of a definitive settlement agreement resolving the patent infringement litigation against PRN is imminent – indeed, KIM has already signed the settlement agreement. See Nemirofsky Supp. Decl.

KIM has recently denied and disavowed Defendants' contractual obligation to pay fifty percent (50%) of the net settlement proceeds to Plaintiff, necessitating this lawsuit and ex parte application for writ of attachment.

## III. PLAINTIFF IS ENTITLED TO THE ATTACHMENT OF SUMS AS PRAYED FOR IN PLAINTIFF'S APPLICATION.

Code of Civil Procedure § 483.010 provides, in pertinent part:

(a)    Except as otherwise provided by statute, an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500.00) exclusive of costs, interest and attorneys' fees.

Bowles & Verna LLP
121 N. California Blvd.
Suite 875
Walnut Creek 94596

-4-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION

1    In the instance action, Nemirofksy's claim is based upon a contract between Nemirofsky and

2    Defendants, wherein it was agreed that Plaintiff and Defendants would split any net recovery from

3    PRN in the patent infringement litigation on an equal, 50/50 basis, after reimbursement of the costs and

4    expenses of that litigation. Nemirofsky Decl. ¶¶ 12-13. Defendants have reached an agreement in

5    principle with PRN to settle the litigation, and to sell STV ASIA's rights under the Patents to PRN, for

6    a total monetary recovery of less than $5 million. Complaint, ¶ 16; see Nemirofsky Supp. Decl. ¶ 3,

7    and Ex. 1 thereto. The PRN case has now settled. Indeed, KIM has already signed the Settlement

8    Agreement on behalf of STV ASIA (id., Ex. 1, at p. 12), and PRN's payment of the settlement amount

9    is imminent. Nemirofsky Supp. Decl. ¶ 2. As a consequence, Defendants now owe Plaintiff the

10    principal sum now due and owing of $1,921,688. Nemirofsky Supp. Decl. ¶¶ 4-5.

11    Code of Civil Procedure § 483.010(a) sets forth the amounts to be secured by attachment as

12    follows:

13    (1)    The amount of the defendant's indebtedness claimed by the Plaintiff

14    (2)    Any additional amount included by the court under Section 482.110.

15    The above referenced code section also provides that estimated, reasonable attorneys' fees and

16    costs, subject to the Court's discretion, may be included in an application for right to attach order.

17    Nemirofsky is entitled to attachment for the amounts stated in his accompanying Declarations.

18    Code of Civil Procedure § 484.010 provides as follows:

19    Upon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to

20    this article for a right to attach order and a writ of attachment by filing an application for the

21    order and writ with the Court in which the action is brought.

22    Code of Civil Procedure § 484.020 states:

23    The application shall be executed under oath and shall include all of the following:

24    (a)    A statement showing that the attachment is sought to secure the recovery on a claim

25    upon which an attachment may be issued.

26    (b)    A statement of the amount to be secured by the attachment.

27    (c)    A statement that the attachment is not sought for a purpose other than the recovery on

28    the claim upon which the attachment is based.

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-5-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION

1    (d)    A statement that the applicant has no information or belief that the claim is discharged

2    in a proceeding under Title 11 of the United States Code (Bankruptcy) or that the

3    prosecution of the action is stayed in a proceeding under Title 11 of the United States

4    code (Bankruptcy).

5    (e)    A description of the property to be attached under the writ of attachment and a

6    statement that the plaintiff is informed and believes that such property is subject to

7    attachment.  Where the defendant is a corporation, a reference to "all corporate property

8    which is subject to attachment pursuant to subdivision (a) of the Code of Civil

9    Procedure Section 487.010" satisfies the requirements of this subdivision, a reference to

10    "all property of the partnership or other unincorporated association which is subject to

11    attachment pursuant to subdivision (b) of the Code of Civil Procedure Section 487.010"

12    satisfies the requirements of this subdivision.  Where the defendant is a natural person,

13    the description of the property shall be reasonably adequate to permit the defendant to

14    identify the specific property sought to be attached.

15    The aforementioned requirements have all been satisfied with the filing of this ex parte

16 Application for Writ of Attachment.  Plaintiff has established by a preponderance of the evidence, as

17 set forth in the Declaration and Supplemental Declaration of Frank Nemirofsky, filed concurrently

18 herewith, that Defendants are indebted to Plaintiff in the principal amount of $1,921.788.  Plaintiff is

19 thus entitled to a writ in that amount.  Nemirofsky has not been paid and it is more likely than not that

20 he will prevail should this matter proceed to trial.

21

22

23

24

25

26

27

28

Bowles & Verna LLP
121 N. California Blvd.
Suite 875
Walnut Creek 94596

-6-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION

IV.    CONCLUSION

Nemirofsky has established that he is entitled to the issuance of a right to attach order and an order for issuance of a writ of attachment. Nemirofsky has complied with all prerequisites for the issuance of such orders. As such, request is respectfully made that this Court issue its Right to Attach Order and Order for Issuance of a Writ of Attachment in the amount of $1,921,788.

