1  Jonathan M. Cohen (SBN: 168207)
   Martin Sabelli (SBN: 164772)
2  Robyn T. Callahan (SBN: 225472)
   WINSTON & STRAWN LLP
3  101 California Street
   San Francisco, CA 94111-5894
4  Telephone:    415-591-1000
   Facsimile:    415-591-1400
5  Email: jcohen@winston.com
   rcallahan@winston.com
6
   Attorneys for Plaintiff
7  FRANK NEMIROFSKY

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10               **SAN FRANCISCO DIVISION**

11 FRANK NEMIROFSKY,                    )   **Case No. 3:07-CV-02769 – JL**
                                        )   **Hon. Magistrate James Larson**
12              Plaintiff,              )
                                        )   **DECLARATION OF FRANK**
13      vs.                             )   **NEMIROFSKY IN SUPPORT OF**
                                        )   **PLAINTIFF'S *EX PARTE* MOTION TO**
14 SEOK KI KIM; STV ASIA, LTD. a British )  **EXTEND THE TEMPORARY**
   Virgin Islands corporation; and DOES 1 ) **PROTECTIVE ORDER**
15 through 20, inclusive,               )
                                        )
16              Defendants.             )   **REDACTED COPY**
                                        )   **FILED UNDER SEAL**
17                                      )
                                        )
18 ─────────────────────────────────────

19      I, Frank R. Nemirofsky, declare as follows:

20      1.      I am the Plaintiff in the above-captioned lawsuit.  I make this declaration in support

21 of Plaintiff's *Ex Parte* Motion to Extend the Temporary Protective Order.

22      2.      I have personal knowledge of the facts set forth herein and could and would

23 competently testify thereto.

24      3.      This case arises from Defendant Kim's breach of an agreement he made with me

25 regarding their partnership in the litigation of STV Asia Ltd. v. PRN Corporation and Best Buy

26 Company, Inc. ("PRN Litigation") and the distribution of the settlement funds following the

27                                    1

28    DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF
      PLAINTIFF'S *EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER
                      Case No. 3:07-CV-02769 – JL

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA 94111-5894*

1    mediation of the PRN Litigation. Attached hereto as Exhibit A is a true and correct copy of the

2    Confidential Settlement and Assignment Agreement and General Release.

3        4.    My business relationship with Mr. Kim began in or about 1991 when Mr. Kim

4    purportedly became an investor in NBL Communications, Inc. ("NBL"), the company that I co-

5    founded.

6        5.    In September of 1993, I was contacted by NBL, through Mr. Kim and J.H. Choi (the

7    CEO that Mr. Kim hand-picked), and was asked to become "partners" with them to restructure NBL

8    and to develop the StoreTelevision ("STV") Network, which would later become the basis for the

9    creation of STV Asia Ltd. I agreed to return to NBL as the Chairman of the Company under the

10   terms of my original October 1991 Contract. A temporary consulting agreement was put in place

11   and I returned to work for NBL. In reliance upon ongoing promises from Mr. Choi and Mr. Kim, I

12   continued to work pursuant to my consulting agreement awaiting the long-term executive

13   compensation agreement which had been promised by Mr. Kim as a condition for my return to NBL.

14   However, the long-term employment agreement was never put into place.

15       6.    Prior to working for NBL I invented technology for which the U.S. Patent and

16   Trademark Office issued U.S. Patent No. 5,412,416 ("416 Video Media Patent") on May 2, 1995 to

17   me exclusively for a unique "Video Media Distribution Network Apparatus and Method" which

18   allows video programs to be transmitted from a distribution center to a multitude of receiving sites,

19   typically retail stores, dispersed over a wide geographic area. While I was part of NBL, I agreed to

20   assign my rights in the Video Media invention to NBL. The assignment was contingent on my

21   ongoing partnership in NBL and in exchange for the stock ownership that I was supposed to have in

22   NBL. However, after the assignment, I was fired without cause by Mr. Kim.

# REDACTED

27       7.    During the time that I was working for NBL pursuant to the consulting agreement, I

2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  invented the technology which became patented as U.S. Patent No. 5,983,069 entitled, "Point of
2  Purchase Video Distribution System" ("069 Purchase Video Patent"), which was issued on
3  November 9, 1999, by the U.S. Patent and Trademark Office.  I was instrumental in obtaining this
4  patent and am knowledgeable about this patent.

