1  HARVEY SISKIND LLP
   D. PETER HARVEY (SBN 55712)
2  e-mail: pharvey@harveysiskind.com
   SETH I. APPEL (SBN 233421)
3  e-mail: sappel@harveysiskind.com
   Four Embarcadero Center, 39th Floor
4  San Francisco, California 94111
5  Telephone: (415) 354-0100
   Facsimile: (415) 391-7124
6
7  Attorneys for Defendants and Counterclaimants
   SEOK KI KIM and STV ASIA, LTD.
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANK NEMIROFSKY,<br><br>            Plaintiff,<br><br>    v.<br><br>SEOK KI KIM; STV ASIA, LTD., a British Virgin Islands corporation; and DOES 1 through 20, inclusive,<br><br>            Defendants. | Case No.: C 07 2769 JL<br><br>**DEFENDANTS' <u>REDACTED</u> OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER** |
| SEOK KI KIM and STV ASIA, LTD., a British Virgin Islands corporation,<br><br>            Counterclaimants,<br><br>    v.<br><br>FRANK NEMIROFSKY,<br><br>            Counterdefendant. | |

---

DEFENDANTS' <u>REDACTED</u> OPPOSITION TO PLAINTIFF'S                                    Case No.: C 07-2769 JL
*EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER

There is no reason for the Court to grant Plaintiff's motion at all, let alone on an *ex parte* basis. Put simply, an *ex parte* motion to extend a temporary protective order is procedurally improper.

Plaintiff has unjustifiably delayed in bringing his motion and flouted the applicable rules of civil procedure. Furthermore, Plaintiff is unlikely to prevail on his claims, and he has shown no irreparable injury. Plaintiff has willfully obtained temporary protective orders depriving Defendants of their right to nearly $**[REDACTED]**. Plaintiff knows, and has conceded in several documents filed with the Court, that he has no legal basis for asserting a claim for even half this amount.

## BACKGROUND

The relevant facts are simple. Most of the "factual background" offered in the motion is not only fabricated, but is also irrelevant.

Defendant/Counterclaimant Seok Ki Kim ("Kim") is the founder and owner of Defendant/Counterclaimant STV Asia, Ltd. ("STV"). Kim has invested over $12.5 million in this company. Plaintiff/Counterdefendant Frank Nemirofsky ("Plaintiff") has never had any ownership interest in STV.[1]

On March 2, 2006, STV filed a lawsuit for patent infringement in the United States District Court for the Northern District of California (Case No. C 06 1664 JCS) against PRN Corporation ("PRN") and other entities that were involved in the infringement. Plaintiff assisted STV in connection with this litigation. In return for his assistance, Kim and Plaintiff agreed that Plaintiff would receive 15% of STV's net proceeds (that is, total proceeds less costs, attorney's fees, and other

---

[1] Unless otherwise noted, all facts are supported by the declarations of Seok Ki Kim and D. Peter Harvey (and exhibits thereto) previously filed in support of Defendants' E*x Parte* Application for Order Vacating or Modifying Temporary Protective Orders. These declarations and exhibits were filed on June 1, 2007, and are included in the Court's electronic records as item numbers 9 through 13.

-1-

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION                                   Case No.: C 07-2769 JL
TO EXTEND THE TEMPORARY PROTECTIVE ORDER

1  expenses), if any, derived from judgment or settlement of the claims asserted in Case No. C 06 1664
2  JCS. The parties have never modified this agreement.[2]
3       Plaintiff's performance under the agreement was unsatisfactory. He was often unavailable to
4  Kim, unresponsive and uncooperative. On more than one occasion, Kim made Plaintiff aware of his
5  criticisms of Plaintiff's performance. (Kim Decl., ¶3 and Exs. A, B, and C)

**[REDACTED]**

STV's costs, attorney's fees, and other expenses incurred in Case No. C 06 1664 JCS totaled $684,995.

