HARVEY SISKIND LLP
D. PETER HARVEY (SBN 55712)
e-mail:  pharvey@harveysiskind.com
SETH I. APPEL (SBN 233421)
e-mail:  sappel@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, California  94111
Telephone:  (415) 354-0100
Facsimile:  (415) 391-7124

Attorneys for Defendants and Counterclaimants
SEOK KI KIM and STV ASIA, LTD.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANK NEMIROFSKY,<br><br>Plaintiff,<br><br>v.<br><br>SEOK KI KIM; STV ASIA, LTD., a British Virgin Islands corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.:  C 07-2769 JL<br><br>**BRIEF OF DEFENDANTS AND COUNTERCLAIMANTS CONCERNING ATTORNEY-CLIENT PRIVILEGE AND THE DEPOSITION OF DEBORAH BAILEY-WELLS**<br><br>**Date:**    October 31, 2007<br>**Time:**    9:30 a.m.<br><br>**The Honorable James Larson<br>Courtroom F, 15th Floor** |
| SEOK KI KIM and STV ASIA, LTD., a British Virgin Islands corporation,<br><br>Counterclaimants,<br><br>v.<br><br>FRANK NEMIROFSKY,<br><br>Counterdefendant. | |

# TABLE OF CONTENTS

Page

FACTS ................................................................................................................... 1

ARGUMENT ........................................................................................................ 2

A.    California Recognizes a Broad Attorney-Client Privilege
to Encourage the Free and Open Exchange of Information and
Advice Between Lawyers and Their Clients ................................................. 2

B.    Confidential Communications Between Kim, Nemirofsky and
Ms. Bailey-Wells Leading Up To and During the PRN Litigation
are Covered by the Attorney-Client Privilege ............................................. 6

C.    The Information Nemirofsky Seeks Was Acquired by Ms. Bailey-Wells
as a Result of Confidential Communications with STV Asia and
is Therefore Squarely Covered by the Attorney-Client Privilege ............... 7

    1.    How [Ms. Bailey-Wells] first came to meet the parties,
including, but not limited to whether she or Kirkpatrick & Lockhart
had a prior existing relationship with either party ................................... 7

    2.    What she knows about the parties' prior business relationship .............................. 8

    3.    How the parties described the dispute over the patents when she
and Kirkpatrick & Lockhart were first approached about the PRN Litigation ....... 9

    4.    What her understanding was about Mr. Nemirofsky's relationship
with STV Asia at the outset of Kirkpatrick & Lockhart's representation and
whether that relationship changed during the course of the PRN Litigation .......... 9

    5.    Mr. Nemirofsky's and Mr. Kim's involvement and roles in hiring
a law firm to represent STV Asia and while they were negotiating
the retention agreement and fee schedule with Kirkpatrick & Lockhart ............... 9

    6.    The inventor(s) of the patents which were at issue in the PRN Litigation ............. 9

    7.    The entities which the parties identified as those which were
infringing upon the patents at issue in the PRN Litigation ................................... 10

    8.    Whether she knew about an oral agreement between
Mr. Nemirofsky and Mr. Kim and STV Asia regarding
the division of any recovery from the PRN Litigation .......................................... 10

DEFENDANTS'/COUNTERCLAIMANTS' BRIEF
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION
    Case No.: C 07-2769 JL

9.    All communications between Mr. Nemirofsky and Mr. Kim
      that she witnessed or was privy to relating to Mr. Kim's agreement
      with Mr. Nemirofsky as to Mr. Nemirofsky's role and responsibilities
      in the prosecution of the patents at issue in the PRN Litigation ......................... 10

10.   All communications between Mr. Nemirofsky and Mr. Kim that she
      witnessed or was privy to relating to Mr. Kim's agreement with
      Mr. Nemirofsky as to the division of any recovery from the PRN Litigation ...... 11

11.   All communications between Mr. Nemirofsky and Mr. Kim that she
      witnessed or was privy to relating to any changes or revisions to
      Mr. Kim's agreement with Mr. Nemirofsky as to the division of any recovery
      from the PRN Litigation, including, but not limited to, the communications
      in October of 2006 at Kirkpatrick & Lockhart's San Francisco office ................. 11

12.   What Mr. Nemirofsky did in the scope of the PRN litigation, including,
      but not limited to, his expertise or information he provided counsel or experts
      throughout the course of the litigation, his role in discovery, reviewing
      drafts of briefs, valuation of the patents and settlement value,
      and in preparing for hearings and mediation....................................................... 11

13.   How and to whom invoices regarding Kirkpatrick & Lockhart's
      work on the PRN Litigation were submitted........................................................... 12

