EXHIBIT A
TO DECLARATION OF SETH I. APPEL
IN SUPPORT OF BRIEF OF DEFENDANTS
AND COUNTERCLAIMANTS
CONCERNING ATTORNEY-CLIENT PRIVILEGE
AND THE DEPOSITION
OF DEBORAH BAILEY-WELLS

Jonathan M. Cohen (SBN: 168207)
Martin Sabelli (SBN: 164772)
Robyn T. Callahan (SBN: 225472)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5894
Telephone: 415-591-1000
Facsimile: 415-591-1400
Email: jcohen@winston.com
rcallahan@winston.com

Attorneys for Plaintiff
FRANK NEMIROFSKY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANK NEMIROFSKY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SEOK KI KIM; STV ASIA, LTD. a British Virgin Islands corporation; and DOES 1 through 20, inclusive,<br><br>　　　　Defendants. | Case No. 3:07-CV-02769 – JL<br>Hon. Magistrate James Larson<br><br>**DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER**<br><br>**REDACTED COPY**<br>**FILED UNDER SEAL** |

I, Frank R. Nemirofsky, declare as follows:

1. I am the Plaintiff in the above-captioned lawsuit. I make this declaration in support of Plaintiff's *Ex Parte* Motion to Extend the Temporary Protective Order.

2. I have personal knowledge of the facts set forth herein and could and would competently testify thereto.

3. This case arises from Defendant Kim's breach of an agreement he made with me regarding their partnership in the litigation of <u>STV Asia Ltd. v. PRN Corporation and Best Buy Company, Inc.</u> ("PRN Litigation") and the distribution of the settlement funds following the

1  mediation of the PRN Litigation. Attached hereto as Exhibit A is a true and correct copy of the
2  Confidential Settlement and Assignment Agreement and General Release.
3      4.    My business relationship with Mr. Kim began in or about 1991 when Mr. Kim
4  purportedly became an investor in NBL Communications, Inc. ("NBL"), the company that I co-
5  founded.
6      5.    In September of 1993, I was contacted by NBL, through Mr. Kim and J.H. Choi (the
7  CEO that Mr. Kim hand-picked), and was asked to become "partners" with them to restructure NBL
8  and to develop the StoreTelevision ("STV") Network, which would later become the basis for the
9  creation of STV Asia Ltd. I agreed to return to NBL as the Chairman of the Company under the
10 terms of my original October 1991 Contract. A temporary consulting agreement was put in place
11 and I returned to work for NBL. In reliance upon ongoing promises from Mr. Choi and Mr. Kim, I
12 continued to work pursuant to my consulting agreement awaiting the long-term executive
13 compensation agreement which had been promised by Mr. Kim as a condition for my return to NBL.
14 However, the long-term employment agreement was never put into place.
15     6.    Prior to working for NBL I invented technology for which the U.S. Patent and
16 Trademark Office issued U.S. Patent No. 5,412,416 ("416 Video Media Patent") on May 2, 1995 to
17 me exclusively for a unique "Video Media Distribution Network Apparatus and Method" which
18 allows video programs to be transmitted from a distribution center to a multitude of receiving sites,
19 typically retail stores, dispersed over a wide geographic area. While I was part of NBL, I agreed to
20 assign my rights in the Video Media invention to NBL. The assignment was contingent on my
21 ongoing partnership in NBL and in exchange for the stock ownership that I was supposed to have in
22 NBL. However, after the assignment, I was fired without cause by Mr. Kim.

**REDACTED**

27     7.    During the time that I was working for NBL pursuant to the consulting agreement, I

2
DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER
Case No. 3:07-CV-02769 – JL

1  invented the technology which became patented as U.S. Patent No. 5,983,069 entitled, "Point of
2  Purchase Video Distribution System" ("069 Purchase Video Patent"), which was issued on
3  November 9, 1999, by the U.S. Patent and Trademark Office. I was instrumental in obtaining this
4  patent and am knowledgeable about this patent.

**REDACTED**

8.  On March 2, 2006, at Mr. Kim's direction, after we made a joint decision to proceed, STV Asia, Ltd. filed a patent infringement suit against PRN Corporation and Best Buy Company, Inc. regarding the 069 Purchase Video Patent and the 416 Video Media Distribution Patent. (STV Asia, Ltd. is incorporated in the British Virgin Islands and its principal place of business in is Hong Kong.) Several months before the suit was filed Mr. Kim contacted me and asked me to be a "partner" in the litigation against PRN. Mr. Kim, lacked the operational, technical and intellectual property knowledge and expertise regarding the patents at issue in the infringement action and needed my expertise and advice in order to prosecute the PRN patent litigation. Mr. Kim asked me to "take the lead" in working with litigation counsel on the PRN litigation. I viewed this as an opportunity to recoup the money that I am still owed from my past business dealings with Mr. Kim and the work I did for NBL.

