1  HARVEY SISKIND LLP
   D. PETER HARVEY (SBN 55712)
2  e-mail:  pharvey@harveysiskind.com
   SETH I. APPEL (SBN 233421)
3  e-mail:  sappel@harveysiskind.com
   Four Embarcadero Center, 39th Floor
4  San Francisco, California  94111
5  Telephone:  (415) 354-0100
   Facsimile:  (415) 391-7124
6

7  Attorneys for Defendants and Counterclaimants
   SEOK KI KIM and STV ASIA, LTD.

8

9                 IN THE UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12

13  FRANK NEMIROFSKY,                          Case No.:  C 07-2769 JL

14                 Plaintiff,                  OPPOSITION BRIEF OF DEFENDANTS
                                               AND COUNTERCLAIMANTS
15         v.                                  CONCERNING ATTORNEY-CLIENT
                                               PRIVILEGE AND PLAINTIFF'S PROPOSED
16  SEOK KI KIM; STV ASIA, LTD., a British     DEPOSITION OF DEBORAH BAILEY-
    Virgin Islands corporation; and DOES 1     WELLS
17  through 20, inclusive,

18                 Defendants.                 Date:   October 31, 2007
                                               Time:   9:30 a.m.
19
                                               The Honorable James Larson
20                                             Courtroom F, 15th Floor

21  SEOK KI KIM and STV ASIA, LTD., a
    British Virgin Islands corporation,

22                 Counterclaimants,

23         v.

24  FRANK NEMIROFSKY,

25                 Counterdefendant.

26

27

28

DEFENDANTS'/COUNTERCLAIMANTS' OPPOSITION BRIEF                        Case No.: C 07-2769 JL
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION

1

**TABLE OF CONTENTS**

Page

1.    The Parties' Relationships are Clear:  STV Asia was Ms. Bailey-Wells's Client,
      and Nemirofsky was its Director and Agent ................................................................. 1

2.    Nemirofsky was Not a Separate Client of Ms. Bailey-Wells ............................................ 2

3.    That STV Asia's Former Counsel May Have Relevant Information
      Does Not Mean It is Discoverable ................................................................................... 3

4.    All Relevant Communications Were Made During the Course of
      STV Asia's Professional Relationship with Ms. Bailey-Wells ......................................... 3

5.    The Attorney-Client Privilege Would Serve Little Purpose if
      Privileged Information Could be Used Against Clients in Future Litigation ..................... 5

6.    Privileged Communications are Not "At Issue" ............................................................... 5

CONCLUSION .......................................................................................................................... 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- i -

1

**TABLE OF AUTHORITIES**

2

Page(s)

**Cases**

3

*2,022 Ranch v. Superior Court*

4

   113 Cal. App. 4th 1377 (2003) ........................................................................................... 4

5

*Carehouse Convalescent Hospital v. Superior Court*

   143 Cal. App. 4th 1558, 1562 (2006) ............................................................................... 1

6

7

*City and County of San Francisco v. Superior Court*

   37 Cal. 2d 227, 235 (1951) ........................................................................................... 3, 5

8

*Holm v. Superior Court*

9

   42 Cal. 2d 500 (1942) ....................................................................................................... 4

10

*Hooser v. Superior Court*

   84 Cal. App. 4th 997, 1003 (2000) ................................................................................... 4

11

12

*Mitchell v. Superior Court*

   37 Cal. 3d 591, 600 (1984) ............................................................................................... 3

13

*Montebello Rose Co. v. Agricultural Labor Relations Board*

14

   119 Cal. App. 3d 1 (1981)................................................................................................. 4

15

*People v. Canfield*

16

   12 Cal. 3d 699, 705 (1974) ............................................................................................... 3

17

*Southern California Gas Company v. Public Utilities Commission*

   50 Cal. 3d 31, 37 (1990) ................................................................................................... 3

18

19

*Watt Industries, Inc. v. Superior Court*

   115 Cal. App. 3d 802 (1981)............................................................................................. 4

20

21

**Statutes**

22

California Evidence Code §962 ..................................................................................................... 2

23

**Miscellaneous**

24

Wegner, *et al.*

25

   California Practice Guide: Civil Trials and Evidence (The Rutter Group 2007).............. 4

26

27

28

DEFENDANTS'/COUNTERCLAIMANTS' OPPOSITION BRIEF        Case No.: C 07-2769 JL
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION

1    Plaintiff and Counterdefendant Frank Nemirofsky ("Nemirofsky") proposes to take the

2    deposition of Defendant STV Asia's former lead trial counsel Deborah Bailey-Wells.  As noted in

3    Defendants' opening brief, depositions of opposing counsel are "presumptively improper, severely

4    restricted, and require 'extremely' good cause—a high standard." *Carehouse Convalescent Hospital*

5    *v. Superior Court*, 143 Cal. App. 4th 1558, 1562 (2006).

