Jonathan M. Cohen (SBN: 168207)
Martin Sabelli (SBN: 164772)
Robyn T. Callahan (SBN: 225472)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5894
Telephone: 415-591-1000
Facsimile: 415-591-1400

Attorneys for Plaintiff
FRANK NEMIROFSKY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANK NEMIROFSKY<br><br>Plaintiff,<br><br>v.<br><br>SEOK KI KIM; STV ASIA, LTD. a British Virgin Islands corporation; and DOES 1 through 20, inclusive<br><br>Defendant. | **Case No. 3:07-CV-02769 – JL**<br>**Hon. Magistrate James Larson**<br><br>**PLAINTIFF FRANK NEMIROFSKY'S REPLY TO DEFENDANTS' BRIEF REGARDING THE DEPOSITION OF DEBORAH BAILEY-WELLS**<br><br>Date: October 31, 2007<br>Time: 9:30 a.m.<br>Place: 450 Golden Gate Ave.<br>Courtroom F, 15th Floor<br>San Francisco |

Plaintiff hereby responds to Defendants' Brief Regarding Attorney-Client Privilege and the Deposition of Deborah Bailey-Wells.

///

///

# TABLE OF CONTENTS

I. Despite Defendants' Assortment of Arguments, Defendants Have Failed to Explain How Ms. Bailey-Wells' Testimony Constitutes a Waiver of Privilege. ................................. 4

II. Defendants' Vehement Objections Raise Questions as to Why There is Such a Heightened Concern as to Ms. Bailey-Wells' Testimony. ....................................................... 4

III. The Privilege Cannot Properly Be Asserted as a Protective Blanket Over Testimony from Ms. Bailey-Wells Regarding Matters Not "In furtherance of the PRN Litigation". ................................................................................................................................. 5

IV. Defendants' Application of the Attorney-Client Privilege Offends Public Policy. ................... 6

V. Defendants' Analysis and Categorization of Ms. Bailey-Wells as "Opposing Counsel" is Inaccurate and Defendants' Authority is Therefore Inapplicable. .......................................... 7

    A. Reliance on the 3-prong Spectra-Physics test as to "crucial" evidence and "extremely good cause" is misplaced. ............................................................................ 9

VI. Relevance is Not a Proper Basis to Raise a Privilege Objection or on Which to Prohibit Deposition Testimony. ................................................................................................. 9

VII. Defendants Are Now Retracting Their Prior Agreement to Allow Testimony as to Nemirofsky's Role and Responsibilities. ............................................................................... 10

VIII. Defendants' Misrepresentation as to Mr. Nemirofsky's Role Calls The Extent of the Privilege Into Question and Further Evidences the Need for Ms. Bailey-Wells' Testimony. .............................................................................................................................. 11

IX. Conclusion. ............................................................................................................................. 11

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

# TABLE OF AUTHORITIES

**Cases**

*Carehouse Convalescent Hospital v. Superior Court,*
  143 Cal. App. 4th 1558 (2006) .................................................................................. 7, 8, 9

*City & County of San Francisco v. Superior Court In and For City and County of San Francisco,*
  37 Cal. 2d 227 (1951) ............................................................................................................ 6

*Mitchell v. Superior Court,*
  37 Cal. 3d 591 (1984) ............................................................................................................ 6

*Southern Cal. Gas Co. v. Public Utilities Com.,*
  50 Cal. 3d 31 (1990) .............................................................................................................. 6

*Spectra-Physics, Inc. v. Superior Court,*
  198 Cal.App.3d 1487 (1988) ............................................................................................. 7, 8

**Statutes**

Cal. Code Civ P. § 2018.030(b) .................................................................................................. 6

Cal. Evid. Code § 952 .................................................................................................................. 5

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Plaintiff's Reply to Defendants' Brief Regarding the Deposition of Deborah Bailey-Wells

## I. Despite Defendants' Assortment of Arguments, Defendants Have Failed to Explain How Ms. Bailey-Wells' Testimony Constitutes a Waiver of Privilege.

As much as Defendants have regurgitated the case law outlining the privilege and the purpose underlying privilege protections, Plaintiff is still left wondering how Ms. Bailey-Wells' testimony could be deemed a waiver of that privilege.

Ms. Bailey-Wells will presumably testify as to communications which both Mr. Nemirofsky and Mr. Kim have already been privy to. As such, her testimony, which will be subject to a stipulated protective order, will not amount to disclosure of said information to any third party.

