**Westlaw.**

Not Reported in Cal.Rptr.2d                                                                                                    Page 1
Not Reported in Cal.Rptr.2d, 2003 WL 882239 (Cal.App. 4 Dist.)
**(Cite as: Not Reported in Cal.Rptr.2d)**

Sabul v. Pillsbury Winthrop, LLP
Cal.App. 4 Dist.,2003.
Only the Westlaw citation is currently available.
California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.
Court of Appeal, Fourth District, Division 1, California.
Gaylene SABUL, Plaintiff and Appellant,
v.
PILLSBURY WINTHROP LLP, et al., Defendants and Respondents.
**No. D039360.**
**(Super.Ct.No. GIC768568).**

March 5, 2003.

After law firm unsuccessfully attempted to enforce writ of execution against judgment debtor's surety on behalf of its client, surety sued law firm for abuse of process and infliction of emotional distress. The Superior Court, San Diego County, No. GIC768568, J. Michael Bollman, J., sustained a demurrer without leave to amend based upon the litigation privilege. Surety appealed. The Court of Appeal, O'Rourke, J., held that: (1) law firm's course of conduct consisted of privileged communications, and (2) law firm's communications furthered the objects of litigation, so as to come within the litigation privilege, even though they contained an erroneous description of the amount of the surety's liability.

Affirmed.
West Headnotes
**[1] Damages 115 57.49**

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)2 Mental Suffering and Emotional Distress
                115k57.49 k. Privilege or Immunity; Exercise of Legal Rights. Most Cited Cases
                    (Formerly 115k49.10)

**Process 313 169**

313 Process

    313IV Abuse of Process
        313k169 k. Defenses. Most Cited Cases
Law firm's course of conduct in obtaining excessive attachment against judgment debtor's surety on behalf of its client consisted of communications falling within the litigation privilege, precluding liability for abuse of process and infliction of emotional distress. West's Ann.Cal.Civ. Code § 47(b)(2).

**[2] Torts 379 122**

379 Torts
    379I In General
        379k120 Defenses and Mitigating Circumstances
            379k122 k. Litigation Privilege; Witness Immunity. Most Cited Cases
                (Formerly 379k16)
Law firm's communications regarding writ of execution against judgment debtor's surety furthered the objects of litigation, so as to come within litigation privilege, even though their documents contained an erroneous description of the amount of the surety's liability, since the subject matter of the law firm's communications was not only the amount but also the fact of the surety's liability for an unpaid money judgment. West's Ann.Cal.Civ. Code § 47(b)(2).

APPEAL from a judgment of the Superior Court of San Diego County, J. Michael Bollman, Judge. Affirmed.

Bradley Jacobs, San Diego, CA, for Plaintiff and Appellant.
John M. Grenfell, Pillsbury Winthrop, San Francisco, CA, for Defendants and Respondents.
O'ROURKE, J.
**\*1** After Pillsbury Winthrop LLP unsuccessfully attempted to enforce a writ of execution against Gaylene Sabul on behalf of its client, Joel P. Michel, Sabul sued Michel, Pillsbury Winthrop LLP and some of its attorneys (collectively Pillsbury) for abuse of process and infliction of emotional distress. The court sustained a demurrer without leave to amend based upon the litigation privilege conferred by Civil Code section 47, subdivision (b)(2).[FN1] Sabul appeals, contending the litigation privilege does not apply because (1) her action is based upon Pillsbury's course of conduct and not its communications; and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.2d                                                                                   Page 2
Not Reported in Cal.Rptr.2d, 2003 WL 882239 (Cal.App. 4 Dist.)
**(Cite as: Not Reported in Cal.Rptr.2d)**

(2) even if Pillsbury's conduct consists of communications, those communications are not privileged because they do not further the objects of the litigation. We affirm.

> FN1. All further references are to the Civil Code unless otherwise specified.

FACTUAL AND PROCEDURAL HISTORY

In 1990, Michel obtained a judgment against Dean Greenberg, Sabul's father. In order to appeal the judgment, Greenberg filed an undertaking on appeal pursuant to section 917.1 in the amount of $950,000.00. Sabul, Charles Burstin and Judith Burstin were the sureties of the undertaking, which limited the liability of each surety to the net worth expressly stated on the undertaking. Sabul stated a net worth of $4,000. Shortly thereafter, Michel moved for relief from deficient surety. The court denied the motion.

In November 1992, the judgment against Greenberg was affirmed on appeal. Pillsbury moved on behalf of Michel for judgment enforcing liability on the undertaking against the sureties, jointly and severally, for the full amount of the undertaking (undertaking judgment). The motion was granted on December 16, 1992. Pillsbury initially attempted to execute the undertaking judgment against the Burstins, who ultimately filed for bankruptcy.

On June 6, 2000, Pillsbury obtained a writ of execution for $982,578.00 against Sabul. On June 29, Pillsbury filed a notice of lien naming Sabul as judgment debtor in Sabul's divorce proceeding.

