

Not Reported in Cal.Rptr.3d                                                                                                                  Page 1
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

Reynolds Casas & Riley, LLP v. 4920 Corp.
Cal.App. 6 Dist.,2005.
Only the Westlaw citation is currently available.
California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.
Court of Appeal, Sixth District, California.
REYNOLDS CASAS & RILEY, LLP, Plaintiff and Appellant,
v.
4920 CORPORATION et al., Defendants and Respondents.
No. H027104.

April 29, 2005.

Samuel E. Goldstein, Walnut Creek, CA, for Plaintiff and Appellant.
Christopher Ashworth, San Jose, CA, for Defendant and Respondent.
RUSHING, P. J.
**\*1** This is an appeal from the trial court's ruling on an anti-SLAPP motion. "SLAPP" is the acronym for a strategic lawsuit against public participation. (Code Civ. Proc., § 425.16.)The causes of action affected by the ruling were two among many that arose from plaintiff law firm's commercial lease of real property from defendant landlord, and landlord's unlawful detainer action in which it sought to oust law firm from the premises as a result of law firm's alleged default in the lease. That proceeding concluded with judgment after trial for the (there defendant) law firm and against landlord on account of the facially deficient three-day notice on which landlord pursued the action.

Law firm then sued landlord, its principals, and its attorneys from the prior proceeding in this action. The two causes of action that were subject to the defendants' anti-SLAPP motion below were malicious prosecution and abuse of process, both of which stem from the underlying unlawful detainer proceeding and alleged prior conduct by defendants that law firm contends was designed to gain advantage for landlord in that proceeding.

The trial court granted the anti-SLAPP motion as to the abuse of process claim, and "stayed" it as to the claim for malicious prosecution. The court did not then rule on this latter claim because at the time of the hearing on the motion, the underlying unlawful detainer judgment for the law firm was not yet final, landlord having appealed from it. The trial court also awarded attorney's fees to defendants in the amount of $5,475 under the anti-SLAPP statute for their success on the motion as to the abuse of process claim. This amount was roughly one-quarter of the fees sought.

Appellant law firm appeals from the anti-SLAPP ruling, contending that the trial court erred in granting the motion as to the abuse of process claim. Law firm does not contest that a claim for abuse of process falls within the ambit of anti-SLAPP protection, the first prong of the statutory analysis. But, it argues that after the burden on the motion shifted to it to demonstrate the probability of its prevailing on the claim, law firm met this burden, thus defeating the motion.

Law firm also initially contended in this appeal that the trial court was without authority to stay the motion as to the malicious prosecution claim, and that the motion should have likewise been denied as to this claim because law firm demonstrated a probability of prevailing on it. The trial court has since ruled on the merits of the anti-SLAPP motion as to the malicious prosecution claim, mooting the issue in this appeal.

Law firm finally contends that the trial court erred in awarding anti-SLAPP attorney's fees to defendants because its request for fees was insufficiently supported and the award was excessive under the circumstances.

Based on our independent review, we conclude that the trial court was correct to grant the anti-SLAPP motion as to the abuse of process claim since law firm did not meet its burden of stating and substantiating a legal claim for abuse of process. Even if it had, and quite apart from the arguments made by the parties below, the litigation privilege afforded at Civil Code section 47, subdivision (b), would bar this claim as a matter of law.

**\*2** As to the malicious prosecution claim, the issue of law firm's appeal from the stay order has now become moot, as acknowledged by the parties in supplemental briefing. Similarly acknowledged by the parties, the stay order is nonappealable, and was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                                                                    Page 2
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

subject to review only by extraordinary writ for which no party petitioned. Accordingly, on both grounds, we dismiss the appeal from the stay order. Finally, we hold that defendants' request for attorney's fees was insufficiently supported.

Accordingly, we affirm the trial court's order granting the anti-SLAPP motion as to the abuse of process claim, we dismiss the appeal from the ruling staying the motion as to the malicious prosecution claim, and we reverse the award of attorney's fees to defendants below and remand this question to the trial court for a determination of a reasonable award, upon a properly substantiated showing, and for a determination of reasonable fees on appeal.

*Statement of the Case*

*1. Pertinent Factual Background*

4920 Corporation, landlord, and Reynolds Casas & Riley, LLP, law firm, entered into a commercial lease for office space in Los Altos in October 2000.[FN1] The parties do not dispute that at the time the written lease was originally signed, it provided that the demised premises comprised 4,400 square feet, but the spaces in the document for the amount of rent to be paid and the percentage of common area expenses to be borne by tenant law firm were left blank. Law firm contends that the parties had orally agreed to initial base monthly rent at the rate of $4.50 per square foot, which, with an area of 4,400 square feet, would total $19,800 per month.[FN2] The lease also included a provision for landlord to expend $100,000 toward certain tenant improvements and for any of this amount not required to be spent for the specific improvements, law firm would be credited toward its rental obligation in the first 24 months of the lease.

> [FN1.] The law firm was then known as "Reynolds Price Casas & Riley, LLP."
>
> [FN2.] The lease provided for annual percentage increases in the base rent.

Sometime after the lease was originally executed, Jane Challas, a principal of 4920 Corporation, filled in the blank spaces on a copy of the lease to provide for monthly rent in the amount of $22,674, with an up-front deposit of the first and last months' rent in the amount of $45,348, which is exactly twice this monthly rental amount. Also inserted in the written lease at a later date than its original execution was the figure of 49.71 percent in common area expenses to be paid by tenant law firm. Law firm contends that the proper percentage of common area expenses that it was obligated to pay under the lease is 37.98 percent, which, it asserts, is the proportion that 4,400 square feet bears to the area of the entire building. The parties apparently dispute whether space additional to the 4,400 square feet provided in the written lease was actually part of the contracted space, and whether the additional square footage should accordingly have been added to the computation of rent per square foot and percentage of common area expenses.

*3 Law firm paid the initial first and last months' rent deposit as provided in the filled-in copy of the lease and took possession of the premises. But, as time went by, the parties' disagreements-as to the correct square footage included in the leased premises, the amount of monthly rent, the amounts to be paid by law firm for tenant common area expenses, and the amount actually expended by landlord for tenant improvements as required under the lease-surfaced.

In addition to these topics of dispute, law firm contends that for some initial period of time, it overpaid rent, notified landlord of this fact, and then adjusted later rent payments accordingly. And, as contended by landlord, these adjustments caused law firm to frequently underpay the rent. Law firm also asserts that landlord failed to make repairs to the premises, and failed to respond to requests and demands to address problems affiliated with water intrusion and flooding of the premises, which led law firm to suffer property damage and caused contamination by the growth of "toxic mold," a situation that law firm asserts was dangerous to its employees, interfered with its quiet enjoyment of the premises, and required clean-up and abatement during which law firm would incur costs to relocate. Suffice it to say, after law firm took possession of the premises, numerous disputes arose about many aspects of the tenancy.