DATED:  May 16, 2007                        Respectfully submitted,

BOWLES & VERNA LLP


By _____
RICHARD T. BOWLES
DAVID W. TROTTER
Attorneys for Plaintiff
Frank Nemirofsky

Bowles & Verna LLP
121 N. California Blvd.
Suite 875
Walnut Creek 94596

-7-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION

COPY

1    RICHARD T. BOWLES (#46234)
     DAVID W. TROTTER (# 97121)
2    BOWLES & VERNA LLP
     2121 N. California Boulevard, Suite 875
3    Walnut Creek, California 94596
     Telephone: (925) 935-3300
4    Facsimile: (925) 935-0371

5    Attorneys for Plaintiff
     Frank Nemirofsky

6

7

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

MAY 1 6 2007

GORDON PARK-LI, CLERK
BY: _____
Deputy Clerk

8            SUPERIOR COURT OF CALIFORNIA

9              COUNTY OF SAN FRANCISCO

10   FRANK NEMIROFSKY,

11        Plaintiff,

12   v.

13   SEOK KI KIM; STV ASIA, LTD., a British
     Virgin Islands corporation; and DOES 1 through
14   20, Inclusive,

15        Defendants.

16

17

18

19

| Case No.: |
| **DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT** |

Date: May 16, 2007
Time: 11:00 a.m.
Dept.: ___

20

21      I, Frank Nemirofsky, declare as follows:

22      1.     I am the Plaintiff in this lawsuit. I make this Declaration in support of Plaintiff's ex

23 parte application for a right to attach order and order for issuance of a writ of attachment. I have

24 personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and

25 would competently testify thereto.

26      2.     I reside and do business in Contra Costa County, California.

27      3.     I am an inventor. On August 7, 1992, I filed Application No. 926,664 in the United

28 States Patent and Trademark Office for the patenting of a unique "Video Media Distribution Network

Bowles & Verna LLP
21 N. California Blvd.
Suite 875
Walnut Creek 94596

-1-

DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION
FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

1  Apparatus and Method", allowing video programs (usually advertisements) to be transmitted from a

2  distribution center to a multitude of receiving sites, typically retail stores, dispersed over a wide

3  geographic area. On May 2, 1995, the United States Patent and Trademark Office issued U.S. Patent

4  No. 5,412,416 ("the '416 Patent") to me for said invention.

5          4.      On November 9, 1999, the United States Patent and Trademark Office issued U.S.

6  Patent No. 5,983,069, entitled "Point of Purchase Video Distribution System" ("the '069 Patent"). I

7  was instrumental in obtaining and am knowledgeable concerning the '069 Patent.

8          5.      Defendant STV ASIA, LTD. (hereinafter, "STV ASIA") is the assignee of the '416

9  Patent and the '069 Patent (collectively, the "Patents").

10         6.      In or about 1995, Defendant SEOK KI KIM (hereinafter, "KIM") acquired a controlling

11  interest in STV ASIA. I have had numerous dealings with KIM since 1995. KIM is an investor and

12  investment banker. He does not have detailed technical knowledge regarding the intellectual property

13  that comprises the Patents.

14         7.      Thereafter, Defendants discovered that PRN Corporation ("PRN") was unlawfully

15  infringing on the Patents to develop "Premier Retail Networks" at more than 5,000 retail stores located

16  within and throughout the United States.

17         8.      It is my understanding that on or about March 2, 2006, at KIM's direction, STV ASIA

18  filed a patent infringement action against PRN (STV Asia Ltd., Plaintiff, v. PRN Corporation and Best

19  Buy Company, Inc., Defendants, Case No. C06-1664-JCS) in the United States District Court for the

20  Northern District of California, San Francisco Division. A true and correct copy of the Complaint filed

21  by STV ASIA (without exhibits) is attached as Exhibit 1 hereto.

22         9.      In 2005, several months before the patent infringement action against PRN was filed,

23  KIM contacted me. Over the course of several meetings which took place in Northern California, KIM

24  advised Plaintiff that he wanted me to be "a partner" with him and STV ASIA in the contemplated

25  litigation against PRN. On behalf of STV ASIA and himself, and each of them, KIM sought to obtain

26  my business, operational and technical advice and assistance in connection with the patent

27  infringement litigation against PRN. Because KIM did not have operational and technical knowledge

28

Bowles & Verna LLP
121 N. California Blvd.
Suite 875
Walnut Creek 94596

-2-

DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION
FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

1  regarding the Patents and I did, KIM told me that he wanted me to "take the lead" in working with and

2  advising patent litigation counsel on the lawsuit against PRN.

3      10.    Shortly before the filing of the patent infringement lawsuit, KIM and I entered into an

4  initial oral agreement. Pursuant to that initial contract, I agreed to provide business, operational and

5  technical advice and assistance to Defendants in exchange for fifteen percent (15%) of the net recovery

6  from PRN, after reimbursement of the costs and expenses of the litigation.

7      11.    Before KIM and I entered into the initial agreement, we discussed that my work and

8  technical assistance would be on a limited, as needed basis. This understanding was the basis for the

9  fifteen percent (15%) share initially allocated to me.

10      12.    In fact, I spent significantly more time working on and providing business, operational

11  and technical advice and assistance to Defendants in connection with the litigation against PRN than

12  KIM and I had anticipated at the time that we entered into the initial agreement. In or about October

13  2006, KIM and I met to discuss modification of my compensation arrangements. In recognition of the

14  time already spent and the anticipated future time commitment and value of my business, operational

15  and technical advice and assistance to Defendants, KIM and I orally agreed to modify the

16  compensation arrangements in a manner consistent with our partnership relationship. We agreed that

17  Defendants and I would split any net recovery from PRN on an equal, fifty-fifty (50/50) basis, after

18  reimbursement of the costs and expenses of the patent infringement litigation.