5
6
7
8
9                                    REDACTED
10
11
12

13      8.      On March 2, 2006, at Mr. Kim's direction, after we made a joint decision to proceed,
14  STV Asia, Ltd. filed a patent infringement suit against PRN Corporation and Best Buy Company,
15  Inc. regarding the 069 Purchase Video Patent and the 416 Video Media Distribution Patent.  (STV
16  Asia, Ltd. is incorporated in the British Virgin Islands and its principal place of business in is Hong
17  Kong.)  Several months before the suit was filed Mr. Kim contacted me and asked me to be a
18  "partner" in the litigation against PRN.  Mr. Kim, lacked the operational, technical and intellectual
19  property knowledge and expertise regarding the patents at issue in the infringement action and
20  needed my expertise and advice in order to prosecute the PRN patent litigation.  Mr. Kim asked me
21  to "take the lead" in working with litigation counsel on the PRN litigation.  I viewed this as an
22  opportunity to recoup the money that I am still owed from my past business dealings with Mr. Kim
23  and the work I did for NBL.

24      9.      At the outset, Mr. Kim explained, and I agreed, that my work on the PRN litigation
25  would be on a limited, as needed basis, totaling only two to three hours per week on average.  As
26  such, prior to the filing of the patent infringement suit, Mr. Kim and I entered into an oral agreement
27  whereby I agreed to provide business, operational and technical advice and assistance to Defendants

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

3

1    and their litigation counsel in the PRN litigation in exchange for fifteen (15%) of the net recovery

2    from PRN (after reimbursement of the costs of the expenses of the litigation). In addition, the

3    modification of the PRN litigation settlement division is further documented in my April 16, 2007

4    correspondence to Mr. Kim and my follow-up April 23, 2007 memo to Mr. Kim. True and correct

5    copies of each are attached hereto as Exhibits F and G, respectively.

6        10.    From the outset of the PRN litigation, I spent significantly more time working on the

7    case than what was estimated or asked of me by Mr. Kim. (In fact, I have has spent more than 2,500

8    hours working on the PRN litigation pursuant to my agreement with Mr. Kim.)

9        11.    In or about October of 2006, Mr. Kim and I met at Kirkpatrick & Lockhart's San

10    Francisco office to discuss the status of the litigation at which time we also notified our attorneys

11    about the modification to our agreement. Prior to the meeting, Mr. Kim and I agreed that in

12    consideration of the excess time which I had already worked, as well as my ongoing time

13    commitment and the need for my technical and operational knowledge and expertise, I was entitled

14    to a larger share of any proceeds from the PRN litigation. Mr. Kim agreed to modify his agreement

15    with me such that my share of the PRN litigation net recovery would be raised from fifteen percent

16    (15%) to fifty percent (50%). This agreement was memorialized and confirmed in my October 9,

17    2006 letter to Mr. Kim which I gave to Mr. Kim at the October 2006 meeting. Attached hereto as

18    Exhibit B is a true and correct copy of my October 9, 2006 letter to Mr. Kim. STV Asia's then

19    attorney, Deborah Bailey-Wells, was also present at our October 2006 meeting when Mr. Kim

20    acknowledged his agreement to increase my share of any PRN Litigation proceeds to fifty percent

21    (50%) and she witnessed me handing the October 9, 2006 letter to Mr. Kim.

22        12.    The PRN litigation was ultimately settled at mediation in April and May of 2007.

23    Attached hereto as Exhibit A is a true and correct copy of the confidential settlement agreement and

24    release. Both Mr. Kim and I attended the mediation. Mr. Kim's objective at mediation was to get as

25    much as he could in one day and "take the money and run".

**REDACTED**

27        As of the date of the mediation, I held the position of a director of STV Asia. Attached as

4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    Exhibit C is a true and correct copy of the mediation sign-in sheet where I am listed as a director of

2    STV Asia. Although I, as a director of STV Asia, I was initially told that I was to be a signator to

3    the settlement agreement, I was apparently removed as a director prior to the final signing and my

4    name was taken off the signature blocks of the final settlement agreement. Attached hereto as

5    Exhibit I is a true and correct copy of one of the initial drafts of the PRN settlement agreement

6    wherein the signature block provides for the signatures of two directors of STV Asia, Ltd., Mr. Kim

7    and myself.