**[REDACTED]**

[3]

---

[2] In support of his unfounded claim that the parties modified their agreement, Plaintiff contends that he spent more time working on the PRN litigation than anticipated. (Mot., 5:12-19) But Plaintiff's own declaration states that the parties agreed before the litigation began that Plaintiff would "take the lead in working with litigation counsel on the PRN litigation." (Nemirofsky Decl., ¶8)

[3] **[REDACTED]**

-2-

1    Moreover, Plaintiff has no valid basis for claiming one-half of the net proceeds
2 **[REDACTED]**. The parties expressly agreed that Plaintiff would be entitled to only 15%.

3    On May 16, 2007, Plaintiff filed a Complaint against Defendants in the San Francisco
4 Superior Court (Case No. CGC 07-463428) based on the incorrect premise that he is entitled to one-
5 half of the net proceeds

**[REDACTED]**

7    Also on May 16, 2007, Plaintiff filed *ex parte* applications for right to attach orders and writs of
8 attachment against Kim and STV. Plaintiff did not file an undertaking with respect to either
9 application, as required under California law.

10    In his applications, Plaintiff declared, under penalty of perjury, that "the amount to be secured
11 by the attachment is: $**[REDACTED]**." In his memorandum of points and authorities in support of
12 his ex parte applications, Plaintiff contended that "Defendants are indebted to Plaintiff in the
13 principal amount of $**[REDACTED]**." He maintained: "As a consequence **[REDACTED]**,
14 Defendants now owe Plaintiff the principal sum now due and owing of $**[REDACTED]**." The MPA
15 concludes: "[R]equest is respectfully made that this Court issue a Right to Attach Order and Order
16 for Issuance of a Writ of Attachment in the amount of $**[REDACTED]**"

17    Plaintiff submitted proposed orders along with his *ex parte* applications. The proposed
18 orders, which Plaintiff prepared, state:

19    THE COURT ORDERS
    …
20    Squire, Sanders, & Dempsey LLP shall not transfer, directly or indirectly, to anyone
    besides the Plaintiff the property described in item 2i of the findings.

22 "[T]he property described in item 2i of the findings," which Plaintiff also prepared, states: "Any
23 property of the Defendant." (emphasis added.) As Plaintiff knows, SSD holds $**[REDACTED]** in
24 trust for Defendants.[4] That is, over $**[REDACTED]** more than Plaintiff claims he is entitled to.

---

[4] The $**[REDACTED]** million held by SSD is comprised of the **[REDACTED]**, plus $100,000 STV Asia
paid as a retainer to SSD.

-3-

On May 16, 2007, the San Francisco Superior Court issued temporary protective orders (TPOs) based on Plaintiff's *ex parte* applications, using Plaintiff's proposed language. Thus, according to the TPOs, SSD cannot transfer <u>any</u> of Defendants' money to Defendants.[5]

The TPOs provide that they "will expire at the earliest of the following times: . . . (2) after (Date): June 26, 2007, or (3) 40 days after issuance of this order." Forty days after issuance of the TPOs (*i.e.*, May 16) is Monday, June 25, 2007.

The excessive TPOs were not the result of carelessness or mistake on the part of Plaintiff. On the contrary, they were the result of deliberate action intended to coerce an overly favorable settlement in Case No. CGC 07-463428.[6]

The day after filing for and obtaining the TPOs, on May 17, 2007, Plaintiff emailed Kim. He suggested that Kim meet with him and his counsel "immediately to settle the matter."

On May 22, 2007, Plaintiff's then counsel, David W. Trotter, sent a letter to Defendants' counsel, Peter Harvey and Seth Appel of Harvey Siskind LLP. Mr. Trotter asserted that the TPOs prohibited SSD from transferring <u>any</u> of money in the SSD trust account, *i.e.*, $**[REDACTED].** He also suggested a meeting "to talk about the future direction of the San Francisco action." In other words, now that he had wrongfully frozen nearly **[REDACTED]** dollars of Defendants' money, Plaintiff wished to settle this dispute.

On May 24, 2007, Defendants removed this case to federal court on the basis of diversity. Kim is a South Korean citizen residing in Hong Kong. STV Asia is a British Virgin Islands corporation with its principal place of business in Hong Kong.[7] (Kim Decl., ¶2) They understandably prefer to have their dispute with Plaintiff, a California citizen, resolved in federal court.