14.   The timeliness and/or failure to submit payments to
      Kirkpatrick & Lockhart for work performed on the PRN Litigation................... 12

15.   Any dispute as to the amount billed or owed to
      Kirkpatrick & Lockhart for work performed on the PRN Litigation................... 12

16.   Kirkpatrick & Lockhart's withdrawal as counsel
      for STV Asia in the PRN Litigation........................................................................ 12

17.   The settlement value of the PRN Litigation.......................................................... 13

18.   Mr. Nemirofsky's role and his interactions with the experts
      who were consulted in the PRN Litigation ........................................................... 13

19.   Information about the current law suit .................................................................. 13

CONCLUSION ................................................................................................................ 13

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

*Benge v. Superior Court*
  131 Cal. App. 3d 336 (1982) ........................................................................ 7, 9

5

6

*Carehouse Convalescent Hospital v. Superior Court*
  143 Cal. App. 4th 1558, 1562 (2006) ........................................................ 5, 8

7

*City and County of San Francisco v. Superior Court*
  37 Cal. 2d 227, 235 (1951) .......................................................................... 4, 7

8

9

*D. I. Chadbourne, Inc. v. Superior Court*
  60 Cal. 2d 723, 736-738 (1964) ...................................................................... 6

10

11

*David Welch Co. v. Erskine & Tulley*
  203 Cal. App. 3d 884, 891 (1988) .................................................................. 5

12

*Grosslight v. Superior Court*
  72 Cal. App. 3d 502, 506 (1977) .................................................................... 6

13

14

*Hooser v. Superior Court*
  84 Cal. App. 4th 997, 1003 (2000) ................................................................ 4

15

16

*In re Complex Asbestos Litigation*
  232 Cal. App. 3d 572, 586-587 (1991) .......................................................... 4

17

18

*Mitchell v. Superior Court*
  37 Cal. 3d 591, 611 (1984) .......................................................................... 4, 7

19

20

*People v. Canfield*
  12 Cal. 3d 699, 705 (1974) .............................................................................. 8

21

*Rosso, Johnson, Ross & Ebersold v. Superior Court*
  191 Cal. App. 3d 1514, 1518 (1987) .............................................................. 8

22

23

*Scripps Health v. Superior Court*
  109 Cal. App. 4th 529, 536 (2003) ........................................................... 8, 10

24

25

*Southern California Gas Company v. Public Utilities Commission*
  50 Cal. 3d 31, 37 (1990) ................................................................................ 4

26

27

*Spectra-Physics, Inc. v. Superior Court*
  198 Cal. App. 3d 1487, 1493 (1988) .............................................................. 5

28

**Statutes**

California Evidence Code §917 ............................................................... 5

California Evidence Code §952 ............................................................... 6

California Evidence Code §954 ............................................................... 6

**Rules**

Federal Rules of Evidence, Rule 501 ..................................................... 3

**Miscellaneous**

Schwarzer, *et al.*
  California Practice Guide:  Federal Civil Procedure Before Trial (The Rutter Group 2007) ....... 3

Wegner, *et al.*
  California Practice Guide: Civil Trials and Evidence (The Rutter Group 2007) ................. *passim*

DEFENDANTS'/COUNTERCLAIMANTS' BRIEF                                    Case No.: C 07-2769 JL
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION

1    Defendants and Counterclaimants Seok Ki Kim and STV Asia, Ltd. (collectively,

2    "Defendants") oppose the taking of the deposition of Deborah Bailey-Wells, who served as STV

3    Asia's counsel until April of this year.

4    At its core this is a dispute about an oral contract between Defendants and Plaintiff and

5    Counterdefendant Frank Nemirofsky over how any net proceeds of a patent infringement suit STV

6    Asia brought against PRN Corporation ("PRN") would be divided between Nemirofsky and STV

7    Asia.  Kim, STV Asia's CEO and principal shareholder, enlisted Nemirofsky, the patentee on the

8    patents in suit, to serve as a consultant to STV Asia and work on the case with STV Asia's lawyers.

9    The parties agree that the deal they struck in January, 2006, called for STV Asia to receive 85% of

10    the net proceeds, if any, of the suit, and Nemirofsky to receive 15% of any such net proceeds.

11    Nemirofsky now claims that the deal changed in October, 2006, and that his share increased to 50%.

12    Dr. Kim unequivocally denies that there was any such change.

13    Deborah Bailey-Wells was STV Asia's lead litigation counsel in the patent suit against PRN.

14    Nemirofsky wishes to depose Ms. Bailey-Wells concerning a variety of confidential communications

15    involving Kim and Nemirofsky that fall squarely within the attorney-client privilege.  Indeed, the

16    only relevant information sought by Nemirofsky is covered by the privilege.