9.  At the outset, Mr. Kim explained, and I agreed, that my work on the PRN litigation would be on a limited, as needed basis, totaling only two to three hours per week on average. As such, prior to the filing of the patent infringement suit, Mr. Kim and I entered into an oral agreement whereby I agreed to provide business, operational and technical advice and assistance to Defendants

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

and their litigation counsel in the PRN litigation in exchange for fifteen (15%) of the net recovery from PRN (after reimbursement of the costs of the expenses of the litigation). In addition, the modification of the PRN litigation settlement division is further documented in my April 16, 2007 correspondence to Mr. Kim and my follow-up April 23, 2007 memo to Mr. Kim. True and correct copies of each are attached hereto as Exhibits F and G, respectively.

10. From the outset of the PRN litigation, I spent significantly more time working on the case than what was estimated or asked of me by Mr. Kim. (In fact, I have has spent more than 2,500 hours working on the PRN litigation pursuant to my agreement with Mr. Kim.)

11. In or about October of 2006, Mr. Kim and I met at Kirkpatrick & Lockhart's San Francisco office to discuss the status of the litigation at which time we also notified our attorneys about the modification to our agreement. Prior to the meeting, Mr. Kim and I agreed that in consideration of the excess time which I had already worked, as well as my ongoing time commitment and the need for my technical and operational knowledge and expertise, I was entitled to a larger share of any proceeds from the PRN litigation. Mr. Kim agreed to modify his agreement with me such that my share of the PRN litigation net recovery would be raised from fifteen percent (15%) to fifty percent (50%). This agreement was memorialized and confirmed in my October 9, 2006 letter to Mr. Kim which I gave to Mr. Kim at the October 2006 meeting. Attached hereto as Exhibit B is a true and correct copy of my October 9, 2006 letter to Mr. Kim. STV Asia's then attorney, Deborah Bailey-Wells, was also present at our October 2006 meeting when Mr. Kim acknowledged his agreement to increase my share of any PRN Litigation proceeds to fifty percent (50%) and she witnessed me handing the October 9, 2006 letter to Mr. Kim.

12. The PRN litigation was ultimately settled at mediation in April and May of 2007. Attached hereto as Exhibit A is a true and correct copy of the confidential settlement agreement and release. Both Mr. Kim and I attended the mediation. Mr. Kim's objective at mediation was to get as much as he could in one day and "take the money and run". **REDACTED**

As of the date of the mediation, I held the position of a director of STV Asia. Attached as

4
DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER
Case No. 3:07-CV-02769 – JL

Exhibit C is a true and correct copy of the mediation sign-in sheet where I am listed as a director of STV Asia. Although I, as a director of STV Asia, I was initially told that I was to be a signator to the settlement agreement, I was apparently removed as a director prior to the final signing and my name was taken off the signature blocks of the final settlement agreement. Attached hereto as Exhibit I is a true and correct copy of one of the initial drafts of the PRN settlement agreement wherein the signature block provides for the signatures of two directors of STV Asia, Ltd., Mr. Kim and myself.

13. Subsequently, I learned from Jim Smith, the attorney who represented STV Asia in the mediation, that as of May 7, 2007 (prior to the date the final settlement agreement was executed), I had been removed as a director of STV Asia.

14. On May 9, 2007, Mr. Kim emailed me detailing "our mutual understanding" as to the division of the settlement proceeds noting that my disbursement was fifteen percent (15%). Attached hereto as Exhibit D is a true and correct copy of Mr. Kim's May 9, 2007 email to me.

15. During the last week of May, I was in the process of transferring this case from Bowles & Verna to Winston & Strawn.

16. In or about the middle of May of 2007, when the settlement was being finalized, Mr. Kim told me that I should transfer my share of the settlement proceeds to him to "hold" for me in an off-shore account so that I could avoid paying taxes and reporting said proceeds.

17.

**REDACTED**

5
DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER
Case No. 3:07-CV-02769 – JL

# REDACTED

18. I was told on several occasions by Deborah Bailey-Wells that Mr. Kim was in serious arrears to Kirkpatrick & Lockhart with respect to the legal fees he owed in conjunction with their representation of STV Asia in the PRN litigation. I was informed by Ed Sangster, the managing partner of Kirkpatrick & Lockhart Preston Gates' San Francisco Office, that the outstanding attorneys' fees and legal costs for the PRN litigation were as high as $762,823.50 as of November 22, 2006.

19. I am prepared to post the $10,000 bond provided for under Cal. Civ. Proc. Code on July 27, 2007 if this Court extends the TPO.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 22nd day of June, 2007 at Danville, California.

_____
FRANK NEMIROFSKY

SF:175788.1

6
DECLARATION OF FRANK NEMIROFSKY IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION TO EXTEND THE TEMPORARY PROTECTIVE ORDER
Case No. 3:07-CV-02769 – JL