6    In response to the Court's order, Nemirofsky identified nineteen separate categories of

7    information about which he wishes to question Ms. Bailey-Wells.   But Nemirofsky does not address

8    any of these nineteen categories in his opening brief.  He seemingly realizes that many involve

9    information squarely within the protection of the attorney-client privilege.  Instead, he asserts several

10    general reasons why he believes he is entitled to question STV Asia's former counsel without

11    restriction.  None of his rationalizations justifies setting aside the privilege.  Certainly none of them

12    comes close to establishing the "extremely good cause" required by California law.

13
       **1.    The Parties' Relationships are Clear:  STV Asia was Ms. Bailey-Wells's Client, and**
14         **Nemirofsky was its Director and Agent.**

15    Nemirofsky's principal argument is that STV Asia has not demonstrated that the attorney-

16    client privilege applies here because Nemirofsky's and STV Asia's relationship is "unsubstantiated,"

17    and "it is still unclear as to how Defendants are defining Mr. Nemirofsky's role and relationship with

18    STV Asia, and thus Ms. Bailey-Wells." [Pl.'s Brief, 5:16, 25-27]  This argument is unfounded.

19    Nemirofsky's own papers make it plain that he served as STV Asia's director and agent at all relevant

20    times.

21    Nemirofsky acknowledges that Ms. Bailey-Wells and her firm were counsel to STV Asia in

22    the PRN Litigation. [Pl.'s Brief, 3:3-5]  He also acknowledges that "both Mr. Nemirofsky and Mr.

23    Kim were directors of STV Asia, Ltd. at certain times during the pendency of the PRN Litigation."

24    [Pl.'s Brief, 3:12-13]  But Nemirofsky maintains that the beginning and end points of his service as a

25    director are uncertain. [Pl.'s Brief, 6:1-13]  They are not.

26    STV Asia's resolution naming Nemirofsky a director, signed by Kim and Nemirofsky, is

27    attached to Dr. Kim's declaration. [Kim Decl., Ex. A]  This document is dated July 1, 2005, several

28    months before Kim and Nemirofsky first met with Ms. Bailey-Wells.  [Kim Decl., ¶ 7]

- 1 -

1    On July 31, 2006, Nemirofsky was removed as director of STV Asia.  [Kim Decl., ¶6]  At that

2    time, however, he continued to serve as STV Asia's agent for purposes of the PRN Litigation.

3    Nemirofsky himself admits in his brief that even if he was removed as director midway through the

4    PRN Litigation, "his role in the PRN Litigation was unaltered despite the absence of a director title."

5    [Pl.'s Brief, 6:3-5]

6    Moreover, Nemirofsky has declared under penalty of perjury that he continued to serve as a

7    director of STV Asia through the mediation settling the PRN Litigation in May 2007.  [Appel Decl.,

8    Ex. A (Nemirofsky Decl. in Supp. of Pl.'s *Ex Parte* App. to Extend TPO, 4:27 ("As of the date of the

9    mediation, I held the position of a director of STV Asia.")]  Nemirofsky cannot reasonably deny that

10    he continued to serve as STV Asia's agent through May 2007 when he believed he was still STV

11    Asia's director through May 2007.

12    **2.    Nemirofsky was Not a Separate Client of Ms. Bailey-Wells.**

13    After asserting, contrary to the evidence and his own admissions, that his relationship with

14    STV Asia during the PRN Litigation was uncertain, Nemirofsky contends that the joint client

15    exception to the attorney-client privilege may apply.  [Pl.'s Brief, 6:19-26]  Here, he is truly grasping

16    at straws.