To the extent that Defendants are raising the privilege based upon their suspicion that Ms. Bailey-Wells' testimony might be adverse to Defendants in the present action only creates further support for why this Court should allow the testimony. As an officer of the court, Ms. Bailey-Wells' account as to the factual disparities as between the parties is significant. To prohibit such testimony, by allowing Defendants to hide behind a blanket privilege objection would be an injustice.

## II. Defendants' Vehement Objections Raise Questions as to Why There is Such a Heightened Concern as to Ms. Bailey-Wells' Testimony.

The Court must be wondering, as Plaintiff is, why Defendants are so vehemently fighting to prohibit Ms. Bailey-Wells from testifying.

Mr. Kim's declaration states that the conversation that Plaintiff seeks to ask Ms. Bailey-Wells about never occurred. (See Declaration of Seok Ki Kim filed on October 3, 2007 in support of Defendants' Brief, ¶ 9). Defendants even deny that the revision to the agreement between Plaintiff and Defendants was ever discussed at the October 2006 meeting with Ms. Bailey-Wells. (See Defendants' Brief at page 11, lines 17-18). But, if Defendants truly believed that Plaintiff's contention regarding these communications was a fallacy, then presumably Ms. Bailey-Wells would have nothing to discuss at deposition on this topic. Remarkably, despite Defendants position that no such communication ever took place, they determinedly continue to fight to silence Ms. Bailey-Wells, rather than allowing her to confirm Defendants' assertions as to the lack of any such discussion.

///

4

Plaintiff's Reply to Defendants' Brief Regarding the Deposition of Deborah Bailey-Wells

Further, based upon Defendants' Brief, it appears that in Defendants' opinion, there can be no permissible areas of inquiry. Rather, Defendants assert that Plaintiff should be prevented from taking Ms. Bailey-Wells' deposition altogether. Defendants rationalize that her deposition is "fraught with risk". However, this leads to the question – what exactly are Defendants so concerned about? The crux of the information sought from Ms. Bailey-Wells is with respect to communications which both Mr. Nemirofsky and Mr. Kim were privy to. Thus, the purpose of the attorney-client privilege and the public policy concerns that Defendants speak of throughout their brief are *not* "at risk" because Ms. Bailey-Wells' testimony will not constitute a breach of any confidentiality.

### III. The Privilege Cannot Properly Be Asserted as a Protective Blanket Over Testimony from Ms. Bailey-Wells Regarding Matters *Not* "In furtherance of the PRN Litigation".

The attorney-client privilege does not apply to matters which are unrelated to the furtherance of the PRN Litigation. (See California Evid. Code Section 952 which explains "confidential communication" as that which is to "further the interest of the client in the consultation" or which is "reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted…"). Here, Ms. Bailey-Wells' representation of STV Asia extended to the prosecution of the patent infringement action. It did not include any agreement (whether employment, agency, expert, partnership or otherwise) as between the parties.

Defendants admit that the attorney-client protection only extend to communications "concerning or relating to the PRN Litigation." (See Defendants' Brief at page 7, lines 3-4). Yet, Defendants have failed to explain how testimony regarding the agreement between Plaintiff and Defendants falls within the endless umbrella that Defendants imply defines communications "concerning or relating to the PRN Litigation."

As should be obvious, Mr. Nemirofsky's agreement with Defendants falls outside of the scope of Ms. Bailey-Wells' or Kirkpatrick & Lockhart's representation of STV Asia in the patent infringement litigation. Under Defendants' broad application of the privilege, Ms. Bailey-Wells would be prohibited from testifying about any subject matter, no matter how remote, that may have come up prior to, during and after the conclusion of the PRN case. For example, if Ms. Bailey-Wells

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

witnessed Mr. Kim hand Mr. Nemirofsky a gun while at her office for the purpose of meeting to discuss the strategy in the PRN Litigation, under Defendants' analysis, Ms. Bailey-Wells would be prohibited from disclosing this information on the basis of STV Asia's assertion of the attorney-client privilege. This is simply absurd. The privilege was not intended to be applied in the all-encompassing manner which Defendants attempt to use it.

**IV.    Defendants' Application of the Attorney-Client Privilege Offends Public Policy.**

Defendants repeatedly refer to the public policy considerations as further argument that the privilege is impenetrable. Yet, the case law that Defendants cite explains that the purpose behind the privilege is to encourage full disclosure of the facts so that the attorney may adequately represent the client's interests.[1] The discussion of the rationale of the privilege in Defendants' cited authority does not go as far as to say that because of the policy considerations in establishing the privilege, there can be no exceptions and no balancing by the court as to the application of the privilege. Defendants' position fails to acknowledge the injustice that such a broad and rigid application has.