On August 1, 2000, the court granted Sabul's motion to amend the writ of execution to reflect that Sabul's liability is limited to $4,000 plus costs. On August 23, Pillsbury withdrew the lien against Sabul.

On July 6, 2001, Sabul filed a verified complaint against Pillsbury for abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress. Pillsbury demurred, based upon the litigation privilege. After argument, the court sustained the demurrer without leave to amend, holding that the action was barred by the litigation privilege.

DISCUSSION

I. *Standard of Review*

The standard of review for a demurrer without leave to amend is well settled: " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed."[Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained ... without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]....' [Citation.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, 119 Cal.Rptr.2d 709, 45 P.3d 1171.)We independently review questions of law, including the application of a statute to undisputed facts. (*Walker v. Allstate Indem. Co.* (2000) 77 Cal.App.4th 750, 754, 92 Cal.Rptr.2d 132.)

II. *Communication versus Course of Conduct*

**\*2** We reject Sabul's contention that the litigation privilege does not apply because her injury was caused by Pillsbury's conduct of abusing the execution process to obtain an excessive attachment. The litigation privilege of section 47, subdivision (b)(2) bars most tort causes of action, including abuse of process and infliction of emotional distress. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215, 266 Cal.Rptr. 638, 786 P.2d 365(*Silberg* ).) "The principal purpose of [the privilege] is to afford litigants and witnesses freedom of access to the courts without fear of being subsequently harassed by derivative tort actions."(*Id.* at p. 213, 266 Cal.Rptr. 638, 786 P.2d 365.)The litigation privilege does not bar tort actions arising from noncommunicative conduct. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 211-212, 271 Cal.Rptr. 191, 793 P.2d 524.)For that reason, "the threshold issue in determining whether the privilege applies is whether the injury resulted from communicative acts or noncommunicative conduct."(*Brown v. Kennard* (2001) 94 Cal.App.4th 40, 45, 113 Cal.Rptr.2d 891(*Brown* ).)

Recent decisions have applied the litigation privilege to "defendants' post-trial collection activities," which have been found to arise from privileged communications. (*O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 135, 100 Cal.Rptr.2d 602(*O'Keefe*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.2d   Page 3
Not Reported in Cal.Rptr.2d, 2003 WL 882239 (Cal.App. 4 Dist.)
**(Cite as: Not Reported in Cal.Rptr.2d)**

);*Brown, supra,* 94 Cal.App.4th at p. 46-47, 113 Cal.Rptr.2d 891 [applying litigation privilege to "judgment enforcement efforts"].) In *O'Keefe,* defendants' levy on plaintiff's business bank account to enforce a judgment in an action that was under appeal consisted of privileged communications. (*O'Keefe,* at pp. 131, 134, 100 Cal.Rptr.2d 602.)The court held that "[t]he actions giving rise to plaintiff's suit-levying on a bank account and filing an abstract of judgment-were merely defendants' efforts to secure payment of the attorney fees judgment and an extension of that judicial process ... [even though] they involve[d] conduct outside the courtroom...."(*Id.* at p. 134, 100 Cal.Rptr.2d 602.)

Defendants' wrongful attempt to enforce a judgment against a defaulter's spouse also involved privileged communications. (*Merlot v. Rizzo* (1998) 64 Cal.App.4th 53, 64-66, 75 Cal.Rptr.2d 83(*Merlot* ); see also *Brown, supra,* 94 Cal.App.4th at pp. 48-50, 113 Cal.Rptr.2d 891 [applying the litigation privilege to a levy pursuant to a writ of execution against a nonparty to an invalid judgment].) After obtaining a default judgment and selling the defaulter's one-half interest in her home, defendants unsuccessfully moved for an order to issue a writ of sale against the defaulter's spouse for his one-half interest in the home. (*Merlot,* at p. 57, 75 Cal.Rptr.2d 83.)The court explained that the "complained about conduct involved the filing of the motion for a writ of sale and the motion for reconsideration" and found both actions to be communications covered by the privilege. (*Merlot,* at p. 65, 75 Cal.Rptr.2d 83.)

[1] Just like the actions in *O'Keefe* and *Merlot,* Pillsbury's course of conduct in obtaining an excessive attachment consisted of privileged communications: obtaining an undertaking judgment that omitted the limits of each surety's liability; moving for and filing the writ of execution based on that undertaking judgment; and filing the notice of lien. We reject Sabul's attempt to distinguish these cases by noting that none of them concern an excessive writ of execution against a surety. The motion for the writ of sale in *Merlot* was excessive in the sense that the spouse owned nothing-an amount significantly less that his one-half interest in the family home. Further, the spouse was not a party to the litigation unlike Sabul, who became a party by choosing to be a surety.