The parties were further estranged by the events of June 16, 2002, when unaccompanied representatives of landlord entered the law firm's offices to make repairs or tenant improvements. Landlord admits that while in law firm's offices on that day, a document was copied and the copy removed from the premises. Law firm contends that it was on this occasion that landlord used the need to make repairs as a pretext to gain entry to the premises, and that while inside law

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02769-JL     Document 110-4     Filed 10/17/2007     Page 3 of 14

Not Reported in Cal.Rptr.3d                                                                                    Page 3
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

firm's private offices, landlord pilfered law firm's files, copied confidential documents, and stole and destroyed an original version of the executed lease that had the blank spaces remaining for the amount of rent and the percentage of common area expenses.

Law firm further contends that landlord later "altered" the lease by filling in on a copy those spaces that had been left blank in the originally executed document. Law firm asserts that this alteration of the document was wrongful and unauthorized and that it never agreed to the terms that were later inserted by landlord.

Law firm also contends that when confronted with the altered lease document in connection with a subsequent demand by landlord for payment of rent consistent with that document, law firm then checked its files and confirmed that unbeknownst to it, the originally executed lease had been removed from the file that law firm kept within its offices. But, law firm contends, it had retained a second originally signed lease, with the blank spaces remaining, which, it asserts, is the only agreement it ever made for the rental of the premises.

**\*4** In April 2003, after an exchange of correspondence concerning the ongoing issues between the parties, landlord served on law firm a three-day notice to pay rent or quit.[FN3] The notice was facially defective in that it contained varying amounts of rent asserted to be due. A second, corrected three-day notice was later served, but landlord proceeded in unlawful detainer based on the defective notice by attaching a copy of that document to the verified complaint and by responding to a request for admission confirming the genuineness of the document.

> FN3. We take many of the facts surrounding the three-day notice, and the unlawful detainer proceeding that followed, from our earlier opinion in landlord's appeal from that judgment in *4920 Corporation v. Reynolds Price Casas & Riley, LLP* (H026464, Aug. 30, 2004 [nonpub. opn.] ). We also take judicial notice of that opinion on our own motion. (Evid.Code, § 459.)

After some evidence had been taken in the unlawful detainer trial and the second three-day notice was excluded from evidence based on relevance, law firm moved for judgment under Code of Civil Procedure section 631.8 on account of the deficient three-day notice. That motion was granted, with the trial court stating that its ruling was without prejudice to landlord starting the unlawful detainer process anew based on a correct three-day notice. Judgment for law firm was later entered in the unlawful detainer proceeding, and law firm was subsequently awarded attorney's fees as the prevailing party.

Landlord contended both in the trial court and later on appeal from the adverse unlawful detainer judgment that its pursuit of the proceeding was proper despite the defective three-day notice because it was entitled to estimate the amount of rent due in a commercial setting under Code of Civil Procedure section 1161.1. Landlord also contended on appeal from the unlawful detainer judgment that the trial court should have "deemed" the complaint amended under Code of Civil Procedure section 1173 to allege service on law firm of the second, corrected notice to pay rent or quit.

We rejected both contentions and affirmed the underlying judgment, along with the award of attorney's fees, to law firm. The basis of the affirmance was landlord's failure to have demonstrated error with respect to that judgment.

*2. Procedural Summary*

While landlord's appeal from the unlawful detainer judgment was pending, law firm filed this action against landlord, its principals, and its attorneys in the prior action.[FN4] The first amended complaint includes eleven causes of action, all of which stem from law firm's lease of the premises; its alleged breaches of lease; its alleged trespass, and conversion and destruction of the original lease document as well as alteration of the copy; and its pursuit of the earlier unlawful detainer action based on the defective three-day notice and the alleged altered written lease. The tenth and eleventh causes of action asserted claims for malicious prosecution and abuse of process, respectively.

> FN4. In addition, several other actions other concerning these disputes between the parties have been filed in the superior court.

In response to the first amended complaint, defendants collectively filed a combined demurrer and motion to strike under Code of Civil Procedure section 425.16.[FN5] The claims for malicious prosecution and abuse of process were subject to both

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02769-JL    Document 110-4    Filed 10/17/2007    Page 4 of 14

Not Reported in Cal.Rptr.3d                                                                          Page 4
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

means of attack. The memorandum of points and authorities in support of the motion filed in October 2003 included a request for attorney's fees under the anti-SLAPP statute. Although the request rather vaguely and imprecisely said that "defendants have had to spend somewhat in excess of $22,000 to date to bring on this motion," it erroneously said that this figure was "outlined in the declaration of Christopher Ashworth submitted concurrently [therewith]." The Ashworth declaration submitted with the moving papers contained nothing about the fees incurred or the time spent towards the motion.

> FN5. Two weeks later, defendants also filed an "Answer to Complaint" in which they asserted, with respect to the tenth and eleventh causes of action that these claims were subject to an anti-SLAPP motion under Code of Civil Procedure section 425.16. This answer was not included in the record but in its supplemental briefing, law firm "moved" to augment the record to include it. Augmenting the record requires a formal motion under rule 12 of the California Rules of Court, with which law firm has not complied. More importantly, the answer is not relevant to our analysis because as to the abuse of process claim, it simply reasserted the anti-SLAPP motion that was already on file, maintaining the status quo that was set by the filing of the motion, and waiving no defenses that were not then required to be asserted in view of it. On an anti-SLAPP motion, a defendant is not required to show that the conduct of which he is accused is protected or privileged. Rather, once a defendant shows that the cause of action is covered by the statute, it becomes plaintiff's burden to establish that the alleged acts of defendant are *not* protected. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1058.) Accordingly, we deny law firm's request to augment the record to include the answer.

**\*5** In opposition to the anti-SLAPP motion, law firm did not dispute that the causes of action for malicious prosecution and abuse of process are claims that fall within the coverage of the anti-SLAPP statute, and are therefore subject to a special motion to strike. But, law firm submitted evidence concerning, among other things: 1) landlord's knowledge while pursuing the underlying unlawful detainer action that its three-day notice was deficient; 2) its unreasonableness in doing so in light of that knowledge; 3) landlord's entry into law firm's offices on June 16, 2002; 4) law firm's subsequent discovery that an original of the signed lease that it had maintained in its offices was missing; and 5) Jane Challas having filled in the blanks on the lease sometime after its execution.

Law firm argued that this evidence exposed landlord's scheme to "extort excessive lease payments" and established the probability of its prevailing on both causes of action, thereby defeating defendants' anti-SLAPP motion. Law firm additionally challenged landlord's request for attorney's fees on the basis that the request was unsupported and the fees excessive.