19      13.    Since we entered into the modified agreement, KIM has acknowledged the existence of

20  the 50/50 split in his dealings with me and third parties. For example, on April 14, 2007 I sent an e-

21  mail and to KIM setting forth a proposed strategy for settlement of the lawsuit against PRN. A true

22  and correct copy of my April 14, 2007 e-mail and proposal is attached as Exhibit 2 hereto. Item 7 of

23  my proposal states that the proceeds of a settlement between STV ASIA and PRN will "[b]e

24  apportioned as follows: a.) 50% S.K. Kim and associates b.) **50% Frank Nemirofsky** c.) All legal fees

25  and costs billed by [counsel] contracted by S.K. Kim and paid by S.K. Kim be deducted **before the**

26  **50%/50% split between S.K. Kim and Frank Nemirofsky.**" (Emphasis added.)

27      14.    Kim and I spoke about the matters discussed in Exhibit 2. Thereafter, I delivered a

28  memo to Kim on April 23, 2007, in which I confirmed our agreement with respect to the 50/50 split

Bowles & Verna LLP
121 N. California Blvd.
Suite 875
Walnut Creek 94596

-3-

DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION
FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

1  referral in Item 7. A true and correct copy of my April 23, 2007 memo to Kim is attached as Exhibit 3

2  hereto.

3      15.    To date, I have spent more than 2,500 hours providing business, operational and

4  technical advice and assistance to Defendants and their attorneys in connection with the patent

5  infringement litigation, in consideration of and reliance upon Defendants' promises that I would

6  receive 50 percent of the net recovery from PRN. My time has included several trips to New York and

7  Washington, D.C. to meet with a hedge fund type of law firm with possible licensees of a potential

8  "STV America" entity. I have not been reimbursed for any of my out-of-pocket expenses in

9  connection with my work for Defendants on the litigation.

10     16.    In April and May, 2007, the parties to the patent infringement litigation participated in

11  mediation in San Francisco, California. I attended the mediation sessions. As a result of the

12  mediation, Defendants have reached an agreement in principle with PRN to settlement the patent

13  infringement litigation, and to sell STV ASIA's rights under the Patents to PRN. At one time I was

14  included as a party (i.e., signatory) to the definitive settlement agreement. That is no longer the case.

15  However, the terms of the definitive settlement agreement have been disclosed and are known to me

16  by virtue of my direct and extensive involvement in the litigation pursuant to the oral agreements

17  referred to above. The financial terms of that settlement are discussed in my Supplemental Declaration

18  which is filed herewith under seal.

19     17.    It is my understanding that the completion of the definitive settlement agreement

20  resolving the patent infringement litigation against PRN is imminent. The settling parties will likely be

21  in a position to sign the settlement agreement as early as today (May 16, 2007), and will definitely sign

22  the settlement agreement before the end of this week (May 14-18, 2007). The agreement provides for

23  PRN to make the settlement payment by wire transfer no later than May 18, 2007.

24     18.    KIM has recently denied and disavowed Defendants' contractual obligation to pay me

25  50 percent of the net settlement proceeds, and has taken the position in e-mails dated May 9 and 10,

26  2007 that I should receive only 15 percent of the net recovery from PRN. These e-mails are attached

27  as exhibits to my Supplemental Declaration, filed herewith under seal.

28

Bowles & Verna LLP
121 N. California Blvd.
Suite 875
Walnut Creek 94596

-4-

DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION
FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

19.     I am extremely concerned that unless this Court grants my ex parte application for a right to attach order and issues a writ of attachment, I will be left without any effective means of protecting my 50 percent interest in the net proceeds of the settlement with PRN. My concerns are based on, among other things, the facts set forth below.

20.     I have served as a director of STV ASIA for approximately the past year. STV ASIA is incorporated in the British Virgin Islands and has its principal place of business in Hong Kong. It is my understanding that STV ASIA is not registered with the California Secretary of State and is not qualified to do business in the State of California.

21.     Similarly, KIM is a South Korean national who spends most of his time outside California. He is not a United States citizen or resident of California. It is my understanding that KIM has residences in Hong Kong, Korea and Japan.

22.     I am no longer a party to the settlement agreement between PRN and STV ASIA, and so no longer have any control over the timing of execution of the settlement agreement by all parties thereto.

23.     I was recently informed by Jim Smith of SSD that as of May 7, 2007, to his knowledge, I was not a director of STV ASIA in answer to my inquiry regarding why I was not a signatory to the settlement agreement with PRN.

24.     Absent intervention by this Court and order requiring Defendants and their counsel, Squire, Sanders & Dempsey L.L.P. ("SSD") to retain in California my 50 percent share of the net recovery from PRN, the moneys paid by PRN will be sent by wire transfer to bank accounts maintained by STV ASIA and/or KIM in foreign countries outside the United States.

25.     It was necessary to file this application on an ex parte basis, without notice to Defendants, because otherwise it is highly likely that Defendants would have taken immediate steps to transfer the settlement proceeds offshore before this Court could take necessary actions to prevent Defendants from doing so.

26.     The writ of attachment sought by this ex parte application is not sought for purposes other than the recovery on the claim upon which the attachment is based.

Bowles & Verna LLP
121 N. California Blvd.
Suite 875
Walnut Creek 94596

-5-

DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION
FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

1    27.    The claim which is the subject of this application for writ of attachment has not been

2  discharged in a proceeding under Title 11 of the United States Code (Bankruptcy).  The prosecution of

3  this action is not stayed by reason of any proceeding under Title 11 of the United States code

4  (Bankruptcy).

5    28.    Defendant Kim is engaged in the business of investment banking and in the ownership

6  and control of STV ASIA, and my claims are based on his actions in the performance of this business.