8        13.    Subsequently, I learned from Jim Smith, the attorney who represented STV Asia in

9    the mediation, that as of May 7, 2007 (prior to the date the final settlement agreement was executed),

10    I had been removed as a director of STV Asia.

11        14.    On May 9, 2007, Mr. Kim emailed me detailing "our mutual understanding" as to the

12    division of the settlement proceeds noting that my disbursement was fifteen percent (15%).

13    Attached hereto as Exhibit D is a true and correct copy of Mr. Kim's May 9, 2007 email to me.

14        15.    During the last week of May, I was in the process of transferring this case from

15    Bowles & Verna to Winston & Strawn.

16        16.    In or about the middle of May of 2007, when the settlement was being finalized, Mr.

17    Kim told me that I should transfer my share of the settlement proceeds to him to "hold" for me in an

18    off-shore account so that I could avoid paying taxes and reporting said proceeds.

19        17.

# REDACTED

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER
Case No. 3:07-CV-02769 – JL

# REDACTED

18.    I was told on several occasions by Deborah Bailey-Wells that Mr. Kim was in serious arrears to Kirkpatrick & Lockhart with respect to the legal fees he owed in conjunction with their representation of STV Asia in the PRN litigation.  I was informed by Ed Sangster, the managing partner of Kirkpatrick & Lockhart Preston Gates' San Francisco Office, that the outstanding attorneys' fees and legal costs for the PRN litigation were as high as $762,823.50 as of November 22, 2006.

19.    I am prepared to post the $10,000 bond provided for under Cal. Civ. Proc. Code on July 27, 2007 if this Court extends the TPO.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 22nd day of June, 2007 at Danville, California.

FRANK NEMIROFSKY

SF:175788.1

DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER
Case No. 3:07-CV-02769 – JL

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Exhibit A
to Declaration of Frank Nemirofsky
in Support of Plaintiff's *Ex Parte* Motion
to Extend the Temporary Protective Order

Filed Under Seal
(pending order)

Case No. C 07-2769 JL

Exhibit B
to the Declaration of Frank Nemirofsky
in Support of Plaintiff's *Ex Parte* Motion
to Extend the Temporary Protective Order

Case No. C 07-2769 JL

# Frank Nemirofsky

10-09-06

Dear S.K.,
Hand Delivery

I am pleased that we have renewed our association as we move forward in our efforts against PRN and the other defendants. I am also pleased on many other levels that we renewed our friendship which had been severely strained for many years. While we may have differences of opinion from time to time, as partners sometimes do, on the strategy for attaining the highest and most favorable result in the litigation I look forward to a significant settlement or verdict in our favor. The disputes we had years ago, as you have mentioned while I was considering becoming your partner in the PRN litigation and STV America, were based on faulty information being delivered to you by others. As we discussed when I was considering becoming your partner in the litigation I have accepted your explanation. I am pleased we continue to build our renewed business partnership as well as our friendship.

You have recently inquired about the time I have been devoting to our litigation against PRN and the other defendants. Let me share with you that I have put many more hundreds of hours into the work associated with the litigation than we both considered would be necessary when we agreed to become partners in undertaking the litigation. The litigation and developing STV America has me involved almost on a daily basis. I appreciate the compliment you paid me in working hard to bring the case to a satisfying settlement or verdict. Thank you for recognizing the value of what I have brought that has been additive and of assistance to the KLNG firm's activities. Not only have I been working on the litigation but I have been working with potential STV America licensee /partners. My work product, decisions and management of the litigation has been undertaken in our best interest. Even before the litigation was filed while we were doing the diligence to potentially bring the litigation I was always looking to our best interest in litigation. While I have major commitments to expHand, Inc, as you do to your other interests, I take very seriously my participation and lead role in our litigation and the formation of STV America. I would ask that you take a greater interest in developing STV Asia as we had originally agreed. Developing an STV America will certainly pay dividends in the litigation.

71 Janis Court, Alamo CA. 94507

1

The settlement or verdict value will increase if, as we have planned, we develop a competitor to PRN.

You will remember you asked me what I felt the settlement figure should be. My answer then and now is nothing more than an informed layman's determination of more than $30M which I think might be as much as $100M in a settlement or verdict if we have an ongoing license and partnership of a STV America. You have asked the same question of KLNG and based on what they have been told by the folks who did the valuation of the litigation you should not be surprised by their answer or mine.