---

[5] Since issuance of the TPOs, SSD has informed Kim that it cannot transfer any money to Defendants—not even the $**[REDACTED]** that Plaintiff does not claim—as a result of the TPOs.

[6] For this reason, Defendants have filed a Counterclaim for abuse of process.

[7] Plaintiff acknowledges Defendants' nationalities and has not challenged diversity. (Compl., ¶¶2-3)

-4-

1     Two days after removal, Mr. Harvey sent a letter to Mr. Trotter objecting to the excessive amount covered by the TPOs, as well as Plaintiff's failure to file an undertaking. Mr. Harvey asked Plaintiff to stipulate to amend the TPOs and to file an undertaking in the amount of $500,000. Mr. Trotter did not respond to these requests.

    Four days later, on May 30, 2007, Defendants filed an *ex parte* application for an order vacating or modifying the TPOs. In response, Plaintiff's new counsel, Jonathan Cohen of Winston & Strawn, sent an email to Mr. Appel on June 2, 2007. With regard to Defendants' *ex parte* application, Mr. Cohen stated: "I don't really see good cause to have this motion heard on an ex parte basis, especially when the TPO expires within the next three weeks." (Appel Decl., ¶2 and Ex. A)

    The following week, the Court set the hearing on Defendants' motion for July 25, 2007. Mr. Appel promptly informed Mr. Cohen of the hearing date by telephone on Thursday, June 7, 2007. (Appel Decl., ¶3)

    Plaintiff's counsel and Defendants' counsel did not have any further communications for over two weeks. Finally, on Friday, June 22, 2007, Mr. Cohen called Mr. Appel to inform him that Plaintiff planned to file an *ex parte* application to extend the TPOs. (Appel Decl., ¶4)

    Mr. Cohen left Mr. Appel a voicemail stating that he would be unavailable for the rest of the day and suggesting that Mr. Appel contact another attorney at his firm, Robyn Callahan. Mr. Appel and Mr. Harvey promptly called Ms. Callahan to request that she send them a copy of Plaintiff's *ex parte* application immediately. Ms. Callahan did not pick up her telephone and did not return the call. She eventually emailed "courtesy copies" of Plaintiff's unredacted papers at 10:15 p.m. on Friday night, after completing her efiling of redacted versions of these papers at 9:05 p.m. (*Id.*)

## **ARGUMENT**

### I.    **Plaintiff's *Ex Parte* Motion is Procedurally Improper.**

    Plaintiff contends that the Court has authority to extend the TPOs under the California Code of Civil Procedure. (Mot., 7:21-8:10) This contention is wrong. The Code of Civil Procedure does not permit a plaintiff who has obtained a temporary protective order on an *ex parte* basis to further freeze defendant's assets on an *ex parte* basis.

-5-

Where a plaintiff obtains a temporary protective order *ex parte*, its only means of freezing defendant's assets after that temporary protective order runs its course is to obtain a right to attach order and writ of attachment after a <u>properly</u> <u>noticed</u> <u>hearing</u>. Cal. Code. Civ. Proc. §486.030.[8]

The leading practice guide in this area explains:

> Even though an ex parte RTAO [right to attach order] is properly issuable, the court may deny the application and issue a temporary protective order ("TPO") instead where deemed to be in the interest of "justice and equity" under the circumstances. ***Plaintiff must then follow the noticed hearing procedure to obtain the RTAO and W/A.***

Ahart, *California Practice Guide: Enforcing Judgments and Debts* (The Rutter Group 2007) §4:310 at 4-66-67 (emphasis added). This rule is expressly stated in the Code of Civil Procedure.[9]

Here, not only did Plaintiff fail to properly notice a hearing. He gave Defendants as little time as possible to file an opposition to his *ex parte* motion.

---

[8] Because there are no applicable federal rules, the Court can properly apply the California Code of Civil Procedure. *See* Schwartzer, *et al. California Practice Guide: Federal Civil Procedure Before Trial* (The Rutter Group 2007) §2:1027 at 2D-198.1. Plaintiff concedes this point and accepts the California Code of Civil Procedure as the applicable rules. (*See* Mot., 7:21-8:10; 9:11-16) At any rate, it would be unjust to deprive Defendants of carefully crafted procedural safeguards simply because they exercised their indisputable right to the federal courts.