17    The Court should prohibit Nemirofsky from taking the deposition of Ms. Bailey-Wells.  At

18    the very least, it should severely restrict the scope of Nemirofsky's questioning.

19    **FACTS**

20    In February 2005, Kim learned that PRN and others were operating an in-store advertising

21    network which appeared to infringe the inventions in STV Asia's patents.  Because Kim resides in Hong

22    Kong, it made sense to ask someone in the United States who was familiar with the technology at issue

23    to assist STV Asia in engaging and supporting legal counsel in prosecuting an infringement claim.  (Kim

24    Decl., ¶¶3-4)

25

26

27

28

DEFENDANTS'/COUNTERCLAIMANTS' BRIEF                                    Case No.: C 07-2769 JL
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION

1        Kim thus informed Nemirofsky, who would soon become a director of STV Asia, of the

2   suspected infringement.[1]  Nemirofsky had invented the patented devices at issue and was therefore a

3   logical choice to assist in the enforcement of STV Asia's rights.  Kim and Nemirofsky agreed that

4   Nemirofsky would receive 15% of STV Asia's net proceeds, if any, derived from judgment or

5   settlement of the claims asserted in the PRN Litigation.  (Kim Decl., ¶¶4-6)

6        Kim and Nemirofsky began researching and interviewing patent law firms to advise STV

7   Asia, investigate its potential infringement claims, and assert those claims on STV Asia's behalf.  In

8   early 2006, Kim and Nemirofsky met with Deborah Bailey-Wells of the law firm of Kirkpatrick &

9   Lockhart Nicholson Graham LLP ("Kirkpatrick & Lockhart").  Shortly following, STV Asia retained

10  Ms. Bailey-Wells and her firm to represent it in an infringement action against PRN.  (Kim Decl., ¶7)

11       On March 2, 2006, STV Asia, acting through Kirkpatrick & Lockhart, filed suit against PRN

12  and others in the United States District Court for the Northern District of California (*STV Asia, Ltd. v.*

13  *PRN Corporation, et al.*, Case No. C 06 1664 JCS, hereinafter "PRN Litigation").  Ms. Bailey-Wells

14  served as lead litigation counsel.  (Kim Decl., ¶7)

15       Over the next year, Kim and Nemirofsky, in their capacities as representatives of STV Asia,

16  had several meetings with Ms. Bailey-Wells and other Kirkpatrick & Lockhart attorneys to discuss

17  the PRN Litigation.  These meetings covered the entire subject matter of the case.  Kim, Nemirofsky,

18  and STV Asia's attorneys discussed (among other things) the strengths and weaknesses of STV

19  Asia's patent infringement claims, case strategy, achievable damages, the Markman hearing to

20  determine proper construction of the patent claims, and settlement opportunities.  As a result of these

21  meetings and other communications between and among Kim, Nemirofsky, Ms. Bailey-Wells, and

22  other Kirkpatrick & Lockhart attorneys, STV Asia filed three amended complaints, extensive claim

23  construction briefs, and briefs and papers relating to substantial motion practice in the PRN

24  Litigation.  Kim and Nemirofsky never met with Ms. Bailey-Wells or other Kirkpatrick & Lockhart

25  attorneys to discuss matters unrelated to the PRN litigation.  (Kim Decl., ¶8)

26  _____

27  [1] STV Asia's resolution naming Nemirofsky a director, dated July 1, 2005 and signed by Kim and
    Nemirofsky, is attached as Exhibit A to the Declaration of Seok Ki Kim, filed concurrently with this

28  brief.

-2-

On April 9, 2007, the Court granted Kirkpatrick & Lockhart's motion to withdraw as counsel for STV Asia.  At a mediation in May 2007, STV Asia and PRN entered into an agreement whereby the parties settled the PRN Litigation, and STV Asia sold the two patents at issue to PRN.  Kim and Nemirofsky attended the mediation on behalf of STV Asia. (Kim Decl., ¶9)

Nemirofsky stopped serving as a director of STV Asia on July 31, 2006, but he continued to serve as STV Asia's agent for purposes of the PRN litigation.  Nemirofsky apparently believes he was still a director through the time of the mediation.  (*See* Appel Decl., Ex. A (Nemirofsky Decl. in Supp. of Pl.'s *Ex Parte* App. to Extend TPO, 4:27 ("As of the date of the mediation, I held the position of a director of STV Asia.")).