17    The joint client exception applies "where two or more clients have retained or consulted a

18    lawyer upon a matter of common interest."  Cal. Evid. Code §962.  Whatever relationship

19    Nemirofsky had with STV Asia during the PRN Litigation, he certainly met with Ms. Bailey-Wells

20    only on STV Asia's behalf.  Not even Nemirofsky claims that he met Ms. Bailey-Wells on his own

21    behalf as a separate client.  This fact is readily apparent from STV Asia's pleadings and all other

22    filings in the PRN Litigation.  There was only one plaintiff, and that was STV Asia.  Nemirofsky was

23    not a party in the PRN Litigation.[1]

24    _____

25    [1] While Dr. Kim may have occasionally referred to Nemirofsky as his "partner," this casual reference
26    does not make him a stranger to the PRN Litigation who simply happened to be present in Dr. Kim's
conferences with Ms. Bailey-Wells.  [*See* Pl.'s Brief, 7:1-3]  Kim and Nemirofsky were engaged in a
27    common endeavor—assisting STV Asia in the PRN Litigation—and in that sense they were partners.
Dr. Kim's casual reference likewise does not convert Nemirofsky into a separate client of Ms. Bailey-
28    Wells.

DEFENDANTS'/COUNTERCLAIMANTS' OPPOSITION BRIEF                    Case No.: C 07-2769 JL
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION

1

2

**3.     That STV Asia's Former Counsel May Have Relevant Information Does Not Mean It is Discoverable.**

3

Nemirofsky offers his suspicion that "Ms. Bailey-Wells is believed to possess information

4

which is relevant to Mr. Nemirofsky's role in the PRN Litigation." [Pl.'s Brief, 3:18-19]  That Ms.

5

Bailey-Wells may possess relevant information is not determinative.

6

> Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship.

7

8

*Mitchell v. Superior Court*, 37 Cal. 3d 591, 600 (1984).

9

This view has been expressed repeatedly by the California Supreme Court.  *See People v.*

10

*Canfield*, 12 Cal. 3d 699, 705 (1974); *City and County of San Francisco v. Superior Court*, 37 Cal.

11

2d 227, 235 (1951) ("The privilege is given on grounds of public policy in the belief that the benefits

12

derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of

13

relevant evidence.")  It has recognized that application of the privilege "may very well create

14

obstacles for the party seeking the privileged information," but this is not a ground for setting it aside.

15

*Southern California Gas Company v. Public Utilities Commission*, 50 Cal. 3d 31, 37 (1990).[2]

16

**4.     All Relevant Communications Were Made During the Course of STV Asia's Professional Relationship with Ms. Bailey-Wells.**

17

18

Nemirofsky states that Ms. Bailey-Wells can be deposed concerning certain issues because

19

"[f]or the communication to be privileged where a corporate entity is the client, 'the dominant

20

purpose must be for the transmittal to an attorney 'in the course of professional employment.'" [Pl.'s

21

Brief, 7:13-15]  As discussed in Defendants' opening brief, all relevant communications were in the

22

23

24

[2] As noted in Defendants' opening brief, some of the proposed categories of questioning are clearly *irrelevant*.  Nemirofsky contends that Defendants' relevance concerns are improper.  [Pl.'s Brief,

25

2:13-16]  In this context, however, relevancy and the attorney-client privilege are intertwined. Nemirofsky cannot possibly justify taking the deposition of STV Asia's former counsel if the only

26

possible areas of questioning that are not covered by the attorney-client privilege are not relevant. During the parties' meet and confer, Defendants' counsel repeatedly asked Nemirofsky's counsel to

27

explain the relevance of several categories of information. Nemirofsky's counsel refused.  In its brief,

28

Nemirofsky continues to dodge this issue.

DEFENDANTS'/COUNTERCLAIMANTS' OPPOSITION BRIEF                    Case No.: C 07-2769 JL
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION

1  course of the professional relationship.[3]  Kim and Nemirofsky, in their capacities as representatives

2  of STV Asia, had several meetings with Ms. Bailey-Wells and other Kirkpatrick & Lockhart

3  attorneys during the PRN Litigation.  These meetings covered the entire subject matter of the case,

4  including the strengths and weaknesses of STV Asia's patent infringement claims, case strategy,

5  achievable damages, the Markman hearing to determine proper construction of the patent claims, and

6  settlement opportunities.  [Kim Decl., ¶ 8]  Kim and Nemirofsky never met with Ms. Bailey-Wells or

7  other Kirkpatrick & Lockhart attorneys to discuss matters unrelated to the PRN litigation.  [*Id.*]

8      Nemirofsky's reliance on the "dominant purpose" test is misplaced.  Courts apply this test

9  where an attorney also serves another role (*e.g.*, mediator, investigator), and the parties dispute which

10  role the attorney was serving when he or she received the communication.  *See* Wegner, *et al.*,

11  California Practice Guide: Civil Trials and Evidence, §8:2041.1 at 8E-55-8E-56 (The Rutter Group

12  2007).  For instance, in *Montebello Rose Co. v. Agricultural Labor Relations Board*, 119 Cal. App.