In fact, there is California statutory authority that recognizes that there must be a balancing of interests. California Code of Civil Procedure Section 2018.030(b) expressly carves out an exception regarding attorney work product[2], explaining that although it is generally not discoverable, attorney work product may be ordered disclosed, "[if] the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice."

Surely, public policy does not support allowing a company to protect pertinent information under the guise of the attorney-client privilege as a means to deprive a former director, agent,

---

[1] "Unless he makes known to the lawyer all the facts, the advice which follows will be useless, if not misleading; the lawsuit will be conducted along improper lines, the trial will be full of surprises, much useless litigation may result." *City & County of San Francisco v. Superior Court In and For City and County of San Francisco*, 37 Cal. 2d 227, 235 (1951); "Thus, by encouraging complete disclosures, the attorney-client privilege enables the attorney to provide suitable legal representation." *Southern Cal. Gas Co. v. Public Utilities Com.*, 50 Cal. 3d 31 (1990)(quoting *Mitchell v. Superior* Court, 37 Cal. 3d 591 (1984) (which discussed that the privilege is designed to allow clients to freely and fully confide in their attorneys in order to receive legal advice and representation).

[2] As the Court knows, attorney work product and the attorney client privilege are often viewed jointly when discussing protection from disclosure.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

employee, partner, or expert[3] from receiving the benefit of the bargain they negotiated. It is significant that Defendants have refused to pay Mr. Nemirofsky a dime for any of the time, work and expertise that he contributed to the PRN Litigation. Ms. Bailey-Wells witnessed communications that will undoubtedly shed light on the very facts in dispute in the present action.

One must question why Defendants are now objecting that Ms. Bailey-Wells testify at all (whereas, up until the Briefs were filed, it was Plaintiff's understanding that the only objections being raised were as to certain areas of testimony). If Defendants truly believe that all of the testimony is irrelevant and does exclusively pertain to the underlying PRN Litigation, why are Defendants so adamant about prohibiting Ms. Bailey-Wells' testimony? Defendants' contentions that they are fighting to protect the privilege and thus, the judicial process, is dubious at best.

## V. Defendants' Analysis and Categorization of Ms. Bailey-Wells as "Opposing Counsel" is Inaccurate and Defendants' Authority is Therefore Inapplicable.

Defendants' reliance on case law which relates to the attorney-client privilege as it applies to "opposing counsel" is misplaced. Defendants cite the *Carehouse* and *Spectra-Physics* cases for the proposition that the deposition of Ms. Bailey-Wells is "presumptively improper, severely restricted, and require[s] 'extremely' good cause". (See Defendants' Brief at page 5, lines 1-5). Yet, this case is nothing like *Carehouse* or *Spectra-Physics* because Ms. Bailey-Wells is not opposing counsel and is not magically transformed into such by the fact that she represented STV Asia in a prior case and that Mr. Nemirofsky is suing STV Asia in this case.

In *Carehouse*, the surviving relatives of a deceased hospital patient sought to depose defendant hospital's counsel in the *current* action with respect to documents created by the hospital's counsel in conjunction with the pending action regarding calculations she made from hospital staffing logs as to the number of nursing hours accounted for pursuant to statutory regulations. *Carehouse Convalescent Hospital v. Superior Court,* 143 Cal. App. 4th 1558 (2006). Plaintiff is not

---

[3] Plaintiff maintains that Mr. Nemirofsky was a partner in the PRN Litigation. However, assuming for a moment that any one of the many classifications that Defendants have offered to date applies, the broad manner in which they are asserting the privilege shields *all* communications – even those which are not related to the PRN Litigation. Such an interpretation would allow companies to take advantage of its employees (or agents, or contractors) by simply having corporate counsel present during any communications which may later be adverse to the company.

asking to take the deposition of Defendants' attorneys in the present case.

Moreover, the rationale protecting opposing counsel from deposition is inapplicable to the present situation. The *Carehouse* Court, quoting *Spectra-Physics*, explains that among the policy reasons for disfavoring the deposition of opposing counsel is that "[c]ounsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Carehouse,* supra, 143 Cal. App. 4th at 1563. *Carehouse* further states:

> Rather than preparing the client's case for trial, counsel must be prepared…to place himself or herself in the witness box, being a responsive witness <u>while remaining a partisan advocate</u>. (emphasis added). *Carehouse v. Superior Court,* 143 Cal. App. 4th at 1563.