**\*3** Relying upon *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 345, 60 Cal.Rptr.2d 539(*LiMandri* ), Sabul contends the litigation privilege does not shield Pillsbury from liability for its wrongful course of conduct, even if that conduct incidentally includes the communication. *LiMandri* is easily distinguished from this case. The defendant in *LiMandri* interfered with an attorney's contingent fee agreement by arranging a loan to the attorney's clients secured by the same recovery and filing a notice of lien in the lawsuit asserting the lender's security interest in the recovery. (*Id.* at pp. 334, 345, 60 Cal.Rptr.2d 539.)We found that the course of tortious conduct included the following noncommunicative acts: executing the security interest, refusing to concede the superiority of the attorney's lien, and inducing the clients to breach their fee agreement with the attorney. (*Ibid.*) In contrast, Sabul identifies the wrongful conduct as a "grossly excessive attachment," but that conduct is the same as the privileged acts of filing the writ of execution and the notice of lien for the same "grossly excessive" amount and filing the undertaking judgment on which the writ and the lien are based.

Sabul mistakenly relies upon *Microsoft Corp. v. A-Tech Corp.* (C.D.Cal.1994) 855 F.Supp. 308(*Microsoft* ) for the proposition that an attempted attachment of excessive property is noncommunicative conduct. The court in Microsoft held that " 'the illegitimate use of the attachment process to tie up more property than is reasonably necessary to secure the attaching creditor's claim' " is noncommunicative tortious conduct. (*Id.* at p. 314, quoting *White Lighting Co. v. Wolfson* (1968) 68 Cal.2d 336, 347-351, 66 Cal.Rptr. 697, 438 P.2d 345(*White Lighting* ).) The *Microsoft* court erred by relying upon *White Lighting* because the litigation privilege was not an issue in *White Lighting:* "A decision is not even authority except upon the point actually passed upon by the court and directly involved in the case." (*Hart v. Burnett* (1860) 15 Cal. 530, 598.)Further, the California cases upon which we rely were decided after *Microsoft.*Finally, federal decisions are "neither binding nor controlling in matters involving state law." (*Howard Contracting, Inc. v. G.A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 52, 83 Cal.Rptr.2d 590.)

### III. *Object of Litigation*

The litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action."(*Silberg, supra,* 50 Cal.3d at p.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.2d  Page 4
Not Reported in Cal.Rptr.2d, 2003 WL 882239 (Cal.App. 4 Dist.)
**(Cite as: Not Reported in Cal.Rptr.2d)**

212, 266 Cal.Rptr. 638, 786 P.2d 365.)Sabul contends that even if Pillsbury's conduct is communicative, the privilege does not apply because Pillsbury's communications were not designed to achieve the objects of litigation; the writ of execution and the notice of lien for $982,572 could not be designed to achieve the object of the litigation, which Sabul contends is the recovery of her $4,000 liability.

**\*4** " 'The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action.'[Citation.] '[T]he communication must have an objective relationship to the litigation. [¶ ] "A document is not privileged merely because it has been filed with a court or in an action. The privileged status of a particular statement [or communicative act] therein depends on its relationship to an actual or potential issue in an underlying action."[Citation.]' [Citation.]" (*LiMandri, supra,* 52 Cal.App.4th at p. 346, 60 Cal.Rptr.2d 539.)

Documents containing incorrect information can further the objects of litigation. In *Sacramento Brewing Co. v. Desmond, Miller & Desmond* (1999) 75 Cal.App.4th 1082, 89 Cal.Rptr.2d 760, a noticed bankruptcy court motion containing an erroneous identification of the debtor and an incorrect case number furthered the objects of the litigation: "In this case, the subject matter or context of the communication was not the narrow misidentification of the debtor but the notice of motion filed and served by the bankruptcy trustee's counsel in connection with an ongoing bankruptcy proceeding.... [T]he notice of motion was logically related to the action, as it was the instrument by which interested parties would receive notice of the sale of the personal property of the estate. The communication furthered the objects of the litigation. The fact that the caption of an otherwise relevant document misnamed the debtor (and miscited the case number) did not make the notice of motion unconnected to, or palpably irrelevant to, the bankruptcy proceeding and transform it into an unprivileged filing."(*Id.* at p. 1090, 89 Cal.Rptr.2d 760.)

[2] Sabul takes a much too limited view of the object of the litigation when she states that the object is the recovery of her $4,000 liability. The object of the litigation is the recovery of the money judgment (plus interest and attorney fees in collecting the judgment) Michel won in the underlying litigation. The undertaking judgment, the writ of execution and the notice of lien are the instruments by which Michel tried to effect that recovery. For that reason, these documents are logically related to that litigation, even though the documents contain an erroneous description of the amount of Sabul's liability. As in *Sacramento Brewing Company,* the subject matter of Pillsbury's communications is not only the amount of Sabul's liability but also the fact of her liability.

### DISPOSITION

The judgment is affirmed. Appellant to pay costs on appeal.

WE CONCUR: KREMER, P. J., and AARON, J.
Cal.App. 4 Dist.,2003.
Sabul v. Pillsbury Winthrop, LLP
Not Reported in Cal.Rptr.2d, 2003 WL 882239 (Cal.App. 4 Dist.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.