Two days before the December 2003 hearing on the combined demurrer/anti-SLAPP motion, attorney Ashworth (for defendants) filed a brief declaration with his curriculum vitae attached. The declaration, which did not apportion time spent between the demurrer and the anti-SLAPP motion, simply stated that Ashworth had expended 44.5 hours at $365 per hour in connection with the "original SLAPP motion and demurrers." In terms of the tasks performed, Ashworth stated that he had "read more than 100 reported decisions and a number of scholarly articles" in addition to his having read "all of the statutory materials." The declaration further stated: 1) that Ashworth had expended 15 hours in connection with the moving parties' reply; 2) that the aggregate of his time spent toward the motion was "59.9 hours"; and 3) that the fees billed to the "clients"-notwithstanding that Ashworth himself and his law firm are also defendants-aggregated $21,717.50. Ashworth declared these figures to be a "reasonable amount of time and fees" under the circumstances of this case. The declaration was the sum total of evidence in support of the request for fees.

In response, law firm filed an objection to the Ashworth declaration in which it asserted that the declaration was untimely, and that its substance failed to support the fee request. Law firm did not obtain a ruling on this objection.[FN6]

> FN6. The written order on the motion contains no ruling on the objection and the oral transcript of the hearing is not included in the record.

The trial court's written ruling on the anti-SLAPP special motion to strike "stayed" the motion as to the

Case 3:07-cv-02769-JL    Document 110-4    Filed 10/17/2007    Page 5 of 14

Not Reported in Cal.Rptr.3d                                                                      Page 5
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

tenth cause of action for malicious prosecution "pending the resolution of the appeal" by landlord from the unlawful detainer judgment for law firm. The order also granted the motion to strike the eleventh cause of action for abuse of process. In this regard, the court said, "[t]he defendants have made a prima facie showing that the plaintiff's claim arises from acts protected by [Code of Civil Procedure section] 425.16. However, the plaintiff has not provided sufficient evidence to show that it has the probability of prevailing at trial against the defendants." The ruling also awarded defendants $5,475 in attorney's fees, roughly one-fourth of the total requested. The order finally ruled on the demurrers as to other causes of action not pertinent here, stayed the demurrer as to the tenth cause of action for malicious prosecution pending resolution of the appeal from the unlawful detainer judgment, and impliedly overruled the demurrer as to the eleventh cause of action for abuse of process as moot.[FN7]

> FN7. These demurrer rulings are not before us.

**\*6** Law firm filed a written request for statement of decision, to which the trial court did not respond. This appeal follows.

*Analysis*

*1. The Anti-SLAPP Statute*

A SLAPP suit has been described as "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights."(*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2, disapproved on another ground in *Equilon Enterprises v.. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5; see also *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89;*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1126.)

In 1992, the Legislature responded to the "disturbing increase" in SLAPP suits by enacting the anti-SLAPP statute, Code of Civil Procedure section 425.16. (*Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees* (1999) 69 Cal.App.4th 1057, 1063.)The statute reflects the Legislature's express declaration "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."(Code Civ. Proc., § 425.16, subd. (a).) In 1997, the statute was amended to clarify the Legislature's intent that the section "shall be construed broadly." (*Ibid.*;*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 60.)

The statute furnishes a mechanism for quickly identifying and eliminating SLAPP suits-the special motion to strike or "anti-SLAPP" motion. It provides in pertinent part that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."(Code Civ. Proc., § 425.16, subd. (b)(1).)

Resolution of an anti-SLAPP motion "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. The moving defendant's burden is to demonstrate that the acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing." (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67; see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.)

In assessing the first prong of the test-whether the defendant has demonstrated that the action is one arising from protected activity-the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."(Code Civ. Proc., § 425.16, subd. (b)(2); *City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 79;*Navellier v. Sletten, supra,* 29 Cal.4th at pp. 88-89.)Once the defendant demonstrates that the challenged cause of action arises from the exercise of free speech or petition rights, then the burden on the motion shifts to the plaintiff to make a prima facie showing of the probability of its prevailing on the claim.[FN8](*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67;*Navellier v. Sletten, supra,* 29 Cal.4th at p. 88.)At each step of the analysis, the party bearing the burden need only make a prima facie showing, and no more. (*City of Cotati v.*

Case 3:07-cv-02769-JL    Document 110-4    Filed 10/17/2007    Page 6 of 14

Not Reported in Cal.Rptr.3d                                                                                                          Page 6
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

*Cashman, supra,* 29 Cal.4th at p. 76.)

FN8. Law firm makes much of the asserted distinction between "a" probability of prevailing and "the" probability of prevailing. It argues that the trial court erred by applying the latter as the standard on the motion, which, it asserts, is the more stringent, and wrong, evidentiary standard to be applied on the second prong of the anti-SLAPP analysis. We find this distinction between the articles "a" and "the" in this context to be more semantic than meaningful, and in light of the independence with which we conduct our review of an anti-SLAPP ruling, we use these articles here interchangeably, as do many of the cases interpreting Code of Civil Procedure section 425.16 cited in this opinion.

**\*7** In analyzing the second prong of the test-whether the plaintiff has shown a probability of prevailing on the merits of the claim-the court measures the plaintiff's showing against a standard similar to that used in deciding a motion for nonsuit, directed verdict, or summary judgment. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.)In order to overcome the motion, the plaintiff must only have " 'stated and substantiated a legally sufficient claim.'[Citation.]" (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 63.)In so doing, the plaintiff may not rely on the allegations of the complaint, even if verified, but must provide the court with sufficient, admissible evidence that if proved, would support a judgment in plaintiff's favor.FN9(*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906;*ComputerXpress v. Jackson, supra,* 93 Cal.App.4th at p. 1010;*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 654, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5.)

FN9. It is, however, incumbent on the parties to obtain rulings from the trial court on any evidentiary objections, or the objections are otherwise waived on appeal. (*Gallant v. City of Carson* (Apr. 20, 2005, No. B176052 --- Cal.App.4th ---- [2005 WL 905637]; *Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 316-317, fn. 6;*Slauson Partnership v. Ochoa* (2003) 112 Cal.App.4th 1005, 1014, fn. 4.)

In making its determination, the court considers the pleadings, and the evidence submitted by both sides that support the facts upon which the liability or a defense is based. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 60.)On its face, the anti-SLAPP statute "contemplates consideration of the substantive merits of the plaintiff's complaint, as well as all available defenses to it, including, but not limited to constitutional defenses."(*Traditional Cat Ass'n, Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 398.)The burden rests with the plaintiff on the second prong of the analysis to offer evidence that negates defendant's constitutional defenses. (*Wilcox v. Superior Court, supra,* 27 Cal.App.4th 809, 824, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5;*Church of Scientology v. Wollersheim, supra,* 42 Cal.App.4th at p. 658.)