7  My claims are not based on the sale or lease of real property or on money used by Kim for personal or

8  family support.

9    I declare under penalty of perjury under the laws of the State of California that the foregoing is

10  true and correct, and that I executed this Declaration on this 16th day of May, 2007, at Walnut Creek,

11  California.

12

13  

14  Frank Nemirofsky

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bowles & Verna LLP
21 N. California Blvd.
Suite 875
Walnut Creek 94596

-6-

EXHIBIT 1

1  Deborah Bailey-Wells     (114630)
2  Kevin C. Trock          (161787)
   Harold H. Davis, Jr.    (235552)
3  KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
   Four Embarcadero Center, 10th Floor
4  San Francisco, CA 94111
   Telephone:   (415) 249-1000
5  Fax:         (415) 249-1001

6
   Thomas F. Holt, Jr.     *(Pro Hac Vice pending)*
7  KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
   75 State Street
8  Boston, MA 02109
   Telephone:   (617) 261-3100
9  Fax:         (617) 261-3175

10

11  Attorneys for Plaintiff

12

13              UNITED STATES DISTRICT COURT FOR THE

14      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

15  STV ASIA LTD.,                          Case No. C 06 1664

16              Plaintiff,                   COMPLAINT FOR DAMAGES AND
                                            INJUNCTIVE RELIEF
17      vs.
                                            PATENT INFRINGEMENT IN VIOLATION
18  PRN CORPORATION and BEST BUY            OF 35 U.S.C. § 1 et. seq.
    COMPANY, INC.,
19                                          [JURY DEMANDED]
              Defendants.
20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

SF-#107851-v1-Complaint_for_Patent_Infringement.DOC

## PLAINTIFF STV ASIA'S COMPLAINT FOR PATENT INFRINGEMENT

### THE PARTIES

1.  Plaintiff STV Asia Ltd. ("STV ASIA") is incorporated in the British Virgin Islands and has a principal place of business at Tower Two, Lippo Centre, Room 806, 8th Floor, 89 Queensway, Hong Kong.

2.  Defendant PRN Corporation ("PRN") is incorporated in the State of Delaware and has a principal place of business at 600 Harrison Street, 4th Floor, San Francisco, CA 94107.

3.  Defendant Best Buy Company, Inc. ("Best Buy") is incorporated in the State of Minnesota and has a principal place of business at 7601 Penn Avenue South, Richfield, Minnesota, 55423 and operates a retail store in this judicial district located at 1717 Harrison Street, San Francisco, CA 94103.

### JURISDICTION AND VENUE

4.  Subject matter jurisdiction is proper in this court because this is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.  This Court has personal jurisdiction over Defendants because they either reside and/or conduct business in this judicial district and in the State of California, and have committed acts of patent infringement and/or have contributed to or induced acts of patent infringement by others in this judicial district (and elsewhere in California and in the United States).

6.  Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because defendants either reside in this judicial district,  are subject to personal jurisdiction in this judicial district, regularly conduct business in this judicial district, and/or have committed certain of the acts complained of  in this judicial district.

///

///

1

## STV ASIA'S PATENTS IN SUIT

7.    On November 9, 1999, the United States Patent and Trademark Office issued U.S. Patent No. 5,983,069 entitled "Point of Purchase Video Distribution System" ("the '069 patent"). A true and correct copy of the '069 patent is attached as Exhibit A.

8.    STV ASIA is the assignee of the '069 patent and owns all right, title, and interest in and to the '069 patent with full and exclusive rights to bring suit to enforce it, including the right to recover for past infringement.

9.    On May 2, 1995, the United States Patent and Trademark Office issued U.S. Patent No. 5,412,416 entitled "Video Media Distribution Network Apparatus and Method" ("the '416 patent"). A true and correct copy of the '416 patent is attached as Exhibit B.

10.    STV ASIA is the assignee of the '416 patent and owns of all right, title, and interest in and to the '416 patent with full and exclusive rights to bring suit to enforce it, including the right to recover for past infringement.

## COUNT I
### (Patent Infringement of '069 Patent)

11.    The allegations of paragraphs 1-10 above are incorporated herein by reference.

12.    The '069 patent is valid and enforceable.

13.    Upon information and belief, in violation of 35 U.S.C. § 271, defendants make, use, offer to sell, or sell within the United States, products and/or methods that infringe the '069 patent, including, but not limited to an "in-store television network" in over 5,000 retail stores in the United States, including but not limited to, the Best Buy Store located at 1717 Harrison Street, San Francisco.

14.    Upon information and belief, in violation of 35 U.S.C. § 271, defendants also contribute to and/or induce infringement of the '069 patent.

15. Upon information and belief, defendants had knowledge of the '069 patent and have willfully and wantonly infringed the '069 patent. Defendants' willful and wanton conduct makes this an exceptional case.

16. As a result of defendants' infringement, STV ASIA has suffered and will continue to suffer damages and irreparable harm.

17. STV ASIA is entitled to recover from defendants the damages sustained by STV ASIA as a result of defendants' willful and wanton acts in an amount to be determined at trial.

18. Unless defendants are enjoined by this Court from continuing their infringement of the '069 patent, STV ASIA will suffer continued irreparable harm and impairment of the value of its patent rights. Thus, STV ASIA is entitled to an injunction against further infringement.

<u>COUNT II</u>

(Patent Infringement of '416 Patent)

19. The allegations of paragraphs 1-18 above are incorporated herein by reference.

20. The '416 patent is valid and enforceable.

21. Upon information and belief, in violation of 35 U.S.C. § 271, defendants make, use, offer to sell, or sell within the United States, products and/or methods that infringe the '416 patent, including, but not limited to an "in-store television network" in over 5,000 retail stores in the United States, including but not the Best Buy Store located at 1717 Harrison Street, San Francisco.