You concerned me when you put forth the idea of a hedge fund type of law firm joining the litigation as underwriters of the financial risk and managers of the litigation. You may have lost confidence in KLNG, as you have stated. I cannot tell you that I agree with all that KLNG has chosen to do during our relationship with them, in fact, you and I have both questioned various of their actions and results but KLNG, I believe, is far better to work with than a hedge fund "patent troll" type of law firm as Deborah Bailey-Wells refers to Bill Marino's company Altitude Capital Partners. When we agreed to become partners in the PRN litigation and in developing STV America I did so in large part on the strength of your financial commitment to me and then to the KLNG firm to underwrite the cost of the litigation to a verdict or a mutually agreed on settlement. Thank you for reaffirming that position with me.

You have continually advanced the question of billing inaccuracies by KLNG. I review the invoices when you send them to me. I have always shared with you my belief that the KLNG invoices are aggressive. It is my impression that they overlap activity and we have discussed that point in the past. The best thing you and I can do is, as I have stated previously, keep to a practice of having weekly or bi-monthly calls with Deborah and Kevin to insure you are satisfied with the billing. I will now add the responsibility to work with KLNG to correct, if possible, the issues we face with the firm.

Thank you again for agreeing, during our last meeting, to a revised agreement of a more representative allocation of the proceeds of a settlement or verdict in the PRN litigation to 50% combined for you and STV Asia and 50% for me. The total to be divided will be reduced equally by the attorney's fees you have advanced. This arrangement now truly recognizes the value we both bring to the litigation.

Best,

Frank

71 Janis Court, Alamo CA. 94507

2

Exhibit C
to the Declaration of Frank Nemirofsky
in Support of Plaintiff's *Ex Parte* Motion
to Extend the Temporary Protective Order

Case No. C 07-2769 JL

Case Name: _STV ASIA ⁱ/ˢ PRN_

Hearing Date(s): _5/2/2007    5:00 PM_

Panelist:    Hon. Edward A. Infante (Ret.)

| Name | Party(ies) Represented | Position |
|---|---|---|
| Christine Nakafawa | PRN | VP Legal |
| Rick Huse | Thomson/PRN | Assoc. G.C |
| Alison Tucher | " | Counsel |
| Harold McElhinny | " | Counsel |
| NATE LANE | STV ASIA | Counsel |
| James Smith | —//— | —//— |
| S. K. KIM | " | Director |
| Frank Nemirofsky | STV ASIA | Director |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Exhibit D
to Declaration of Frank Nemirofsky
in Support of Plaintiff's *Ex Parte* Motion
to Extend the Temporary Protective Order

Filed Under Seal
(pending order)

Case No. C 07-2769 JL

# Exhibit E
## to Declaration of Frank Nemirofsky
## in Support of Plaintiff's *Ex Parte* Motion
## to Extend the Temporary Protective Order

### Filed Under Seal
### (pending order)

## Case No. C 07-2769 JL

Exhibit F
to the Declaration of Frank Nemirofsky
in Support of Plaintiff's *Ex Parte* Motion
to Extend the Temporary Protective Order

Case No. C 07-2769 JL

April 16, 2007

S.K. Kim

20 A,
63 Repulse Bay Road
Hong Kong

Dear S.K.,


I propose we engage new counsel with a goal of settlement. I have spent much more time
to date then I originally anticipated when we came to our agreement on percentage and
related points regarding the settlement amount. I have felt that the case management has
been flawed in various manners and that the possibility of a meaningful settlement has
been jeopardized in many ways that left the plaintiff in a weaker position than they need
be to prosecute the case. The mediator agreed with Nemirofsky that the law firms of
Morrison & Forester and Townsend and Townsend should have been sued in a related
action. Neither KLNG nor S.K. Kim agreed with that strategy which potentially would
have yielded immediacy to the overall set of potential litigations. There were no
depositions or discovery in the case that would have also yielded immediacy and offense
that the mediator stated would have been in the plaintiff's best interest. Additionally the
mediator suggested the plaintiff would have been strengthened by competing in the
marketplace against the defendant.

Nemirofsky is willing to use expHand technology and business, if a license is procured
from expHand, to create an in-store competitor to Thomson, PRN under non-exclusive
license to STV Asia for the benefit of STV Asia in its litigation and settlement with
Thomson, PRN.