[9] Section 486.030 provides:

> (a) In any case where the plaintiff has applied for a right to attach order and writ of attachment . . . , the court may in its discretion deny the application for the order and writ and issue instead a temporary protective order.
> …
> (b) If the court issues a temporary protective order under this section, the plaintiff's application for a right to attach order and writ shall be treated as an application for a right to attach order and writ under Article 1 (commencing with Section 484.010) of Chapter 4 and the plaintiff shall comply with the requirements of service provided in Section 484.040.

Section 484.040 provides:

> No order or writ shall be issued under this article except after a hearing. At the times prescribed by subdivision (b) of Section 1005, the defendant shall be served with all of the following:
> …
> (b) A notice of application and hearing.

Section 1005(b), which governs the timing of standard motions, provides that notice must be given, and "all moving and supporting papers shall be served and filed," "at least 16 courts days before the hearing."

-6-

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION    Case No.: C 07-2769 JL
TO EXTEND THE TEMPORARY PROTECTIVE ORDER

The California Superior Court issued the TPOs on May 16, 2007, and ordered that they would expire in 40 days. Yet Plaintiff did nothing to extend the duration of the TPOs until the filing of his *ex parte* motion on Friday night, June 22.

In a weak attempt to justify this delay, Plaintiff notes that he retained new counsel after obtaining the TPOs, and "[i]t took a couple of weeks" for his new counsel "to get up to speed in this case." (Mot., 9:4-5)  Plaintiff was not required to obtain new counsel.  Plaintiff's choice to retain new counsel while the TPOs he had obtained were in force is no reason to disregard the applicable rules of procedure at Defendants' expense.[10]

## II. The California Court Issued the Temporary Protective Orders in Error.

Because Plaintiff's *ex parte* motion is procedurally improper, the Court should not even consider the motion.  If the Court chooses to consider the motion, however, it should deny it in full. The TPOs should not have been issued in the first place, and they surely should not be extended.

### A. Plaintiff Concedes he is Not Entitled to $[REDACTED].

Plaintiff himself has conceded, in papers filed with the California Superior Court and otherwise, that he is not entitled to the amount covered by the TPOs, *i.e.*, $**[REDACTED]**

Plaintiff under his "best case" scenario is entitled to $**[REDACTED]** of the amount paid by PRN.  Thus, in his memorandum of points and authorities in support of his *ex parte* applications for right to attach orders, Plaintiff contended that "Defendants are indebted to Plaintiff in the principal amount of $**[REDACTED]**."  He maintained:  "As a consequence **[REDACTED]**, Defendants now owe Plaintiff the principal sum now due and owing of $**[REDACTED]**."  The MPA concludes: "[R]equest is respectfully made that this Court issue a Right to Attach Order and Order for Issuance of a Writ of Attachment in the amount of $**[REDACTED]**."

Moreover, in his supplemental declaration in support of his *ex parte* applications, Plaintiff stated, under penalty of perjury, "I am requesting that the Court issue a right to attach order and writ

---

[10] Defendants' decision to remove the case to federal court was hardly remarkable or unexpected, given the parties' unquestionable diversity.

-7-

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION                    Case No.: C 07-2769 JL
TO EXTEND THE TEMPORARY PROTECTIVE ORDER

1  of attachment as to my 50 percent share of

2  **[REDACTED]**

3  Nonetheless, the TPOs cover the entire amount in the SSD trust account, which is
4  $**[REDACTED]**. Plaintiff has never asserted any basis for freezing such a large amount of
5  Defendants' money.

6  Defendants have called this matter to Plaintiff's attention <u>repeatedly</u>, in conversations
7  between counsel, in their abuse of process counterclaim, and in their motion to vacate or modify the
8  TPOs. Plaintiff continues to dodge the issue. In fact, Plaintiff's *ex parte* motion to extend the TPOs
9  and supporting documents do not even mention it. Plaintiff's obstinate unwillingness to concede the
10 proper interpretation of the TPOs confirms that Defendants' counterclaim for abuse of process is well
11 founded.