On May 16, 2007, Nemirofsky brought this action seeking 50% of the amount STV Asia received from PRN per the May 2007 agreement.  Shortly thereafter, Defendants removed this case to this Court on the basis of diversity jurisdiction and filed a counterclaim for abuse of process.

Nemirofsky now wishes to depose Ms. Bailey-Wells concerning 19 specific categories of information, as stated in his counsel's letter of September 24, 2007.[2]  Each of these categories involves information known to Ms. Bailey-Wells only as a result of confidential communications with her client, STV Asia.  Thus, the information Nemirofsky seeks is covered by the attorney-client privilege.

## ARGUMENT

"In *diversity* cases, privileges are determined under the state law that otherwise governs decision of the case."  Schwarzer, *et al.*  California Practice Guide:  Federal Civil Procedure Before Trial, §11:645 at 11-75 (The Rutter Group 2007).  *See* Fed. R. Evid., R. 501.  Therefore, California law regarding attorney-client privilege applies.

A.    **California Recognizes a Broad Attorney-Client Privilege to Encourage the Free and Open Exchange of Information and Advice Between Lawyers and Their Clients.**

The leading practice guide on California civil procedure notes the "broad application" of the attorney-client privilege under California law.  Wegner, *et al.*, California Practice Guide: Civil Trials

---

[2] This letter is attached as Exhibit B to the Declaration of Seth I. Appel, filed concurrently with this brief.

and Evidence, §8:1987 at 8E-33 (The Rutter Group 2007).  The Court of Appeal has explained:

> The attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions.

*Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1003 (2000).  In the present case, as discussed below, all relevant communications were made during preliminary discussions between Ms. Bailey-Wells and STV Asia and the resulting professional relationship..

The reason for California's broad application of the attorney-client privilege is to "protect[s] a person's right to freely and fully confer with a confide in an attorney in order to receive competent legal advice and representation."  Wegner, *supra*, §8:1986 at 8E-33.  The California Supreme Court has recognized that the attorney-client privilege "is fundamental to the free and open exchange of information and advice between lawyers and their clients, and more broadly to the proper functioning of our judicial system."  *Mitchell v. Superior Court*, 37 Cal. 3d 591, 611 (1984).

> Adequate legal representation in the ascertainment and enforcement of rights or the prosecution or defense of litigation compels a full disclosure of the facts by the client to his attorney.  "Unless he makes known to the lawyer all the facts, the advice which follows will be useless, if not misleading; the lawsuit will be conducted along improper lines, the trial will be full of surprises, much useless litigation may result. . . . [U]nless the client knows that his lawyer cannot be compelled to reveal what is told him, the client will suppress what he thinks to be unfavorable facts."

*City and County of San Francisco v. Superior Court*, 37 Cal. 2d 227, 235 (1951).  Accordingly, the attorney-client privilege is "a hallmark of Anglo-American jurisprudence."  *In re Complex Asbestos Litigation*, 232 Cal. App. 3d 572, 586-587 (1991).[3]

The proposed deposition of Ms. Bailey-Wells is fraught with risk:  risk for the deponent, risk for her former client, and risk for the judicial process.

---

[3] "Application of the privilege will occasionally shield relevant information which may very well create obstacles for the party seeking the privileged information; however, the Legislature and the courts of this state have determined that the party's concern is 'outweighed by the importance of preserving confidentiality in the attorney-client relationship.'"  *Southern California Gas Company v. Public Utilities Commission*, 50 Cal. 3d 31, 37 (1990) (*quoting Mitchell*, 37 Cal. 3d at 599)).

In light of these policy considerations, California law frowns on depositions of an opposing party's attorneys and former attorneys. Indeed, depositions of opposing counsel are "presumptively improper, severely restricted, and require 'extremely' good cause—a high standard." *Carehouse Convalescent Hospital v. Superior Court*, 143 Cal. App. 4th 1558, 1562 (2006). *See Spectra-Physics, Inc. v. Superior Court*, 198 Cal. App. 3d 1487, 1493 (1988).

California courts recognize a three-prong test for determining whether a party may take the deposition of opposing counsel: "First, does the proponent have other practicable means to obtain the information? Second, is the information crucial to the preparation of the case? Third, is the information subject to a privilege?" *Carehouse*, 143 Cal. App. 4th at 1563.[4] The burden is on the party seeking the deposition—in this case, Nemirofsky—to establish the first two prongs. *Id*. The burden is on the party asserting the privilege—in this case STV Asia—to establish the third prong. *Id*. However, attorney-client communications are *presumed* to be confidential, and the opponent of the claim of privilege has the burden to establish that the communication was not confidential. Cal. Evid. Code §917.