13  3d 1 (1981), a party's attorney, Jory, also served as a labor negotiator.  The court held that the party's

14  communications were not privileged to the extent that they were made to Jory as labor negotiator

15  (rather than Jory as attorney).  *See id.*, at 31-32.  Other examples include *2,022 Ranch v. Superior*

16  *Court*, 113 Cal. App. 4th 1377 (2003) (attorney as claims adjuster) and *Watt Industries, Inc. v.*

17  *Superior Court*, 115 Cal. App. 3d 802 (1981) (attorney as business agent).[4]

18      If Ms. Bailey-Wells was acting as something other than STV Asia's attorney during these

19  meetings, in what capacity did she act?  Nemirofsky does not venture a guess.

---

[3] "The attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions." *Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1003 (2000).

[4] In *Holm v. Superior Court*, 42 Cal. 2d 500 (1942), the one case cited by Nemirofsky in this section, the court held that most of the documents at issue were covered by the privilege. *See id.*, at 508-509. The only document that was not covered was plaintiff's statement to a city claims investigator. *See id.*, at 507-508.

- 4 -

**5.    The Attorney-Client Privilege Would Serve Little Purpose if Privileged Information Could be Used Against Clients in Future Litigation.**

Nemirofsky next argues that there is no reason for the Court to apply the attorney-client privilege here because "any communication about which Ms. Bailey-Wells may testify does not constitute disclosure" since Nemirofsky provided or was privy to the communications. [Pl.'s Brief, 7:27-28] This argument, which Nemirofsky does not support with *any* authority, ignores the policies underlying the attorney-client privilege.

In short, the privilege exists to promote the full disclosure of information between attorneys and clients.

> Adequate legal representation in the ascertainment and enforcement of rights or the prosecution or defense of litigation compels a full disclosure of the facts by the client to his attorney. "Unless he makes known to the lawyer all the facts, the advice which follows will be useless, if not misleading; the lawsuit will be conducted along improper lines, the trial will be full of surprises, much useless litigation may result. . . . [U]nless the client knows that his lawyer cannot be compelled to reveal what is told him, the client will suppress what he thinks to be unfavorable facts." . . . . Given the privilege, a client may make such a disclosure without fear that his attorney may be forced to reveal the information confided to him. The absence of the privilege would convert the attorney habitually and inevitably into a mere informer for the benefit of the opponent.

*City and County of San Francisco*, 37 Cal. 2d at 235. These concerns about adequate legal representation and the suppression of unfavorable facts exist regardless of whether the privileged communications are disclosed to the public at large.

**6.    Privileged Communications are Not "At Issue."**

Finally, Nemirofsky half-heartedly argues that Defendants have waived the attorney-client with regard to certain communications with Ms. Bailey-Wells by placing them "at issue." On the contrary, any such communications are not as issue at this time.[5]

---

[5] As noted in Defendants' opening brief, as this litigation continues, it is possible that certain issues will prove pertinent to STV Asia's defenses. If so, STV Asia may be inclined to waive the attorney-client privilege with regard to these issues and allow a limited deposition of Ms. Bailey-Wells at a later time.

- 5 -

1

**CONCLUSION**

2          For the reasons stated above and in Defendants' opening brief, the Court should enter a

3    protective order prohibiting Nemirofsky from deposing Deborah Bailey-Wells.

4

Dated:  October 10, 2007                        Respectfully submitted,

5

                                                HARVEY SISKIND LLP

6

7

8                                               By: _____/s/_____
                                                         Seth I. Appel

9

                                                Attorneys for Defendants and Counterclaimants
10                                              SEOK KI KIM and STV ASIA, LTD.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS'/COUNTERCLAIMANTS' OPPOSITION BRIEF                        Case No.: C 07-2769 JL
RE ATTORNEY-CLIENT PRIVILEGE AND BAILEY-WELLS DEPOSITION