It was out of the concern of an attorney having to wear two hats at once (and at the chance of distracting the attorney from representing his or her client) in the same case that the Courts developed the 3-prong test that Defendants cite throughout their brief. *Id.*

Similarly, *Spectra-Physics* addresses the attorney-client privilege in the context of opposing counsel. *Spectra-Physics, Inc. v. Superior Court*, 198 Cal.App.3d 1487 (1988). The *Spectra-Physics* Court specifically notes at the outset of its decision that "[t]he starting point of inquiry is - under what circumstances is it generally permissible to depose **opposing counsel**?" (emphasis added). *Spectra-Physics, Inc. v. Superior Court*, 198 Cal.App.3d at 1493. In concluding its analysis, the *Spectra-Physics* Court prefaces its decision with the statement "[g]iven the strength of the policy considerations against **deposing opposing counsel**", (emphasis added), which further emphasizes the distinguishing underlying facts on which the *Spectra-Physics* opinion, and the 3-prong test which Defendants purport as authority for their objections, is based.

Here, Plaintiff is not asking to take the deposition of opposing counsel. With respect to the dispute as between Mr. Nemirofsky and Mr. Kim and STV Asia, Ms. Bailey-Wells is a neutral third party. Under the circumstances, and particularly given that Mr. Nemirofsky was privy to the communications on which her testimony will be based, it is irrelevant that she was STV Asia's former counsel in a patent infringement matter. The issues in this case pertain to an agreement between Plaintiff and Defendants concerning the division of settlement moneys and the parties' performance under said agreement. Despite Defendants' misplaced quotes regarding the "high

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

standard" and burdens associated with the deposition of "opposing counsel", the testimony of Ms. Bailey-Wells as to the issues in this case does not fall within the privilege.

**A. Reliance on the 3-prong *Spectra-Physics* test as to "crucial" evidence and "extremely good cause" is misplaced.**

In support of their contention that Plaintiff is absolutely barred from taking the deposition of Ms. Bailey-Wells, Defendants argue that Plaintiff must satisfy the 3-prong test set forth in *Spectra-Physics*. Notably, Defendants raise this as a basis for virtually all of their objections to the subject areas delineated by Plaintiff, arguing that the information sought by Plaintiff is "not 'crucial' to Nemirofsky's preparation, as required under *Carehouse* " (See Defendants' Brief at page 8, lines 13-14); that Plaintiff "has not established 'extremely good cause' for taking the deposition of STV Asia's former counsel" (See Defendants' Brief at page 5, lines 15-16); or is "available from other sources" (See Defendants' Brief at page 10, line 12).

As set forth above, the 3-prong test on which Defendants rely is not applicable because Ms. Bailey-Wells is not the opposing counsel.

**VI. Relevance is Not a Proper Basis to Raise a Privilege Objection or on Which to Prohibit Deposition Testimony.**

To the extent that Defendants are asserting relevancy objections on which they base their contention that a proposed subject matter should be restricted, or that deposition should be prohibited in its entirety, such objections are improper and should not be sustained. As Plaintiff anticipated based upon Defendants' meet and confer letter,[4] Defendants' objections are not limited to the privilege issues which were the only subject the Court agreed to entertain briefing on. Nonetheless, Defendants raise relevance as a basis for their position as to a number of Plaintiff's proposed subject areas.[5] However, relevance is not an adequate basis on which to instruct a witness

---

[4] Attached as Exhibit B to the Declaration of Robyn T. Callahan filed on October 3, 2007 in support of Plaintiff's Brief.

[5] As to Category No. 1, Defendants argue "this information is hardly relevant". (See Defendants' Brief at page 8, line 13).
As to Category No. 2, Defendants argue, "the relevance of such information…is, at best, tenuous." (See Defendants' Brief at page 8, lines 19-20).
As to Category No. 3, Defendants argue the information "is unimportant". (See Defendants' Brief at page 9, line 7).

not to answer a question. Further while Defendants may raise objections as to the admissibility of Ms. Bailey-Wells' testimony at some point subsequent to the taking of her deposition, such objections are not adequate to prevent the deposition from going forward in its entirety.

In providing the list of proposed subject areas for Ms. Bailey-Wells' deposition, Plaintiff attempted to be as detailed as possible. In so doing, Plaintiff included not only the areas which Plaintiff anticipated Defendants to raise privilege objections, but all areas for which Plaintiff may seek testimony. This, of course, included areas which are necessary to establish background, potential biases, and this witness' competency to testify as to the central issues of this case. Such background information is not only permissible, but is customary. The fact that Defendants are now raising objections on a relevancy basis as to most of these categories shows bad faith.

## VII. Defendants Are Now Retracting Their Prior Agreement to Allow Testimony as to Nemirofsky's Role and Responsibilities.