At this juncture, the court does not weigh evidence, or the "credibility or comparative probative strength of competing evidence," but, rather, considers the defendant's opposing evidence to determine if it defeats plaintiff's showing as a matter of law. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821;*Kashian v. Harriman, supra,* 98 Cal.App.4th at p. 906.)Whether a plaintiff has established a prima facie case is a legal, as opposed to factual, question. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.)The motion should be granted if, as a matter of law, the properly pleaded facts do not support a claim for relief, or if the defendant's evidence defeats plaintiff's efforts to establish evidentiary support for the claim. (*Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 821;*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 809.)

An order granting or denying an anti-SLAPP special motion to strike is appealable under Code of Civil Procedure sections 425.16, subdivision (j), and 904.1, subdivision (a)(13). On appeal, we conduct a de novo review of the record to determine "whether the asserted cause of action arises from the defendant's free speech or petition activity, and, if so, whether the plaintiff has shown a probability of prevailing."(*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 894.)Our review is thus independent, and, in deciding whether the trial court's ruling was correct, we are not bound to its reasoning. (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 355.)

*2. Dismissal of the Appeal From the Stay Order*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02769-JL    Document 110-4    Filed 10/17/2007    Page 7 of 14

Not Reported in Cal.Rptr.3d                                                                                                           Page 7
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

**\*8** Law firm specifically said in its notice of appeal that it was appealing from the order staying the motion as to the malicious prosecution claim. While an order granting or denying an anti-SLAPP motion is expressly appealable under Code of Civil Procedure sections 425.16, subdivision (j), and 904.1, subdivision (a)(13), an order "staying" an anti-SLAPP motion is not likewise appealable under these sections, or any other, and the right to appeal is exclusively conferred by statute. (Leone v. Medical Board (2000) 22 Cal.4th 660, 666-668;Melinda K. v. Superior Court (2004) 116 Cal.App.4th 1147, 1152.)

Since no party addressed appealability in its initial briefing, and we are required to take up this threshold issue on our own, (Jennings v. Marralle (1994) 8 Cal.4th 121, 126-127;Chavez v. Carpenter (2001) 91 Cal.App.4th 1433, 1437), we requested supplemental briefing on this and other unbriefed but dispositive issues. It was only in response to this request that any party bothered to inform us that despite the pendency of this appeal, in December 2004, the trial court apparently vacated the stay order and took up the merits of the anti-SLAPP motion as to the malicious prosecution claim, and on February 28, 2005, the court denied the motion, thus mooting the issue in this appeal.[FN10]

> FN10. We take judicial notice of the court's ruling in this regard on our own motion. (Evid.Code, § 459; Deschene v. Pinole Point Steel Co. (1999) 76 Cal.App.4th 33, 37.)Even though this order post-dates the ruling under appeal here, it is appropriate for a reviewing court to take judicial notice of such matters that affect mootness. (Reserve Insurance Co. v. Pisciotta (1982) 30 Cal.3d 800, 813;Old National Financial Services, Inc. v. Seibert (1987) 194 Cal.App.3d 460, 467.)We decline law firm's request in its supplemental briefing to augment the record to include this order as law firm has not complied with rule 12 of the California Rules of Court, which requires a formal motion for record augmentation.

It thus appears that law firm and its counsel maintained this appeal from the stay order while at the same time arguing the merits of the anti-SLAPP motion as to the malicious prosecution claim in the trial court after the stay was lifted. Yet, it remains the duty of appellants and their counsel to apprise a reviewing court of matters affecting mootness and to promptly dismiss an appeal that has become moot to avoid putting the court to the time and expense of reviewing it.[FN11](Guardianship of Melissa W. (2002) 96 Cal .App.4th 1293, 1301;Wax v. Infante (1983) 145 Cal.App.3d 1029, 1031.)Despite our wasted efforts in this regard, since the order staying the anti-SLAPP motion as to the malicious prosecution claim is not appealable, and the issue of the stay has become moot, both of which points the parties now acknowledge, we hereby dismiss the appeal from that order.

> FN11. For future reference, we remind appellant and its counsel in this case that such conduct may warrant sanctions under the appropriate circumstances.

Until the issue was mooted by the trial court having reached the merits of the anti-SLAPP motion as to the malicious prosecution claim, it remained within our discretion, which we exercise only in extraordinary circumstances, to treat this nonappealable aspect of the appeal as a writ in the interests of judicial economy. (Olson v. Cory (1983) 35 Cal.3d 390, 400, 401;Rogers v. Municipal Court (1988) 197 Cal.App.3d 1314, 1317.)Had we done so here, and strictly on the record before us in this appeal, we likely would have observed that the motion to strike the malicious prosecution claim should have been granted.

After defendants met the burden of showing that the claim was covered by the anti-SLAPP statute (Jarrow Formulas, Inc. v. La Marche (2003) 31 Cal.4th 728, 733-741), law firm did not demonstrate a probability of success as to the element of a favorable termination of the underlying case, as a matter of law. This is because the unlawful detainer termination in law firm's favor was on a technical or procedural-as opposed to substantive-ground that did not reflect on law firm's actual innocence.

**\*9** The elements of a cause of action for malicious prosecution are three-fold. In order to prevail, "the plaintiff must establish that the prior underlying action (1) was commenced by or at the direction of the defendant, or the defendant continued to prosecute it after discovering it lacked probable cause, and it was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice."(HMS Capital, Inc. v. Lawyers Title Co. (2004) 118 Cal.App.4th 204, 213, citing Crowley v. Katleman (1994) 8 Cal.4th 666, 676 and Zamos v. Stroud,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02769-JL     Document 110-4     Filed 10/17/2007     Page 8 of 14

Not Reported in Cal.Rptr.3d                                                                                                    Page 8
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

*supra,* 32 Cal.4th at p. 963.)A plaintiff's failure to establish any one element of the tort is dispositive.

The requirement that the malicious prosecution plaintiff prove a favorable termination in the underlying action is grounded in the theory that this sort of disposition tends to reflect the innocence of the accused. A termination is "favorable" for malicious prosecution purposes if it is based on the merits of the action, which is to say that it speaks to the underlying defendant's innocence of the misconduct alleged or lack of fault rather than reflecting a victory on a technical or procedural ground. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341-342(*Casa Herrera* );*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750.)"If the termination does not relate to the merits-reflecting on neither innocence of nor responsibility for the alleged misconduct-the termination is not favorable in the sense it would support a subsequent action for malicious prosecution."(*Lackner v. LaCroix, supra,* 25 Cal.3d at p. 751,* fn. omitted.)