22. Upon information and belief, in violation of 35 U.S.C. § 271, defendants also contribute to and/or induce infringement of the '416 patent.

23. Upon information and belief, defendants had knowledge of the '416 patent and have willfully and wantonly infringed the '416 patent. Defendants' willful and wanton conduct makes this an exceptional case.

3

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1      H.    Order defendants to pay damages adequate to compensate plaintiff for

2 defendants' infringement of the '416 patent pursuant to 35 U.S.C. § 284, including an

3 accounting;

4      I.    Order defendants to file with the Court and serve upon plaintiff's counsel within

5 thirty (30) days after entry of Judgment a report in writing under oath setting forth in detail

6 the manner and form in which defendants have complied with the requirements of the

7 Injunction and Order;

8      J.    Award plaintiff treble damages pursuant to 35 U.S.C. § 284;

9      K.    Award plaintiff its attorneys fees pursuant to 35 U.S.C. 285;

10      L.    Award plaintiff prejudgment interest;

11      M.    Order defendants to pay all of plaintiff's costs associated with this action.

12      N.    Grant plaintiff such other and further relief as the Court may deem just and

13 proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, plaintiff hereby demands a jury trial on all triable issues.

Dated: March 2, 2006

KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP

By: _____
Deborah Bailey-Wells
Kevin C. Trock
Harold H. Davis, Jr.

Of Counsel:

Thomas F. Holt, Jr.

ATTORNEYS FOR PLAINTIFF
STV ASIA LTD.

5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF



**From:** Frank Nemirofsky
**Sent:** Saturday, April 14, 2007 12:17 AM
**To:** 'Seok Ki Kim'; 'S.K.Kim'; 'S.K.Kim'
**Subject:** Proposal

Dear S.K.,

I have given significant thought to how to settle the case for more than anyone is currently considering. I am satisfied that I can achieve a settlement that will in a pure business environment create an opportunity for all sides of the litigation to feel as if they all came away winning or at least not losing. If my model for settlement is accepted by all, and I think we have a real chance here, then we all have gained.

I have been offered the imprimatur of William Morris who represents PRN in assisting me. That offer alone although it will cost me something will be very important to Thomson /PRN.

I look forward to speaking with you in the morning.


Best,

Frank Nemirofsky
CEO
expHand, Inc.
One Annabel Lane
Suite 216
San Ramon, CA 94583

Office: +1 415-394-3200
Mobile: +1 415-994-6094
Fax: +1 925-806-0391

Confidentiality Notice

The attached information is PRIVILEGED AND CONFIDENTIAL and is intended only for the use of the addressee named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, please be aware that any dissemination, distribution or duplication of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, delete the message and return any printed copy of the message to us at the address above via postal service. Thank you.

I propose we engage new counsel with a goal of settlement. I have spent much more time to date then I originally anticipated when we came to our agreement on percentage and related points regarding the settlement amount. I have felt that the case management has been flawed in various manners and that the possibility of a meaningful settlement has been jeopardized in many ways that left the plaintiff in a weaker position than they need be to prosecute the case. The mediator agreed with Nemirofsky that the law firms of Morrison & Forester and Townsend and Townsend should have been sued in a related action. Neither KLNG nor S.K. Kim agreed with that strategy which potentially would have yielded immediacy to the overall set of potential litigations. There were no depositions or discovery in the case that would have also yielded immediacy and offense that the mediator stated would have been in the plaintiff's best interest. Additionally the mediator suggested the plaintiff would have been strengthened by competing in the marketplace against the defendant.

Nemirofsky is willing to use expHand technology and business to create an in-store competitor to Thomson, PRN under non-exclusive license to STV Asia for the benefit of STV Asia in its litigation and settlement with Thomson, PRN.

In my discussions with a well respected litigator who is now retired but who in the time prior to his retirement reached some of the largest jury awards in complex corporate including IP litigation matters in the United States he verified the rationale and justification for my new idea of how we should fairly split the proceeds that may come from a negotiated settlement. The following is what I believe to be the most efficient method of settlement.

1. I have full authority to negotiate on our collective behalf, in consultation with you, in person with Thomson and PRN or one or both of the entities.

2. I have a letter signed by you, on STV Asia stationary that evidences such a representation.

3. This agreement is founded on the premise that we both agree upon a new law firm to represent STV Asia and that we come to financially acceptable arrangements with such a firm and that you will pay the firm promptly. Additionally that we fully disclose the problems encountered with KLNG and its successor KL/Gates in terms of quality representation, disappointing results and the payment history issues including non-payment and potential aggressive billing by the law firm.

4. This model allows for continued discussion between us and Thomson and PRN no matter where we are physically located.

5. This model contemplates expHand entering into certain agreements with Thomson and PRN that would license or sell our IP to them.

6. This model contemplates expHand non-exclusively licensing STV Asia the expHand technology for sliding fee beginning at $2MM annually for use in the in-store environment. The $2MM not to be paid until a settlement is reached between STV Asia and Thomson. Thomson would have the right to negotiate a follow-on license with expHand if a settlement is reached between STVAsia and Thomson and PRN

7. The proceeds of a settlement between STV Asia and PRN funded by Thomson and or PRN including "hold back" amounts from the sale of PRN to Thomson. Be apportioned as follows: a.) 50% S.K. Kim and associates b.) 50% Frank Nemirofsky c.) All legal fees

and costs billed by KLNG, KL/Gates and other counsel contracted by S.K. Kim and paid by S.K. Kim be deducted before the 50%/50% split between S.K. Kim and Frank Nemirofsky. That any settlement agreement reached by a mediator, legal trial or other legal proceeding includes the agreement between S.K. Kim and Frank Nemirofsky as a term of the settlement. That the law firm representing STV Asia divide all funds received as settlement as agreed.