In my discussions with a well respected litigator who is now retired but who in the time
prior to his retirement reached some of the largest jury awards in complex corporate
including IP litigation matters in the United States he verified the rationale and
justification for my new idea of how we should fairly split the proceeds that may come
from a negotiated settlement. The following is what I believe to be the most efficient
method of settlement.
 1. I have full authority to negotiate on our collective behalf, in consultation with you, in
person with Thomson and PRN or one or both of the entities.
 2. I have a letter signed by you, on STV Asia stationary that evidences such a
representation.
 3. This agreement is founded on the premise that we both agree upon a new law firm to
represent STV Asia and that we come to financially acceptable arrangements with such a
firm and that you will pay the firm promptly. Additionally that we fully disclose the
problems encountered with KLNG and its successor KL/Gates in terms of quality
representation, disappointing results and the payment history issues including non-
payment and potential aggressive billing by the law firm.

4. This model allows for continued discussion between us and Thomson and PRN no matter where we are physically located.

5. This model contemplates expHand entering into certain agreements with Thomson and PRN that would license expHand non-exclusively to them.

6. This model contemplates expHand non-exclusively licensing STV Asia the expHand technology for sliding fee beginning at $2MM annually for use in the in-store environment. The $2MM not to be paid until a settlement is reached between STV Asia and Thomson. Thomson would have the right to negotiate a follow-on license with expHand if a settlement is reached between STVAsia and Thomson and PRN

7. The proceeds of a settlement between STV Asia and PRN funded by Thomson and or PRN including "hold back" amounts from the sale of PRN to Thomson. Be apportioned as previously agreed as follows: a.) 50% S.K. Kim and associates b.) 50% Frank Nemirofsky c.) All legal fees and costs billed by KLNG, KL/Gates and other counsel contracted by S.K. Kim and paid by S.K. Kim be deducted before the 50%/50% split between S.K. Kim and Frank Nemirofsky. That any settlement agreement reached by a mediator, legal trial or other legal proceeding includes the agreement between S.K. Kim and Frank Nemirofsky as a term of the settlement. That the law firm representing STV Asia in the litigation will provide instructions to the court or mediator to divide all funds received as settlement as agreed.

8. Nemirofsky be sent $100,000 as a consultancy fee, to be deducted from the settlement payment to Nemirofsky to work with new counsel and assist in developing a business plan and implementation for Thomson , PRN to understand, under confidentiality agreement what will be their competition or the potential opportunity for settlement that will, as a business model, create new and increased revenues for Thomson, RPN.

9. Today there is no compelling reason for Thomson, PRN to settle in the eight figure range as evidenced by the mediator's comments. The plan advanced by Nemirofsky has the potential to bring the settlement to the $25MM plus range.

Exhibit G
to the Declaration of Frank Nemirofsky
in Support of Plaintiff's *Ex Parte* Motion
to Extend the Temporary Protective Order

Case No. C 07-2769 JL

Frank Nemirofsky

4-23-07

Memo to SK Kim Confirming Nemirofsky's 04-14-07 email to SK Kim

Thank you for discussing my email to you of 04-14-07. I appreciate your candor in our discussion, while I understand that you are looking to finalize the PRN litigation via mediation I believe as we discussed you are not keeping our original premise for coming together in the litigation to seek the maximum verdict or settlement possible against PRN. Judge Infante agreed with me that Townsend and Townsend and Mote should also have been sued.

Mark I have lost my opportunity, it seems, to maximize a verdict or settlement amount due to your position of seeking a mediated settlement since you are underwriting the litigation and mediation I effectively have little if any input in a final decision. While we have disagreements over mediation & settlement strategy and tactics we have agreed on the following points of my 04-14-07 email:

Numbers 1, 2, 3, 4  Number 3 contemplates us/me seeking representation by Squires, Sanders.

We also agreed and have previously agreed on Number 7.

We did not agree on numbers 5, 6, 8 and 9 as you stated your goal is not to involve eystand

71 Janis Court, Alamo CA. 94507

or any other new technology in any mediation or settlement.

SK Kim and Frank Nemirofsky directors of STVASIA agree as to these notes/memo

Exhibit H
to Declaration of Frank Nemirofsky
in Support of Plaintiff's *Ex Parte* Motion
to Extend the Temporary Protective Order

Filed Under Seal
(pending order)

Case No. C 07-2769 JL

Exhibit I
to Declaration of Frank Nemirofsky
in Support of Plaintiff's *Ex Parte* Motion
to Extend the Temporary Protective Order

Filed Under Seal
(pending order)

Case No. C 07-2769 JL