12 **B.    Plaintiff is Unlikely to Prevail on any of his Relevant Causes of Action.**

13 Plaintiff's *ex parte* motion, and most of his causes of action, are based on the notion that the
14 parties modified their agreement in a manner that would entitle Plaintiff to one-half of
15 **[REDACTED]**. Plaintiff has the burden of proving his case by a preponderance of the evidence.
16 But Plaintiff has offered no credible evidence that the parties modified their agreement. He offers
17 only his own self-serving declaration.[11]

18 Plaintiff contends that Deborah Bailey-Wells is a witness to Kim's agreement to increase
19 Plaintiff's share of the **[REDACTED]** proceeds. (Mot., 5:24-6:1) But he fails to provide a
20 declaration from Ms. Wells. Plaintiff does not contend that there are any other witnesses to support
21 his position.[12]

---

[11] Plaintiff also has offered no credible evidence in support of his claim that Defendants sold the patents under market value, let alone "well under market value." (Mot., 10:3-5)

[12] Mr. Cohen states in his declaration that he tried unsuccessfully to obtain a declaration from Ms. Bailey-Wells. Trying unsuccessfully to produce evidence cannot take the place of actually producing evidence.
In his declaration, Mr. Cohen suggests for the first time that Defendants depose Ms. Bailey-Wells. Assuming *arguendo* this suggestion would have cured the evidentiary deficiency weeks ago, it has little meaning at this late date.

-8-

28 DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION     Case No.: C 07-2769 JL
   TO EXTEND THE TEMPORARY PROTECTIVE ORDER

Plaintiff's only purported documentary evidence of modification is a letter, dated October 9, 2006, that Plaintiff wrote and allegedly gave to Kim. Plaintiff never gave this letter to Kim.[13] Defendants had never seen this letter until Plaintiff filed his motion three days ago. Kim suspects that Plaintiff drafted it in the past few days for purposes of this motion. (Kim Decl., ¶4)

Tellingly, in support of his *ex parte* applications for right to attach orders in the California Superior Court, Plaintiff did not submit this October 9 letter. He did not reference this supposedly critical document in his Complaint. Instead, he submitted an email he wrote to Kim on April 14, 2007, offering suggestions concerning the PRN litigation.[14] (Appel Decl., ¶5 and Ex. B)

This email included a list of nine points proposing "what [Plaintiff] believe[s] to be the most efficient method of settlement." One of these proposals involved Plaintiff and Kim splitting the net proceeds of any STV settlement equally. Plaintiff described this email as offering "a *proposed strategy*" and called the 50-50 split he was suggesting merely a "*proposal*." Kim did not accept this proposal, or any of the proposals set forth in Plaintiff's April 14 email. (*Id.*)

There would be no reason for Plaintiff to propose a 50-50 split in April 2007 if the parties had already agreed to this arrangement six months earlier.

As recently as May 3, 2007, Plaintiff met Kim at the San Francisco airport and implored him to raise his share of the settlement proceeds from 15% to between 25% and 30%, a request that Kim refused.

C.    **Plaintiff Has Not Shown "Great or Irreparable Injury."**

Putting aside the lack of merit in his claims, Plaintiff cannot show the "great or irreparable injury" necessary to justify a temporary protective order. *See* Cal. Code Civ. Proc. §485.010; Ahart, *supra*, §4:354 at 4-76. The leading practice guide on this subject explains:

---

[13] Again, Plaintiff's only alleged witness of this event is Ms. Bailey-Wells, who has not filed a declaration.

[14] In Defendants' motion to vacate or modify the TPOs, Defendants explained why this letter did not support Plaintiff's claim. Presumably, this is the reason Plaintiff does not mention it here.

> It is not sufficient to show that defendant is in a precarious financial situation or has refused to pay a disputed claim. Rather, plaintiff should submit evidence of defendant's "past dishonesty, failure to meet obligations, or concealment of assets."

Ahart, *supra*, §4:301 at 4-64 (emphasis in original) (*quoting Western Steel & Ship Repair v. RMI, Inc.*, 176 Cal. App. 3d 1108, 1114 (1986)). In support of his application with the San Francisco Superior Court, Plaintiff did not attempt to satisfy this requirement.