Nemirofsky has not established "extremely good cause" for taking the deposition of STV Asia's former counsel. As discussed in detail below, essentially all of the information sought by Nemirofsky is covered by the attorney-client privilege. What may fall outside the privilege is either easily ascertainable from other sources or irrelevant to this case.

The attorney-client privilege is of unlimited duration. "The privilege attaches upon the initial client consultation . . . and *continues* beyond the end of the attorney-client relationship for so long as a 'holder' is in existence." Wegner, *supra*, §8:1989 at 8E-33. *See David Welch Co. v. Erskine & Tulley*, 203 Cal. App. 3d 884, 891 (1988) ("This duty to protect confidential information continues even after the formal relationship ends.") Thus, the fact that Ms. Bailey-Wells no longer represents

---

[4] In *Carehouse*, the court refused to order the deposition of defendants' counsel. It applied the three-prong test and concluded that plaintiff failed to establish "extremely good cause." *Carehouse*, 143 Cal. App. 4th at 1566.

1  STV Asia has no significance in determining the applicability of the privilege to communications that

2  took place during the attorney-client relationship.

3  **B.    Confidential Communications Between Kim, Nemirofsky and Ms. Bailey-Wells Leading
   Up to and During the PRN Litigation are Covered by the Attorney-Client Privilege.**

4

5      The California Evidence Code provides that "confidential communications between client and

6  lawyer" are covered by the attorney-client privilege.  Cal. Evid. Code §954.  It defines "confidential

7  communication between client and lawyer" to mean

8          information transmitted between a client and his or her lawyer in the course of
           that relationship and in confidence by a means which, so far as the client is
9          aware, discloses the information to no third persons other than those who are
           present to further the interest of the client in the consultation or those to whom
10         disclosure is reasonably necessary for the transmission of the information or the
           accomplishment of the purpose for which the lawyer is consulted, and includes a
11         legal opinion formed and the advice given by the lawyer in the course of that
           relationship.
12

13 Cal. Evid. Code §952.

14     Kim's and Nemirofsky's communications with Ms. Bailey-Wells are considered

15 communications of STV Asia for purposes of determining attorney-client privilege.

16         Obviously, where the client is a corporation (or other entity), the corporate entity
           cannot communicate as such with its lawyer; rather, attorney-client
17         communications necessarily must be through *individuals* acting for the entity.
           Those communications often emanate from corporate directors and officers.  But
18         in many cases, attorney communications with the entity's other employees will
           likewise be protected by the attorney-client privilege . . . .
19

20

21 Wegner, *supra*, §8:2007 at 8E-38.  This includes communications with the entity's agent, at least

22 where the agent is acting within the scope of his agency.  *See D. I. Chadbourne, Inc. v. Superior*

23 *Court of San Francisco*, 60 Cal. 2d 723, 736-738 (1964); *Grosslight v. Superior Court*, 72 Cal. App.

24 3d 502, 506 (1977) ("[T]he attorney-client privilege does not protect information coming from a third

25 party who is not a client unless the person is acting as the client's agent.").

26     Kim has always been CEO of STV Asia. (Kim Decl., ¶2)  Nemirofsky served as a director of

27 STV Asia from July 2005 through July 2006, after which time he continued to serve as STV Asia's

28

-6-

1    agent for purposes of the PRN Litigation.[5]  (Kim Decl., ¶¶4-6)  Indeed, he thought he was acting as

2    STV Asia's director through the conclusion of that litigation.    Therefore, confidential

3    communications between either of these individuals and Ms. Bailey-Wells concerning or relating to

4    the PRN Litigation are covered by the attorney-client privilege.

5    **C.    The Information Nemirofsky Seeks Was Acquired by Ms. Bailey-Wells as a Result of
        Confidential Communications with STV Asia and is Therefore Squarely Covered by the**
6        **Attorney-Client Privilege.**

7            As noted above, California recognizes a broad attorney-client privilege.    Confidential

8    communications are privileged whether they relate to factual information or to legal advice.  *Mitchell*,

9    37 Cal. 3d at 601 ("Neither the statutes articulating the attorney-client privilege nor the cases which

10   have interpreted it make any differentiation between 'factual' and 'legal' information.").

11           Furthermore, such communications need not be verbal, but may involve any acts perceived by

12   the attorney during a client meeting.

13           The privilege embraces not only oral or written statements but actions, signs, or
14           other means of communicating information by a client to his attorney. . . .
             Almost any act, done by the client in the sight of the attorney and during the
15           consultation, may conceivably be done by the client as the subject of a
             communication, and the only question will be whether, in the circumstances of
16           the case, it was intended to be done as such.