Surprisingly, Defendants have inexplicably changed their position with respect to allowing testimony regarding Mr. Nemirofsky's role and responsibilities in the patent infringement litigation. As of the date of counsels' last telephone conference, Defendants' counsel conceded that this area of inquiry was permissible. (Declaration of Robyn T. Callahan in Support of Plaintiff's Reply to Defendants' Brief ("Callahan Decl."), ¶ 2). We specifically discussed the fact that because Defendants had raised the affirmative defenses that Mr. Nemirofsky allegedly did not perform under the agreement, Defendants had put these areas at issue making them proper subject matters for testimony by Ms. Bailey-Wells. (Callahan Decl. ¶ 3). Specifically, Defendants are now refusing to

---

As to Category No. 4, Defendants argue the information "has little significance." (See Defendants' Brief at page 9, lines 14-15).
As to Category No. 6, Defendants argue the information "is unnecessary and irrelevant." (See Defendants' Brief at page 9, line 26).
As to Category No. 8, Defendants contend the information "must be available from other sources." (See Defendants' Brief at page 9, line 12).
As to Category No. 13, Defendants argue the information "does not appear to have any bearing in the present litigation." (See Defendants' Brief at page 12, line 6).
As to Category No. 14, Defendants argue "it is unclear how this information is relevant." (See Defendants' Brief at page 12, line 13).
As to Category No. 15, Defendants argue "its relevance is unclear". (See Defendants' Brief at page 12, line 19).
As to Category No. 16, Defendants argue it is "irrelevant". (See Defendants' Brief at page 13, line 2).

allow any testimony as to Category Nos. 3, 4, 5, 6, 7, 9, 12 and 18. Yet, Defendants' meet and confer letter dated on September 25, 2007 indicated that at least as to Categories 5, 12 and 18, Defendants "would permit limited questioning". (See Exb. B to the Declaration of Robyn Callahan filed on October 3, 2007). Not only is Defendants' Brief contrary to counsels' previous agreement, but Defendants have provided no authority for such protection given the affirmative defenses Defendants asserted.

**VIII. Defendants' Misrepresentation as to Mr. Nemirofsky's Role Calls The Extent of the Privilege Into Question and Further Evidences the Need for Ms. Bailey-Wells' Testimony.**

Defendants referenced STV Asia's Resolution (attached as Exhibit A to the Declaration of Seok Ki Kim), which they cite to as authority for the dates that Mr. Nemirofsky served as a director of STV Asia. In fact, Mr. Kim's declaration specifically stated that Mr. Nemirofsky served as a director from July 1, 2005 until July 31, 2006. (See also, Defendants' Brief at page 3, lines 5-6). However, Defendants failed to disclose that STV Asia, through Mr. Kim, **retroactively** appointed Mr. Nemirofsky as a director. (Callahan Decl., Exb. A). Mr. Kim sent an email to Mr. Nemirofsky on May 15, 2006 (almost one year <u>after</u> his director role was to begin) wherein Mr. Kim expressly states that the director position is to be effective as of July 1, 2005 and attaching the blank approval form for Mr. Nemirofsky to sign acknowledging his agreement to serve as a director. (Callahan Decl., Exb. A).

This discrepancy (coupled with Mr. Kim's emails which refer to Mr. Nemirofsky as his "partner")[6] is significant in that it calls into question whether Mr. Nemirofsky was truly and exclusively an agent of STV Asia during the pendency of the PRN Litigation. Such questions of fact and the contradictory evidence now before the Court, further evidences the need for Ms. Bailey-Wells' testimony.

**IX. Conclusion.**

This Court should not allow Defendants to hide behind improperly asserted waiver of the

---

[6] See Exhibit D to the Declaration of Robyn T. Callahan filed on October 3, 2007 in support of Plaintiff's Brief.

attorney-client privilege as well as relevance objections to prohibit the deposition of Ms. Bailey-Wells. Not only is this contrary to the presumption in favor of broad discovery, but it is contrary to the policies underlying the attorney-client privilege protections. Plaintiff respectfully asks this court to overrule Defendants' objections and order that the deposition of Ms. Bailey-Wells proceed without any further delay.

Dated: October 10, 2007                WINSTON & STRAWN LLP

By:      */s/*
   Jonathan M. Cohen
   Martin Sabelli
   Robyn T. Callahan
   Attorneys for Plaintiff
   FRANK NEMIROFSKY

SF:185865.1

Plaintiff's Reply to Defendants' Brief Regarding the Deposition of Deborah Bailey-Wells