Examples of technical or procedural terminations that will not support malicious prosecution include: 1) a dismissal on statute of limitations grounds (*Lackner v. LaCroix, supra,* 25 Cal.3d at pp. 751-752;*Warren v. Wasserman, Comden & Casselman* (1990) 220 Cal.App.3d 1297, 1303); 2) a dismissal pursuant to settlement (*Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 828-829); 3) a dismissal on the grounds of laches (*Asia Investment Co. v. Borowski* (1982) 133 Cal.App.3d 832, 838-839); 4) a dismissal based on lack of standing to pursue particular claims (*Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1592;*Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 894); and 5) a dismissal for lack of jurisdiction (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 882).

By contrast, examples of terminations that do reflect on the merits and thus are favorable for malicious prosecution purposes include: 1) a grant of summary judgment and sanctions against the plaintiff for pursuing a meritless claim (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1191); 2) a grant of summary judgment for insufficient evidence to establish triable issue of fact (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149-1150); 3) a finding of no violation of duty to the plaintiff as a matter of law (*Ray v. First Federal Bank* (1998) 61 Cal.App.4th 315, 318); and 4) a termination of an action that was meritless based on the absolute bar of the litigation privilege (*Berman v. RCA Auto Corp.* (1986) 177 Cal.App.3d 321, 324-325).

**\*10** And, the California Supreme Court in *Casa Herrera,* recently held that a disposition of a contract action based on the parole evidence rule was indeed a favorable termination that would support a malicious prosecution claim. This is because the rule is one of substantive contract law and it is not merely procedural or evidentiary. The rule necessarily has a substantive effect because it defines the scope and terms of the parties' actual agreement. (*Casa Herrera, supra,* 32 Cal.4th at pp. 343-349.)

In reaching this conclusion, the court analyzed the substantive versus procedural distinction that bears on the issue whether a particular disposition of a lawsuit is "favorable" so as to satisfy this element in a later malicious prosecution action. (*Casa Herrera, supra,* 32 Cal.4th at pp. 343-349.)This is a generally a legal issue for the court to decide, and in doing so it considers the underlying judgment as a whole. (*Id.* at p. 341;*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335;*Sierra Club Foundation v. Graham, supra,* 72 Cal.App.4th at p. 1149; cf. *Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.* (2003) 114 Cal.App.4th 906, 914.)

In announcing the court's ruling on law firm's motion for judgment from the bench in the underlying unlawful detainer case here, the trial judge said that it was without prejudice "to giving a new notice" or to "refiling" and that the ruling was simply on the basis that there was "an inadequate three-day notice [on] which to establish the complaint, at least this complaint."On the record before us, this sort of victory is not one that gives rise to liability for malicious prosecution. (*Casa Herrera, supra,* 32 Cal.4th at pp. 341-342;*Lackner v. LaCroix, supra,* 25 Cal.3d at p. 750.)

Even though Code of Civil Procedure section 1161 sets out the technical requirements for a complaint in unlawful detainer, which include information concerning the contents and service of a three-day notice, and while this element must also be proven at trial, these statutory requirements have nevertheless been described as "procedural" in nature, a characterization with which we agree concerning the three-day notice. (*Levitz Furniture Co. v. Wingtip Communications, Inc.* (2001) 86 Cal.App.4th 1035, 1037.)

Law firm's motion for judgment in the unlawful detainer proceeding having been granted strictly on the basis of a deficient three-day notice as it was, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                                                                Page 9
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

trial court never considered, and the judgment does not reflect on, the merits, or lack thereof, of landlord's allegations concerning delinquent rent, law firm's breaches of the lease, and law firm's consequent forfeiture of the right to possession of the premises-the substantive core of an unlawful detainer proceeding. The substantive merits, therefore, were unrelated to the technical disposition of the action, and, on this record, its termination did not reflect law firm's lack of responsibility for the misconduct or breaches alleged. As a result, the termination was not "favorable" in the sense that it could support law firm's malicious prosecution claim, as a matter of law. Thus, on this record, the anti-SLAPP motion as to the claim likely should have been granted, without regard to the outcome of landlord's then-pending appeal from the judgment, because law firm did not demonstrate the probability of its prevailing on this claim.

### 3. Abuse of Process

**\*11** Law firm contends that the trial court erred by granting the anti-SLAPP motion on its cause of action for abuse of process. Law firm did not dispute below that such a claim falls within the coverage of the anti-SLAPP statute. And, the parties do not argue the matter on appeal. Accordingly, we assume without deciding that the tortious actions alleged to have been taken by defendants in connection with the underlying unlawful detainer proceedings, which actions are the gist of law firm's pleaded claim for abuse of process, are actions taken in furtherance of the right to petition and so are subject to the anti-SLAPP statute. This leads us to the next step in the analysis, which is the determination whether law firm demonstrated a prima facie probability of prevailing on its abuse of process claim in opposition to the anti-SLAPP motion.

The tort of abuse of process is the use of a legal process against another to accomplish a purpose for which the process is not designed. *(Drum v. Bleau, Fox & Associates (2003) 107 Cal.App.4th 1009, 1019*(Drum );*Brown v. Kennard (2001) 94 Cal.App.4th 40, 49*(Brown ).) " '[T]he essence of the tort ... lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice....' [Citations.]" (*Drum, supra, 107 Cal.App.4th at p. 1019.*)The elements of the tort are an ulterior motive, and a willful act in the use of process not proper in the regular conduct of the proceedings. (*Brown, supra, 94 Cal.App.4th at p. 44;Templeton Feed & Grain v. Ralston Purina Co. (1968) 69 Cal.2d 461, 466.*)

One might infer from this general description of the tort's elements that the mere filing or maintenance of a lawsuit for an improper purpose might constitute an abuse of process. But, it is clear that the opposite is true-these activities do not form the basis of such a claim. Instead, such allegations only potentially give rise to the distinct tort of malicious prosecution-for which the separate element of the absence of probable cause must also be pleaded and proven. (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc. (1986) 42 Cal.3d 1157,1169*(Oren ).)