8. Nemirofsky be sent $100,000 as a consultancy fee, to be deducted from the settlement payment to Nemirofsky to work with new counsel and assist in developing a business plan and implementation for Thomson, PRN to understand, under confidentiality agreement what will be their competition or the potential opportunity for settlement that will, as a business model, create new and increased revenues for Thomson, RPN.

9. Today there is no compelling reason for Thomson, PRN to settle in the eight figure range as evidenced by the mediator's comments. The plan advanced by Nemirofsky has the potential to bring the settlement to the $25MM plus range.

EXHIBIT 3

Frank Nemirofsky

4-23-07

Memo to S.K.Kim Confirming Nemirofsky's 04-14-07 email to SKK

Thank you for discussing my email to you of 04-14-07. I appreciate your candor in our discussion. While I understand that you are looking to finalize the PRN litigation via mediation — I believe as we discussed you are not keeping our original premise for coming together in the litigation to seek the maximum verdict or settlement possible against PRN. Judge Infante agreed with me that Townsend and Townsend and Molo should also have been sued.

While I have lost my opportunity, it seems, to maximize a verdict or settlement amount due to your position of seeking a mediated settlement since you are undercutting the litigation and mediation I effectively have little if any impact in a final decision. While we have disagreements over mediation & settlement strategy and tactics we have agreed on the following points of my 04-14-07 email:

Numbers 1, 2, 3, 4  Number 3 contemplates us/me seeking representation by Squires, Sanders we also agreed and have previously agreed on number 7.

We did not agree on numbers 5, 6, 8 and 9 as your stated goal is not to involve crystaland

or any other new technology in any mediation or settlement.

S.K.Kim and Frank Nemirofsky directors of STVASIA agree as to these notes/memo

# SUPPLEMENTAL DECLARATION OF FRANK NEMIROFSKY FILED UNDER SEAL

# (SUBJECT TO COURT APPROVAL)

# Exhibit E
# to Declaration of Seok Ki Kim
# in Support of *Ex Parte* Application
# for Order Vacating or Modifying
# Temporary Protective Orders

## Case No. C 07-2769 JL

AT-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|

— David W. Trotter      97121
BOWLES & VERNA LLP
2121 N. California Boulevard, Suite 875
Walnut Creek, California 94596
TELEPHONE NO: (925) 935-3300    FAX NO: (925) 935-0371
ATTORNEY FOR (Name): Plaintiff

NAME OF COURT: San Francisco Superior Court
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

PLAINTIFF: Frank Nemerofsky

DEFENDANT: Seok Ki Kim and STV Asia Ltd.

**F I L E D**
San Francisco County Superior Court

MAY 1 6 2007

GORDON PARK-LI, Clerk
BY: _Mildred_
Dep'y Clerk

| TEMPORARY PROTECTIVE ORDER | CASE NUMBER: 07-463428 |
|---|---|

1. The court has considered the application of plaintiff for
   a. ☐ a right to attach order, order for issuance of writ of attachment pursuant to Chapter 4 (beginning with Code Civ. Proc., § 484.010), and a temporary protective order.
   b. ☒ an ex parte right to attach order and order for issuance of writ of attachment under Chapter 5 (begining with Code Civ. Proc., § 485.010).

**FINDINGS**

2. THE COURT FINDS
   a. Defendant is a ☒ natural person   ☐ partnership   ☐ unincorporated association   ☐ corporation
        ☐ other (specify):
   b. The amount sought to be secured by the attachment under the application for the right to attach is: $   1,921,688.00
   c. The claim upon which the application for attachment is based is one upon which an attachment may be issued under Code of Civil Procedure section 483.010.
   d. Plaintiff has established the probable validity of the claim upon which the application for the attachment is based.
   e. The order is not sought for a purpose other than the recovery upon the claim on which the application for the attachment is based.
   f. Great or irreparable injury will result to the plaintiff if this order is not issued, based on the following:
     (1) ☒ There is a danger that the property sought to be attached would be
        (a) ☒ concealed.
        (b) ☐ substantially impaired in value.
        (c) ☒ made unavailable to levy by other than concealment or substantial impairment in value.
     (2) ☐ Defendant has failed to pay the debt underlying the requested attachment and is insolvent as defined in Code of Civil Procedure section 485.010, subdivision (b)(2).
     (3) ☐ A bulk sales notice was recorded and published pursuant to Division 6 (beginning with section 6101) of the Commercial Code with respect to a bulk transfer by the defendant.
     (4) ☐ An escrow has been opened pursuant to the provisions of Business and Professions Code section 24074 with respect to the sale by the defendant of a liquor license. The liquor license number is:
     (5) ☐ Other circumstances:

   g. ☒ The requirements of Code of Civil Procedure section 485.220 are satisfied, but a temporary protective order should issue instead of an ex parte right to attach order and order for issuance of writ of attachment.
   h. Plaintiff must file an undertaking in the amount of: $ _____ before a temporary protective order shall issue, and plaintiff has filed an undertaking in that amount.
   i. The property subject to the following order is:
     Any property of the Defendant.