Once again, Defendant's *ex parte* motion to vacate or modify the TPOs pointed out the weakness in Plaintiff's position. And once again, Plaintiff has reacted with fabrications supported only by his own-self-serving declaration.

All of Plaintiff's remarks concerning Kim's alleged wrongdoing in the past are lies. Not surprisingly, Plaintiff does not provide any competent evidence in support of these groundless assertions. Some of these assertions are not even plausible. For example, Plaintiff alleges that Kim removed him as a director of STV in May 2007 in order to deprive him of money. (Mot., 11:4-8) Plaintiff has not been a director of STV since July 2006, so the notion that Kim removed him last month makes no sense. (Kim Decl., ¶5) Similarly implausible is Plaintiff's allegation that Kim offered to help Plaintiff avoid paying taxes. (Mot., 10:22-24) Plaintiff offers no explanation for why Kim would make such an offer, which would give no benefit to Kim. Plaintiff never offered to assist Plaintiff avoid paying taxes. (Kim Decl., ¶6)[15]

There is no logical reason for Plaintiff (or the Court) to assume that Defendants would not pay any judgment against them. For this additional reason, the TPOs are unnecessary and improper.

D.     **Plaintiff has Not Filed an Undertaking as Required by California Law.**

California law on temporary protective orders and undertakings is clear. The Code of Civil Procedure provides:

---

[15] Plaintiff's other allegations are similarly unfounded. For example, Kim was not involved in the management of NBL Communications at the time of Plaintiff's termination. He had no part in, and does not know the circumstances surrounding, Plaintiff's termination. The notion that Kim "fraudulently conspired" to deprive Plaintiff of patent rights is preposterous. (Kim Decl., ¶7)

> Before issuance of a writ of attachment, a temporary protective order, or an order under subdivision (b) of Section 491.415 [*i.e.*, a right to attach order], the plaintiff shall file an undertaking to pay the defendant any amount the defendant may recover for any wrongful attachment by the plaintiff in the action.

Cal. Code Civ. Proc. §489.210 (emphasis added). *See* Ahart, *supra*, §4:361 at 4-78 ("A TPO may not issue until an undertaking is filed."). Plaintiff concedes this point and offers to post a $10,000 bond if the Court extends the TPOs. So far, he has not filed any undertaking.

The minimum undertaking allowed under these circumstances is $10,000. Cal. Code Civ. Proc. §489.220(a). The Court may increase this amount to "the amount it determines to be the probable recovery for wrongful attachment if it is ultimately determined that the attachment was wrongful." Cal. Code Civ. Proc. §489.220(b). Here, assuming *arguendo* the TPOs have any validity, an appropriate undertaking would be at least $500,000. (This issue is discussed in more detail in Plaintiff's motion to vacate or modify the TPOs.)

The fact that Plaintiff's position is so weak, and supported by no evidence other than a self-serving declaration, weighs in favor of a large undertaking. Defendants have already been deprived of the use of $**[REDACTED]** for over five weeks and, absent a bond, will see no interest or other compensation for that loss when the funds are released. *See North Hollywood Marble Co. v. Superior Court*, 157 Cal. App. 3d 683 (1984) (holding that "the trial court has discretion [under §489.220(b)] to consider the probability that the plaintiff will prevail in the action and to adjust the amount of the total expected damages to defendant according to that probability factor").

///
///
///
///
///
///
///
///

-11-

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION  
TO EXTEND THE TEMPORARY PROTECTIVE ORDER

Case No.: C 07-2769 JL

**CONCLUSION**

The Court should not even consider Plaintiff's *ex parte* motion because it is procedurally improper. If the Court chooses to consider the motion, it should deny it in full. At the very least, the Court should reduce the amount covered by the TPOs and require Plaintiff to file an undertaking.

Dated: June 25, 2007                    Respectfully submitted,

                                        HARVEY SISKIND LLP


                                        By: _____/s/_____
                                                Seth I. Appel

                                        Attorneys for Defendants and Counterclaimants
                                        SEOK KI KIM and STV ASIA, LTD.