17   *San Francisco*, 37 Cal. 2d at 235-236 (citations and internal quotation marks omitted).  *See Benge v.*

18   *Superior Court*, 131 Cal. App. 3d 336, 345 (1982).

19           With these general rules in mind, we turn to the 19 categories of information about which

20   Nemirofsky wishes to question Ms. Bailey-Wells.

21           **1.    How [Ms. Bailey-Wells] first came to meet the parties, including, but not
                 limited to whether she or Kirkpatrick & Lockhart had a prior existing**
22               **relationship with either party**

23           Kim and Nemirofsky, acting on behalf of STV Asia, first met with Ms. Bailey-Wells in early-

24   2006 to discuss STV Asia's patent rights and its claims against PRN and other possible infringers.

25

26   _____

27   [5] Assuming *arguendo* Nemirofsky was neither a director nor an agent of STV Asia, he was clearly
     present at all meetings with STV Asia's counsel to "further the interest" of STV Asia.

28

1    This sort of communication is unquestionably covered by the attorney-client privilege.

2            It is well-established that the attorney-client privilege covers communications during an initial

3    consultation, before counsel was actually retained.   "The lawyer-client privilege is, indeed, so

4    extensive that where a person seeks the assistance of an attorney with a view to employing him

5    professionally, any information acquired by the attorney is privileged whether or not actual

6    employment results." *People v. Canfield*, 12 Cal. 3d 699, 705 (1974).  *See* Wegner, *supra*, §8:2039

7    at 8E-54 ("Confidential information disclosed to an attorney by a potential client in the initial

8    consultation is privileged even if the attorney is not ultimately retained."); *Rosso, Johnson, Ross &*

9    *Ebersold v. Superior Court*, 191 Cal. App. 3d 1514, 1518 (1987) ("The privilege applies to

10   confidential communications during preliminary negotiations with the attorney even if employment is

11   declined.").

12           The fact and the date of the initial consultation would likely fall outside the privilege.  But this

13   information is hardly relevant to the present case.   Surely it is not "crucial" to Nemirofsky's

14   preparation, as required under *Carehouse*.  At any rate, Nemirofsky cannot seriously contend that he

15   needs to depose Ms. Bailey-Wells in order to find out this information.  He was there.[6]

16           **2.    What she knows about the parties' prior business relationship**

17           To the extent that Ms. Bailey-Wells learned about Kim's and Nemirofsky's prior business

18   relationship through their consultation with her in connection with the PRN Litigation, this

19   information would be privileged.   Again, the relevance of such information to the present case is, at

20   best, tenuous.  It is hardly "crucial" to Nemirofsky's case.

21           If Ms. Bailey-Wells somehow learned about the parties' prior business relationship from other

22   sources, Nemirofsky is free to rely on those other sources.  There is no need to depose STV Asia's

23   former counsel.  *See Scripps Health v. Superior Court*, 109 Cal. App. 4th 529, 536 (2003) ("It may be

24   that the factual aspect of the [privileged] reports will be revealed during some other aspect of

25   discovery, but this does not make the [privileged] reports discoverable.")

26   _____

27   [6] Neither Kim nor STV Asia had a "prior relationship" with Ms. Bailey-Wells or Kirkpatrick &
     Lockhart. (Kim Decl., ¶7)  Nemirofsky knows whether *he* had a "prior relationship" with Ms. Bailey-
28   Wells or her firm.

DEFENDANTS'/COUNTERCLAIMANTS' BRIEF                                                    Case No.: C 07-2769 JL
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION

1

2

      **3.   How the parties described the dispute over the patents when she and Kirkpatrick & Lockhart were first approached about the PRN Litigation**

3

      This category consists of paradigmatic information covered by the attorney client privilege.  It

4

is purely information given by STV Asia to its prospective counsel in order to obtain legal advice and

5

to enforce its rights.

6

      As discussed above, that STV Asia may not have retained Kirkpatrick & Lockhart at the time

7

of the initial consultation is unimportant.

8

9

      **4.   What her understanding was about Mr. Nemirofsky's relationship with STV Asia at the outset of Kirkpatrick & Lockhart's representation and whether that relationship changed during the course of the PRN Litigation**

10

      Ms. Bailey-Wells's "understanding" based on her conversations with Kim and Nemirofsky is

11

also covered by the attorney-client privilege.  "The express inclusion of a 'legal opinion' in the last

12

clause of [Cal. Evid. Code §952] precludes inquiry into the lawyer's uncommunicated impressions

13

and conclusions concerning the case." *Benge*, 131 Cal. App. 3d at 345.