As we observed in *Adams v. Superior Court (1992) 2 Cal.App.4th 521, 530-531,* and as the tort's label implies, abuse of process must entail the actual invocation of judicial process. "Process is action taken pursuant to judicial authority. It is not action taken without reference to the power of the court. Thus, serving upon plaintiff a false notice that a bench warrant had been issued is not process, because in making the false statement defendant took no action pursuant to court authority. [Citation.] [¶ ] Merely obtaining or seeking process is not enough; there must be subsequent abuse, by a misuse of the judicial process for a purpose other than that which it was intended to serve. [Citations.] The gist of the tort is the improper use of the process *after it is issued.*[Citation.]"(*Ibid.*)

**\*12** Here, law firm's specific allegations in support of its abuse of process claim were that the defendants: 1) "willfully and intentionally *filed* the UD Action and *prosecuted* the same to trial knowing that the Verified Complaint ... relied on an improper and facially defective Three Day Notice"; and 2) "willfully and intentionally *filed* the UD Action and *prosecuted* the same to trial knowing that the Verified Complaint ... was irregular on its face and not proper in the regular course of unlawful detainer proceedings because it relied on the Lease ... that [landlord] knew had been materially and unlawfully altered ... subsequent to all parties to the Lease [having] executing it and that the altered Lease ... did not state the agreement of the parties thereto with respect to [law firm's] rental obligation."(Italics added.)

These allegations allege nothing more than the filing and maintenance of an action in bad faith or for an improper purpose, which, as we have noted, fail to state a claim for abuse of process. (*Oren, supra, 42*

Not Reported in Cal.Rptr.3d                                                                                                                    Page 10
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

Cal.3d at p. 1169.)

Law firm further alleged in support of its claim that landlord's "trespass and conversion of an original of the lease executed by the parties was undertaken as part of its plan to *file* its false and unlawful Verified Complaint based upon the materially altered Lease, ..." and that the *filing* of the unlawful detainer complaint "was undertaken for the ulterior purpose and with the intent to impair [law firm's] ability to defend against the allegations of the UD Action, to impair [law firm's] ability to prove the agreed and proper rent due under the Lease, to coerce [law firm] to pay an inequitable sum or sums in settlement of the UD Action appropriate in the absence of the intentionally altered lease, and for the further ulterior purpose of deceiving and misleading the court at the trial of the UD Action."(Italics added.)

These additional allegations, while perhaps adding grist to the mill for purposes of the malicious prosecution claim, do not redeem law firm's insufficient claim for abuse of process. This is because they only repeat and emphasize that what is being alleged is the defendants' *filing and maintenance* of the unlawful detainer action for an improper purpose, which fail to state a claim for abuse of process.

Skirting its pleaded allegations, law firm argues that its claim is not actually based on defendants' filing or prosecution of the unlawful detainer proceeding but it is instead grounded in landlord's "*intentional* reliance on a forged lease, and *intentional* reliance on a defective 3-day notice: *that* is the wrongful use of process."

Law firm relies on Kappel v. Bartlett (1988) 200 Cal.App.3d 1457, 1466(*Kappel* ), in making this contention. In that case, the court concluded that while the institution of a suit-even with improper purpose-does not constitute abuse of process, the knowing execution by the defendants of a false declaration of service to obtain a default judgment would satisfy the necessary element of a " 'wilful act,' i.e., one which is not proper in the regular conduct of the proceeding" to establish a claim for abuse of process.(*Ibid.*) The court offered little analysis in reaching this conclusion. Nevertheless, we observe that in *Kappel,* the false declaration of service was not just filed. It was actually used to secure the default judgment against Kappel, the defendant in the underlying case. This was followed by the application for and the issuance of a writ of execution and levy by the marshal on Kappel's property. (*Kappel, supra,* 200 Cal.App.3d at pp. 1461-1462.)

*13 Consistent with *Kappel* are *Drum,* and *Brown.*In *Drum,* the court held that "the act of levying on a writ of execution at a time when enforcement of the judgment had been stayed, the stay had been announced in open court in defendant's presence, and a minute order had memorialized the stay, established a prima facie case of the 'willful act in the improper use of process' element of the tort."(*Drum, supra,* 107 Cal.App.4th at p. 1019.)In *Brown,* the court determined that "an action for abuse of process may inhere where a wrongful levy is executed on exempt property."(*Brown, supra,* 94 Cal.App.4th at p. 44, fn. omitted.)

In each of these cases, unlike here, process was ultimately used to improperly levy or execute on a judgment obtained. This distinguishes these cases from those like the case at hand, where, in essence, all that is being alleged is that the defendant filed or maintained an action for an improper purpose, which, we repeat, does not state a claim for abuse of process. (*Oren, supra,* 42 Cal.3d at p. 1169.)

This case is likewise distinguished from Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94(*Barquis* ), upon which law firm also relies. In *Barquis,* which preceded the Supreme Court's holding in *Oren,* the high court there found that allegations of a continuous pattern of behavior by a collection agency in deliberately filing its actions in improper and distant venues with form pleadings that masked the erroneous venue choice, with the ulterior motive of impairing the defendants' defenses and with the intent of securing default judgments by virtue of the improper fora, stated a claim for abuse of process that supported the issuance of an injunction. (*Barquis, supra,* 7 Cal.3d at p. 108.)In support of its holding, the court invoked the public policy for "providing an effective injunction remedy" against a "common abuse in the debt collection field," a consideration not present here. (*Id.* at p. 107.)In *Barquis,* it was not the actions themselves but the pattern of improper choice of venue that constituted the abuse of process. And, the widespread filing of actions in the wrong venue is not analogous to simply filing or maintaining an action for an improper purpose-all that is essentially alleged here.

In sum, law firm's allegations in this case fall short of stating an actionable claim for abuse of process. Even if they did state a viable claim, the allegations also plead facts that would subject the claim in any event

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02769-JL    Document 110-4    Filed 10/17/2007    Page 11 of 14

Not Reported in Cal.Rptr.3d                                                                    Page 11
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

to the absolute bar of the "litigation privilege" embodied at Civil Code section 47, subdivision (b), as a matter of law. This is because the actual allegations of the claim, as quoted above, plead facts that amount to no more than communicative acts by the defendants that have a logical relation to the unlawful detainer litigation.

Under Civil Code section 47, "A privileged publication or broadcast is one made: [¶] ... [¶] (b) In any ... judicial proceeding, ..." On its face, the statute's express application to a "publication or broadcast" reflects its genesis in the common law as a defense to the tort of defamation. (Oren, supra, 42 Cal.3d at p. 1163.)But, the actual application of the privilege has been far more broad. It applies to any communication: " '1) made in judicial or quasi-judicial proceedings; 2) by litigants or other participants authorized by law; 3) to achieve the objects of the litigation; and 4) that have some connection or logical relation to the action.' " (Olszewski v. Scripps Health (2003) 30 Cal.4th 798, 830, quoting Silberg v. Anderson (1990) 50 Cal.3d 205, 212.)The privilege applies when communications in a judicial proceeding are characterized as an abuse of process. (Cantu v. Resolution Trust Corp., supra, 4 Cal.App.4th 857, 886; see cases cited by Silberg v. Anderson, supra, 50 Cal.3d at p. 215.)