(Continued on reverse)

Form Approved for Optional Use
Judicial Council of California
AT-140 [Rev. January 1, 2000]
Martin Dean's Essential Forms ™

**TEMPORARY PROTECTIVE ORDER**
(Attachment)

Code of Civil Procedure,
§§ 492.030, 486.010 et seq.

Nemirofsky

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Nemirofsky v. Kim | |

2. j. ☐ The following property of defendant is inventory or farm products held for sale and may be transferred in the ordinary course of business *(specify)* :

k. ☐ Other *(specify)*:

## ORDER

3. THE COURT ORDERS

a. Defendant shall not transfer, directly or indirectly, any interest in the property described in item 2i of the findings.

b. ☐ Defendant shall not dispose of the proceeds of any transfer of inventory or farm products held for sale except under the following restrictions:

c. ☒ Other *(specify)*:   Squire, Sanders, & Dempsey LLP shall not transfer, directly or indirectly, to anyone besides the Plaintiff the property described in item 2i of the findings.

d. This order shall expire at the earliest of the following times:

(1) when plaintiff levies upon specific property described in this order,

(2) after *(date)* : *June 26, 2007*                                      , or

(3) 40 days after the issuance of this order.

4. Number of pages attached: _____

Date: *May 16, 2007*

_____                    ▶  _____
(TYPE OR PRINT NAME)                                              (SIGNATURE OF JUDGE OR COMMISSIONER)

---

**NOTICE TO DEFENDANT:** An undertaking has been filed with the court by plaintiff. You may object to the undertaking.

a. You may issue any number of checks against any of your accounts in a financial institution in this state in any amount for the following purposes:

(1) Payment of any payroll expense (including fringe benefits and taxes and premiums for workers' compensation and unemployment insurance) falling due in the ordinary course of business prior to the levy of a writ of attachment.

(2) Payment for goods thereafter delivered to you C.O.D. for use in your trade, business, or profession.

(3) Payment of taxes if payment is necessary to avoid penalties which will accrue if there is any further delay in payment.

(4) Payment of reasonable legal fees and reasonable costs and expenses required for your representation in the action.

b. In addition, you may issue any number of checks for any purpose so long as the total amount of such checks does not exceed the greater of the following:

(1) The amount by which the total amount of deposit exceeds the sum of the amount sought to be secured by the attachment and the amounts permitted to be paid pursuant to this notice.

(2) One thousand dollars ($1,000).

c. If the property is farm products held for sale or is inventory, the temporary protective order may not prohibit you from transferring the property in the ordinary course of business, but may impose appropriate restrictions on the disposition of the proceeds from such transfer.

---



[SEAL]

### CLERK'S CERTIFICATE

I certify that the foregoing is a correct copy of the original on file in my office.

Date: MAY 1 6 2007

GORDON PARK-LI

Clerk, by _____ , Deputy

AT-140 [Rev. January 1, 2000]
Martin Dean's Essential Forms ™

**TEMPORARY PROTECTIVE ORDER**
(Attachment)

Page two

Nemirofsky

AT-140

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):<br>— David W. Trotter                          97121<br>BOWLES & VERNA LLP<br>2121 N. California Boulevard, Suite 875<br>Walnut Creek, California 94596<br>TELEPHONE NO.: (925) 935-3300    FAX NO.: (925) 935-0371<br>ATTORNEY FOR (Name): Plaintiff | FOR COURT USE ONLY |

NAME OF COURT: San Francisco Superior Court
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

**F I L E D**
San Francisco County Superior Court

MAY 1 6 2007

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

PLAINTIFF: Frank Nemerofsky

DEFENDANT: Seok Ki Kim and STV Asia Ltd.

| TEMPORARY PROTECTIVE ORDER | CASE NUMBER:<br>CGC- 453428 |
|---|---|

1. The court has considered the application of plaintiff for
   a. ☐ a right to attach order, order for issuance of writ of attachment pursuant to Chapter 4 (beginning with Code Civ. Proc., § 484.010), and a temporary protective order.
   b. ☒ an ex parte right to attach order and order for issuance of writ of attachment under Chapter 5 (begining with Code Civ. Proc., § 485.010).

**FINDINGS**

2. THE COURT FINDS
   a. Defendant is a  ☐ natural person  ☐ partnership  ☐ unincorporated association  ☒ corporation
      ☐ other (specify):
   b. The amount sought to be secured by the attachment under the application for the right to attach is: $ 1,921,688.00
   c. The claim upon which the application for attachment is based is one upon which an attachment may be issued under Code of Civil Procedure section 483.010.
   d. Plaintiff has established the probable validity of the claim upon which the application for the attachment is based.
   e. The order is not sought for a purpose other than the recovery upon the claim on which the order is based.
   f. Great or irreparable injury will result to the plaintiff if this order is not issued, based on the following:
      (1) ☒ There is a danger that the property sought to be attached would be
          (a) ☒ concealed.
          (b) ☐ substantially impaired in value.
          (c) ☒ made unavailable to levy by other than concealment or substantial impairment in value.
      (2) ☐ Defendant has failed to pay the debt underlying the requested attachment and is insolvent as defined in Code of Civil Procedure section 485.010, subdivision (b)(2).
      (3) ☐ A bulk sales notice was recorded and published pursuant to Division 6 (beginning with section 6101) of the Commercial Code with respect to a bulk transfer by the defendant.
      (4) ☐ An escrow has been opened pursuant to the provisions of Business and Professions Code section 24074 with respect to the sale by the defendant of a liquor license. The liquor license number is:
      (5) ☐ Other circumstances:

   g. ☑ The requirements of Code of Civil Procedure section 485.220 are satisfied, but a temporary protective order should issue instead of an ex parte right to attach order and order for issuance of writ of attachment.
   h. Plaintiff must file an undertaking in the amount of: $                    before a temporary protective order shall issue, and plaintiff has filed an undertaking in that amount.
   i. The property subject to the following order is:
      Any property of the Defendant.