14

      At any rate, Ms. Bailey-Wells's "understanding" of the parties' relationship has little

15

significance.  Nemirofsky can establish the parties' relationship through other sources without

16

contravening the attorney-client privilege and offending public policy.

17

18

      **5.   Mr. Nemirofsky's and Mr. Kim's involvement and roles in hiring a law firm to represent STV Asia and while they were negotiating the retention agreement and fee schedule with Kirkpatrick & Lockhart**

19

      To the extent that Ms. Bailey-Wells could shed any light on this topic, her testimony would be

20

covered by the attorney-client privilege.  It would consist entirely of communications from Kim and

21

Nemirofsky, acting on behalf of STV Asia, concerning STV Asia's patent rights, PRN's

22

infringement, and litigation strategy.

23

      **6.   The inventor(s) of the patents which were at issue in the PRN Litigation**

24

      This is a matter of fact verifiable by reference to public records.  Moreover, it is not in

25

dispute.  The parties agree that Nemirofsky was the inventor.  Ms. Bailey-Wells's opinion on this

26

subject is unnecessary and irrelevant.

27

28

DEFENDANTS'/COUNTERCLAIMANTS' BRIEF                      Case No.: C 07-2769 JL
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION

**7.     The entities which the parties identified as those which were infringing upon the patents at issue in the PRN Litigation**

Again, this category consists of paradigmatic information covered by the attorney client privilege. It is unquestionably information given by STV Asia to its prospective counsel in order to obtain legal advice and to enforce its rights.

**8.     Whether she knew about an oral agreement between Mr. Nemirofsky and Mr. Kim and STV Asia regarding the division of any recovery from the PRN Litigation**

Ms. Bailey-Wells's knowledge of any agreement between Nemirofsky and Kim or STV Asia would have resulted from confidential attorney-client conversations. As with Category No. 2 above, if this information was acquired by Ms. Bailey-Wells as a result of communications from Kim or Nemirofsky during attorney-client meetings, it is covered by the attorney-client privilege. If not, then it must be available from other sources, and there is no need for Ms. Bailey-Wells's testimony.

**9.     All communications between Mr. Nemirofsky and Mr. Kim that she witnessed or was privy to relating to Mr. Kim's agreement with Mr. Nemirofsky as to Mr. Nemirofsky's role and responsibilities in the prosecution of the patents at issue in the PRN Litigation**

All such communications occurred during attorney-client meetings concerning the PRN Litigation. Nemirofsky attempts to paint STV Asia's counsel as an objective bystander to such communications, but that it not the case. It bears repeating that Kim and Nemirofsky *never* met with Ms. Bailey-Wells or other Kirkpatrick & Lockhart attorneys to discuss matters unrelated to the PRN litigation.

Any pertinent communications observed by Ms. Bailey-Wells at these meetings are covered by the attorney-client privilege. *See Scripps Health*, 109 Cal. App. 4th at 535-536 ("The trial court's remark that the reports are not privileged because they primarily involve 'observational information' as opposed to 'opinion information' was unsound as this distinction is not contained in statutes articulating the attorney-client privilege nor cases interpreting the scope of the privilege."). Ms. Bailey-Wells would not have been "privy to" such communications if not for her role as STV Asia's attorney, and STV Asia would not have made such communications if not for its understanding that the attorney-client privilege allows for full disclosure in one's attorney's office. *See* Wegner, *supra*,

-10-

§8:2024 at 8E-47 ("The privilege also protects counsel's observations made 'as a consequence' of attorney-client communications.").

**10. All communications between Mr. Nemirofsky and Mr. Kim that she witnessed or was privy to relating to Mr. Kim's agreement with Mr. Nemirofsky as to the division of any recovery from the PRN Litigation**

As with Category No. 9 above, all such communications occurred during attorney-client meetings concerning the PRN Litigation and, as such, they are covered by the attorney-client privilege.

**11. All communications between Mr. Nemirofsky and Mr. Kim that she witnessed or was privy to relating to any changes or revisions to Mr. Kim's agreement with Mr. Nemirofsky as to the division of any recovery from the PRN Litigation, including, but not limited to, the communications in October of 2006 at Kirkpatrick & Lockhart's San Francisco office**

Kim emphatically denies that there was ever any change in Nemirofsky's 15% participation in the net proceeds of the PRN Litigation. But even assuming *arguendo* that communications between Kim and Nemirofsky took place in Ms. Bailey-Wells's presence, these would have occurred during attorney-client meetings concerning the PRN Litigation. As with Category Nos. 9 and 10 above, they are directly covered by the attorney-client privilege.