*14 The purpose of the privilege is to protect free access to the courts without the "threat of, and harassment by, derivative litigation" and to "avoid 'an unending roundelay of litigation' derived from prior litigation."(Drum, supra, 107 Cal.App.4th at pp. 1022-1023;Sacramento Brewing Co. v. Desmond, Miller & Desmond (1999) 75 Cal.App.4th 1082, 1091, citing Silberg v. Anderson, supra, 50 Cal.3d at pp. 213-214.)The privilege is absolute as opposed to qualified because it applies regardless of malice, evil motive, or intent. (Silberg, supra, 50 Cal.3d at pp. 215-216.)It has been held to bar claims for abuse of process and any doubts about application of the privilege to bar an abuse of process claim are resolved in favor of its use. (Pollack v. University of Southern California (2003) 112 Cal.App.4th 1416, 1430, citing Silberg, supra, 50 Cal.3d at p. 212.)

Generally, the privilege applies only to communicative acts, not tortious conduct. (Olszewski, supra, 30 Cal.4th at pp. 830-831.)But it does not just apply to communications made in the course of a judicial proceeding. It also extends to communications made outside the courtroom-where no function of the court or its officers are involved-to achieve the objects of the litigation, and, under certain circumstances, to communications involving the subject matter of the ultimate litigation in anticipation thereof. (Olszewski, supra, 30 Cal.4th at pp. 830-831, citing Albertson v. Raboff (1956) 46 Cal.2d 375, 380-381;Blanchard v.. DirecTV, Inc. (2004) 123 Cal.App.4th 903, 919, 921;Sylmar Air Conditioning v. Pueblo Contracting Services, Inc., supra, 122 Cal.App.4th at p. 1058;Schoendorf v. U.D. Registry, Inc. (2002) 97 Cal.App.4th 227, 242, citing Rubin v. Green (1993) 4 Cal.4th 1187, 1193-1196.)

"[A] prelitigation statement is protected by the litigation privilege of section 47, subdivision (b) when the statement is made in connection with a proposed litigation that is 'contemplated in good faith and under serious consideration. [Citation.]' [Citations .]"Aronson v. Kinsella (1997) 58 Cal.App.4th 254, 262(Aronson ); see Silberg v. Anderson, supra, 50 Cal.3d at p. 212.)This standard is not a test for malice but is instead "addressed to the requirement the statements 'have some connection or logical relation to the action. [Citations.]' " (Aronson, supra, at p. 266.)And, the privilege as applied to prelitigation statements may not be avoided by arguing that the statements were made to coerce a settlement. (Rothman v. Jackson (1996) 49 Cal.App.4th 1134, 1148 [demand letters directed toward settlement of anticipated lawsuit are in furtherance of litigation and are thus protected].)

"More important, 'communications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal' assuming they are logically related to litigation. [Citation.]" (Blanchard v. DirecTV, supra, 123 Cal .App.4th at p. 921;Kashian v. Harriman, supra, 98 Cal.App.4th at p. 920.)And, it is well settled that the privilege applies without regard to "motives, morals, ethics, or intent." (Silberg v. Anderson, supra, 50 Cal.3d at p. 220.)

*15 Returning to law firm's specific allegations, it contends that defendants filed and maintained the unlawful detainer proceeding in reliance on a defective three-day notice and using a fraudulently altered lease, both of which were made part of or attached to the unlawful detainer complaint, and that this was done for improper purposes that included: to impair law firm's ability to defend against the UD action; to impair law firm's ability to prove the actual amount of rent due under the lease; to coerce law firm to pay inequitable sums in settlement; and to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                                                           Page 12
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

deceive and mislead the court at the trial of the UD action.

Law firm contends on appeal that these allegations do not invoke the bar of the litigation privilege because they target defendants' *conduct* as opposed to communications. While the distinction between communicative and noncommunicative conduct is not always clear, the line has been drawn between injury arising from communicative acts, which are privileged, and injury arising from noncommunicative conduct, which is not. (*Rubin v. Green, supra,* 4 Cal.4th at pp. 1195-1196;*Kimmel v. Goland* (1990) 51 Cal.3d 202, 209-211;*Ribas v. Clark* (1985) 38 Cal.3d 355, 364-365.)Making this distinction here, all of law firm's allegations describe communicative acts of defendants in furtherance or as part of the unlawful detainer litigation itself, and are thus privileged. The alleged wrongful conduct by defendants concerns only what was pleaded in or made part of the unlawful detainer complaint, what defendants necessarily attempted or would have attempted to prove at the trial of that proceeding concerning the "altered lease" between the parties, and how they tried or would have tried to limit what law firm itself might be able to prove at trial about the terms of the actual lease agreement.

Not only are pleadings themselves "generally viewed as privileged communications," (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770), but an unlawful detainer complaint is a landlord's communication to the court that a tenant has failed to pay rent or has breached another term of the lease, and as such, its contents are privileged.[FN12]And, the protection of the privilege logically extends to statutory prelitigation notices, such as the three-day notice here that preceded the filing of the unlawful detainer complaint. This is because such a notice is communicative and it has a connection or relationship to anticipated litigation. (*Rubin v. Green, supra,* 4 Cal.4th at pp. 1193-1196;*Drum, supra* 107 Cal.App.4th at p. 1024.)The litigation privilege, then, provides immunity to a landlord serving an eviction notice or filing an unlawful detainer complaint from suit based on those notices or filings, even if the intention is malicious, the factual allegations are known to be false, and the legal theory is untenable under the true facts. (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 220;*Blanchard v. DirecTV, supra,* 123 Cal.App.4th at p. 921;*Pollack v. University of Southern California, supra,* 112 Cal.App .4th at pp. 1429-1431;*Kashian v. Harriman, supra,* 98 Cal.App.4th at p. 920.)Finally, law firm's allegations that defendants' wrongful conduct was designed to affect the proof or the result at the unlawful detainer trial are dependent upon the testimonial use by defendants at trial of the defective three-day notice and "altered" lease. This conduct is plainly communicative and privileged. (*Drum, supra* 107 Cal.App.4th at pp. 1024-1028 and cases cited there; *Pollack v. University of Southern California, supra,* 112 Cal.App.4th at pp. 1430-1431.)

> FN12. The California Supreme Court recently granted review in *Action Apartment Ass'n, Inc. v. City of Santa Monica, previously published at 123 Cal.App.4th 47,* review granted and opinion superseded February 16, 2005, S129448, which presents an issue that is different from but related to the application of the litigation privilege here. That case involves a city ordinance prohibiting a landlord from maliciously taking action to terminate a tenancy, and it presents the following issue: "Is a local ordinance prohibiting a landlord from maliciously taking action to terminate a tenancy 'based on facts which the landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the landlord' preempted by the statewide litigation privilege of Civil Code section 47, subdivision (b), because the ordinance applies to communicative acts?"(*Action Apartment Ass'n, Inc. v. City of Santa Monica,* review granted Feb. 16, 2005, S129448, <http:// appellatecases.courtinfo.ca.gov/search/ mainCaesScreen.cfm?dist=0 & doc- id=347649 & rc=1.)