(Continued on reverse)

Form Approved for Optional Use<br>Judicial Council of California<br>AT-140 [Rev. January 1, 2000]<br>Martin Dean's Essential Forms TM

**TEMPORARY PROTECTIVE ORDER**
(Attachment)

Nemirofsky

Code of Civil Procedure,
§§ 482.030, 486.010 et seq.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| └ Nemirofsky v. Kim | |

2. j. ☐ The following property of defendant is inventory or farm products held for sale and may be transferred in the ordinary
 course of business *(specify)* :
 k. ☐ Other *(specify)*:

ORDER

3. THE COURT ORDERS

 a. Defendant shall not transfer, directly or indirectly, any interest in the property described in item 2i of the findings.

 b. ☐ Defendant shall not dispose of the proceeds of any transfer of inventory or farm products held for sale except under
 the following restrictions:

 c. ☒ Other *(specify)*: Squire, Sanders, & Dempsey LLP shall not transfer,
 directly or indirectly, to anyone besides the Plaintiff
 the property described in item 2i of the findings.

 d. This order shall expire at the earliest of the following times:
 (1) when plaintiff levies upon specific property described in this order,
 (2) after *(date)*: *June 26, 2007* , or
 (3) 40 days after the issuance of this order.

4. Number of pages attached: _____

Date: *May 16, 2007*

BRUCE E. CHAN
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF JUDGE OR COMMISSIONER)

---

**NOTICE TO DEFENDANT:** An undertaking has been filed with the court by plaintiff. You may object to the undertaking.

a. You may issue any number of checks against any of your accounts in a financial institution in this state in any amount for
 the following purposes:
 (1) Payment of any payroll expense (including fringe benefits and taxes and premiums for workers' compensation and
 unemployment insurance) falling due in the ordinary course of business prior to the levy of a writ of attachment.
 (2) Payment for goods thereafter delivered to you C.O.D. for use in your trade, business, or profession.
 (3) Payment of taxes if payment is necessary to avoid penalties which will accrue if there is any further delay in payment.
 (4) Payment of reasonable legal fees and reasonable costs and expenses required for your representation in the action.

b. In addition, you may issue any number of checks for any purpose so long as the total amount of such checks does not
 exceed the greater of the following:
 (1) The amount by which the total amount of deposit exceeds the sum of the amount sought to be secured by the
 attachment and the amounts permitted to be paid pursuant to this notice.
 (2) One thousand dollars ($1,000).

c. If the property is farm products held for sale or is inventory, the temporary protective order may not prohibit you from
 transferring the property in the ordinary course of business, but may impose appropriate restrictions on the disposition of
 the proceeds from such transfer.



[SEAL]

SUPERIOR COURT OF CALIFORNIA
EUREKA
COUNTY OF SAN FRANCISCO

CLERK'S CERTIFICATE

I certify that the foregoing is a correct copy of the original on file in my office.

Date: MAY 1 6 2007

GORDON PARK-LI, Clerk, by _____ , Deputy

WESLEY RAMIREZ

Page two

AT-140 [Rev. January 1, 2000]
Martin Dean's Essential Forms ™

TEMPORARY PROTECTIVE ORDER
(Attachment)

Nemirofsky

# Exhibit F
# to Declaration of Seok Ki Kim
# in Support of *Ex Parte* Application
# for Order Vacating or Modifying
# Temporary Protective Orders

# Case No. C 07-2769 JL

## Peter Harvey

**From:** Frank Nemirofsky [fnemirofsky@exphand.com]
**Sent:** Thursday, May 17, 2007 9:08 AM
**To:** S.K.Kim; Seok Ki Kim
**Cc:** Richard T. Bowles; Dtrotter@bowlesverna.com

Dear S.K.

You and I agreed to a 50/50 split. Over time it became more and more apparent to me that you were not going to honor any agreement you made with me. An example, you have always referred to me as your partner and I had come to an understanding that I was, including being on the Board of Directors of STV Asia. I now understand from Jim Smith that as of May 7, 2007 I am no longer listed in the Virgin Islands as a board member. Example two: I was removed as a signatory to the agreement with PRN. Example three: All decisions made as to the settlement were unilateral with you and your decisions have cost me millions of dollars.

If you want to look to resolve this dispute and rectify the inequities, I suggest that you insure that I am paid as soon as the funds are released the over $575,000 that is not disputed by you. Secondly, I suggest you meet with me and my counsel immediately to settle the matter. I would remind you that once you decided on mediation you settled the matter in a few hours this matter can be settled even faster. You have continually told me that you dislike litigation. I agree with you, but I had little choice but to protect myself and my family. I would hope we can resolve this matter very soon.

Thank you,

Frank Nemirofsky

Home + 925-838-9251

Mobile: +1 415-994-6094

Confidentiality Notice

The attached information is PRIVILEGED AND CONFIDENTIAL and is intended only for the use of the addressee named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, please be aware that any dissemination, distribution or duplication of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, delete the message and return any printed copy of the message to us at the address above via postal service. Thank you.

PCCW IMS Virus Control Center, powered by Trend Micro, scans all your attachment for known viruses.

5/31/2007