Nemirofsky claims (and Kim denies) that the compensation change was discussed in an October 2006 meeting at Kirkpatrick & Lockhart's San Francisco Office. Nemirofsky himself has stated in a previously-filed declaration that the purpose of this meeting was "to discuss the status of the litigation." (*See* Appel Decl., Ex. A (Nemirofsky Decl. in Supp. of Pl.'s *Ex Parte* App. to Extend TPO, 4:9-10)) Allowing Ms. Bailey-Wells to testify about the happenings at such a meeting would completely disregard the attorney-client privilege and its underlying public policy.

**12. What Mr. Nemirofsky did in the scope of the PRN litigation, including, but not limited to, his expertise or information he provided counsel or experts throughout the course of the litigation, his role in discovery, reviewing drafts of briefs, valuation of the patents and settlement value, and in preparing for hearings and mediation**

As with Category No. 5 above, to the extent that Ms. Bailey-Wells could shed any light on this topic, her testimony would be covered by the attorney-client privilege. It would consist entirely

of communications from Nemirofsky, STV Asia's director or agent, concerning STV Asia's claims against PRN, litigation strategy, and other areas at the heart of the attorney-client relationship.[7]

**13.  How and to whom invoices regarding Kirkpatrick & Lockhart's work on the PRN Litigation were submitted**

This information does not appear to be covered by the attorney-client privilege.  It also does not appear to have any bearing on the present litigation.  It certainly is not "crucial."

If Nemirofsky truly needs to find out this information, he could depose an administrator at Kirkpatrick & Lockhart.  (Indeed, it is unlikely that Ms. Bailey-Wells, STV Asia's lead litigation counsel and a partner at Kirkpatrick & Lockhart with over twenty years of experience, handles the firm's invoices.)  Better yet, Nemirofsky could subpoena the invoices themselves.  There is simply no need to depose Ms. Bailey-Wells.

**14.  The timeliness and/or failure to submit payments to Kirkpatrick & Lockhart for work performed on the PRN Litigation**

Again, it is unclear how this information is relevant, let alone crucial, to the current litigation.

**15.  Any dispute as to the amount billed or owed to Kirkpatrick & Lockhart for work performed on the PRN Litigation**

This category includes privileged information, since any dispute concerning work performed on the PRN Litigation necessarily involves communications as to STV Asia's rights, Kirkpatrick & Lockhart's efforts to enforce those rights, and the success of those efforts.  To the extent that this category does not involve these issues, its relevance is unclear.

**16.  Kirkpatrick & Lockhart's withdrawal as counsel for STV Asia in the PRN Litigation**

The occurrence and timing of Kirkpatrick & Lockhart's withdrawal as counsel is not privileged.  These matters are public knowledge, reflected in this Court's records, and not in dispute.

---

[7] As this litigation continues, and the parties engage in written discovery and party depositions, it is possible that issues included in Category No. 12 will prove pertinent to STV Asia's defenses.  If so, STV Asia may be inclined to waive the attorney-client privilege with regard to these issues and allow a limited deposition of Ms. Bailey-Wells at a later time.

-12-

As noted above, however, STV Asia's dispute with Kirkpatrick & Lockhart that led to the firm's withdrawal is either covered by the attorney-client privilege or irrelevant.

### 17.   The settlement value of the PRN Litigation

Any information Ms. Bailey-Wells has regarding the settlement value of the PRN Litigation came to her solely because she had been consulted as litigation counsel in the case, and therefore would be privileged.

### 18.   Mr. Nemirofsky's role and his interactions with the experts who were consulted in the PRN Litigation

See Category No. 12, above.

### 19.   Information about the current law suit

This category is so vague that it is difficult to determine whether it is covered by the attorney-client privilege.  Surely when the Court ordered Nemirofsky to provide *specific* categories of information on which he seeks to depose Ms. Bailey-Wells it had something more precise in mind.

At any rate, Ms. Bailey-Wells has not had any role in the present litigation, and she could not possibly have relevant information that could not be obtained from another source (unless, of course, that information was obtained through confidential communications during the PRN Litigation).

### CONCLUSION

For the reasons discussed above, the Court should prohibit Nemirofsky from deposing Ms. Bailey-Wells, who served as STV Asia's counsel as recently as six months ago.  If the Court chooses to allow the deposition of Ms. Bailey-Wells to go forward, it should drastically limit the scope of questioning in order to protect Ms. Bailey-Wells, her former client, and the judicial process.

Dated:  October 3, 2007                    Respectfully submitted,

                                           HARVEY SISKIND LLP


                                           By: _____/s/_____
                                                        Seth I. Appel

                                           Attorneys for Defendants and Counterclaimants
                                           SEOK KI KIM and STV ASIA, LTD.

-13-