**\*16** In short, despite law firm's contentions that its abuse of process claim is based on defendants' conduct, all the acts of which it complains are, in essence, communicative in nature and logically related to the unlawful detainer proceeding. Therefore, even if law firm's allegations stated a viable claim for abuse of process, the claim would be barred because the communicative conduct of which law firm complains is absolutely privileged by Civil Code section 47, subdivision (b). None of the authorities cited by law firm establish otherwise.

Because law firm's allegations failed to state a cognizable claim for abuse of process, and because any such claim would be barred in any event by the litigation privilege, law firm did not demonstrate a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-02769-JL    Document 110-4    Filed 10/17/2007    Page 13 of 14

Not Reported in Cal.Rptr.3d                                                                                                   Page 13
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

probability of prevailing on its claim as a matter of law. We accordingly affirm the trial court's order granting defendants' anti-SLAPP motion on the eleventh cause of action for abuse of process.[FN13]

> FN13. In affirming the order, we dismiss law firm's claim that the trial court erred in not issuing a statement of decision while acknowledging that the better practice would have been to do so, particularly in a case like this. However, law firm belatedly filed its request therefor, such that the trial court was under no obligation to issue a statement of decision in connection with its ruling. (Code Civ. Proc., § 632.)

*4. Attorney's Fees*

Finally, law firm contends that the trial court's award of fees in the amount of $5,475 to defendants for their having prevailed on the anti-SLAPP motion as to the abuse of process claim was "excessive and unsupported." This amounts to a claim that the court abused its discretion in making the award-abuse of discretion being the generally applicable standard of review applied to an award of attorney's fees. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1134, 1138(*Ketchum* ).)

Code of Civil Procedure section 425.16, subdivision (c), provides for mandatory fee-shifting that entitles a prevailing defendant to an award of attorney's fees and costs. (*Ketchum, supra,* 24 Cal.4th at p. 1131.)The statute is interpreted to allow awards of fees in an amount the court deems reasonable, the determination of which normally begins with the "lodestar" approach (i.e. number of hours reasonably expended multiplied by the reasonable hourly rate prevailing in the community for similar work).(*Id.* at p. 1136;*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 362;*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785(*Dove Audio* ).) The reasonableness of the fees to be awarded is within the sound discretion of the trial court, to be determined from a consideration of factors such as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel, and the amount of time involved. (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448.)

A defendant who only partially prevails on an anti-SLAPP motion is still entitled to fees for the motion, subject to reduction for those claims as to which the motion was not successful and the degree to which the successful and unsuccessful claims are legally or factually related. (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th 993, 1020.)In other words, apportionment of fees is appropriate for a defendant's partial success on an anti-SLAPP motion, depending on the circumstances. And, fees are only recoverable for the motion to strike itself, not for the entire litigation. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1383.)

**\*17** A prevailing defendant may claim fees and costs either as part of the anti-SLAPP motion itself, or through the filing of a subsequent motion or cost memorandum. (*American Humane Ass'n v. Los Angeles Times Communications* (2001) 92 Cal.App.4th 1095, 1097.)As a party seeking fees and costs, a defendant " 'bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'[Citation.] To that end, the court may require [a] defendant[ ] to produce records sufficient to provide ' "a proper basis for determining how much time was spent on particular claims." ' [Citation.] The court also may properly reduce compensation on account of any failure to maintain appropriate time records. [Citation.]" (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 1020.)

Here, the defendants requested fees as part of their anti-SLAPP motion. But, they provided the court with virtually no information from which it could properly exercise its discretion in making a reasonable award. Based on the utter void of information before the trial court concerning the total amount of time spent by defendants' counsel on the anti-SLAPP motion alone, just what tasks were performed in that total time, and how counsel's time might have been apportioned between the anti-SLAPP motion and the demurrer and between the two causes of action that were subject to the motion (in the event that apportionment is appropriate here), we would be hard pressed to reach the conclusion that the trial court did not abuse its discretion in making the $5,475 attorney's fee award. This figure appears to be simply an arbitrary estimate of one-quarter of the fees sought.

But, we need not speculate as to the reasoning behind the amount of the award. This is because on this record, we must conclude that the trial court abused its discretion by failing to adhere to applicable legal criteria in making the award, which included consideration of evidence concerning the relevant

Not Reported in Cal.Rptr.3d  Page 14
Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

factors appropriate to the determination of a fee award. Although a particular disposition is within the trial court's discretion, the scope of that discretion " ' "always resides in the particular law being applied." ' " (*Thayer v. Wells Fargo Bank, N.A.* (2001) 92 Cal.App.4th 819, 833.) Without any real evidence before it of the factors to be considered in the determination of a reasonable fee, the trial court could not have, and did not, properly exercise its broad discretion in making the fee award in this case. This constitutes abuse of discretion, and we accordingly reverse the award of attorney's fees and remand the issue of attorney's fees to the trial court with directions to vacate the award and redetermine fees for defendants' success on the anti-SLAPP motion as to the abuse of process claim, upon a properly substantiated showing by defendants.[FN14]

> FN14. We decline to deprive defendants of their fees altogether for their failure to have established the basis of an award out of concern for the strong policy of awarding fees to prevailing anti-SLAPP defendants, and the express legislative intent that Code of Civil Procedure section 425.16 is to be "construed broadly." (*Ketchum, supra,* 24 Cal.4th at p. 1131; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1424-1425; Code Civ. Proc., § 425.16, subd. (a).)

The defendants are also entitled to an award of reasonable fees on appeal, (*Dove Audio, supra,* 47 Cal.App.4th at p. 785), likewise to be determined by the trial court upon a properly substantiated showing.

*Disposition*

**\*18** The order granting defendants' anti-SLAPP motion is affirmed. The appeal from the ruling as to the cause of action for malicious prosecution is dismissed as nonappealable and moot. The award of attorney's fees is reversed and the issue remanded to the trial court with directions to vacate the $5,475 award of fees to defendants and redetermine an award upon a properly substantiated request consistent with this opinion, and for a determination of reasonable fees on appeal.

Costs on appeal to defendants/respondents.

WE CONCUR: PREMO and ELIA, JJ.
Cal.App. 6 Dist.,2005.
Reynolds Casas & Riley, LLP v. 4920 Corp.

Not Reported in Cal.Rptr.3d, 2005 WL 995244 (Cal.App. 6 Dist.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.