| | |
|---|---|
| 1 | HARVEY SISKIND LLP |
| 2 | D. PETER HARVEY (SBN 55712) |
|   | e-mail:  pharvey@harveysiskind.com |
| 3 | SETH I. APPEL (SBN 233421) |
|   | e-mail:  sappel@harveysiskind.com |
| 4 | Four Embarcadero Center, 39th Floor |
|   | San Francisco, California  94111 |
| 5 | Telephone:  (415) 354-0100 |
|   | Facsimile:  (415) 391-7124 |
| 6 | |
| 7 | Attorneys for Defendants and Counterclaimants |
|   | SEOK KI KIM and STV ASIA, LTD. |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FRANK NEMIROFSKY,<br><br>                Plaintiff,<br><br>        v.<br><br>SEOK KI KIM; STV ASIA, LTD., a British Virgin Islands corporation; and DOES 1 through 20, inclusive,<br><br>                Defendants. | **Case No.:  C 07-2769 JL**<br><br>**COUNTERCLAIMANTS' BRIEF RE LITIGATION PRIVILEGE IN OPPOSITION TO COUNTERDEFENDANT'S MOTION TO DISMISS COUNTERCLAIM** |
| SEOK KI KIM and STV ASIA, LTD., a British Virgin Islands corporation,<br><br>                Counterclaimants,<br><br>        v.<br><br>FRANK NEMIROFSKY,<br><br>                Counterdefendant. | |

Defendants and Counterclaimants Seok Ki Kim and STV Asia, Ltd. ("Counterclaimants") respectfully submit the following memorandum of points and authorities in response to this Court's Briefing Order, dated February 21, 2008.

In his reply brief concerning his motion to dismiss the Counterclaim, Plaintiff and Counterdefendant Frank Nemirofsky ("Counterdefendant") for the first time raised the issue of litigation privilege. This untimely argument is not supported by any of the cases he cites, all of which are distinguishable. The California Supreme Court made it clear in the *White Lighting* case that a claim based upon an excessive attachment constitutes a cause of action for abuse of process. *White Lighting* is still the law. The litigation privilege, which reflects the public policy against derivative litigation, i.e., "lawsuits about lawsuits," does not bar an abuse of process claim based on an excessive attachment in the same case in which the abuse occurred.

The relevant facts, as alleged in the Counterclaim, are stated in Counterclaimants' opposition brief. [Opp., 2:7-3:22] In short, concurrently with filing his Complaint in this case Counterdefendant filed applications for Temporary Protective Orders (TPOs), claiming that he was entitled to $1,921,788 from the proceeds of a settlement. In his memorandum in support of the TPOs, Counterdefendant reiterated this claim amount four times. Nowhere did he assert an entitlement to more. Yet, knowing that the settlement called for a $4,380,000 payment, he deliberately misled the Court into signing TPOs that froze "all property" of Counterdefendants. Counterdefendant's counsel then wrote Counterclaimants' counsel warning that the TPOs precluded the transfer of "any property" of the Counterclaimants – i.e., the full $4,380,000 – and seeking to extort an unfair settlement. Counterclaimants had no use of any of these funds as long as the TPOs remained in effect. This course of conduct epitomizes abuse of process.

**1.    Counterclaimants' Abuse of Process Claim is Proper Under *White Lighting*.**

In *White Lighting Co. v. Wolfson*, 68 Cal. 2d 336, 347 (1968), the California Supreme Court held that "a claim based on excessive attachment constitutes a cause of action for abuse of process rather than for malicious prosecution and such a claim may be brought in the action in which the attachment issued."

*White Lighting* involved a claim for money. Plaintiff White Lighting sued its former employee, defendant Wolfson, to recover $850. As part of the suit, White Lighting attached Wolfson's 5,000 shares of White Lighting stock (worth $15,000) and his car (worth $4,500), and attempted to attach his bank account ($250). Wolfson cross-claimed for abuse of process. He asserted that, like Nemirofsky in this case, White Lighting knew that the assets it was attaching greatly exceeded the value of its claim. It nonetheless attached them, Wolfson claimed, to "restrain him by extortion from bringing his cross-claims" for breaches of his employment contract. Although the trial court sustained White Lighting's demurrer to Wolfson's abuse of process cross-claim, the California Supreme Court reversed.

The Court reasoned that a favorable outcome on the underlying claim is not a necessary element of an abuse of process claim. *White Lighting,* 68 Cal. 2d at 350. Indeed, in the excessive attachment context, "the attaching creditor typically prevails on his claim, but for a much smaller amount than the value of the property attached." *Id.*

> The attachment defendant should therefore not be forced to wait until the termination of the creditor's primary action to seek damages for the alleged wrongful attachment. "[It] would, indeed, be extraordinary if the attachment defendant was denied the right in the same action, not only to defend against it, but to claim redress for the wrongs inflicted upon him by the attachment plaintiff . . . ."

*Id.*, at 351 (*quoting Waugenheim* v. *Graham,* 39 Cal. 169, 178 (1870)).

*White Lighting* is the most recent California Supreme Court case addressing this issue. The California Court of Appeal, reiterating this rule, has since confirmed that "abuse of process claims typically arise for improper or excessive attachments." *Bidna v. Rosen*, 19 Cal. App. 4th 27, 40 (1993) (*citing White Lighting*).

*White Lighting* makes it clear that an excessive temporary protective order—which is a preliminary step to obtaining an attachment—can be the basis for an abuse of process cause of action. Both the California legislature and the leading California practice guide recognize this rule. *See* Comment to Cal. Code Civ. Proc. §486.050 ("Where an excessive amount of property is subject to the temporary protective order, the plaintiff may be liable for abuse of process.") (*citing White*

*Lighting*); Ahart, *California Practice Guide: Enforcing Judgments and Debts*, §4:373 at 480 (The Rutter Group 2006) ("Plaintiff may be liable for abuse of process if an excessive amount of property is subject to the TPO.").

Counterdefendant's argument is inconsistent with *White Lighting* and the other authorities noted above. It is also inconsistent with the policies underlying the litigation privilege.[1] Counterdefendant relies, inaptly, on cases invoking litigation privilege to bar abuse of process claims, asserted in new actions, often arising out of post-judgment collection efforts such as defective writs of attachment and improper levies resulting therefrom.

**2. Allowing Counterclaimants to Assert an Abuse of Process Counterclaim Here Promotes Judicial Economy and is Consistent With the Policies Underlying the Litigation Privilege.**

The litigation privilege is based in substantial part on the public policy of avoiding multiplicity of actions, *i.e.*, "litigation about litigation." The California Supreme Court made this policy underpinning clear in *Rusheen v. Cohen,* 37 Cal. 4th 1048, 1063 (2006), discussed below. Permitting litigants to re-raise and re-argue, in later-filed litigation, issues which were addressed or open to be addressed in an earlier setting is duplicative and wasteful of judicial resources. By contrast here, permitting Counterclaimants' abuse of process claim to proceed, in the same case in which the abuse occurred, is consistent with the public policy underlying the litigation privilege. Such a result promotes judicial economy by allowing all issues related to the current dispute to be tried in a single litigation.

*White Lighting* expressly recognized this point:

> Our recognition that a cause of action based on wrongful attachment may be asserted by the attachment defendant in the action in which the attachment issued when the alleged procurement or use is independent of the legitimacy of the claim on which the attaching creditor instituted the suit will promote the

---

[1] Counterdefendant argues that "the litigation privilege was not at issue in *White Lighting*." [Reply, 5:21] While the privilege itself was not expressly raised, as noted the California Supreme Court unquestionably grounded its decision in *White* on the public policy underlying the privilege – promoting judicial economy and avoiding multiplicity of actions. *See White Lighting,* 68 Cal.2d at 351 n. 10.

> policy of avoiding circuity and multiplicity of litigation which underlies the cross-claim.

*White Lighting*, 68 Cal. 2d at 351 n. 10.

Counterdefendant cites *Rusheen v. Cohen*, *supra,* and *Brown v. Kennard*, 94 Cal. App. 4th 40 (2001) as the principal authorities supporting his litigation privilege argument. But in each of these cases the barred abuse of process claim was raised *after judgment* in the underlying case and based on post-judgment collection activities. Allowing an abuse of process claim in that context would have led to a second round of litigation – "litigation about litigation" - and a waste of judicial resources. None of Counterdefendant's cases involved an abuse of process claim based on an excessive attachment or temporary protective order.[2]

In *Rusheen*, the court considered the issue of "whether actions taken to *collect a judgment*, such as obtaining a writ of execution and levying on the judgment debtor's property, are protected by the litigation privilege." *Id*., at 1055 (emphasis added). Plaintiff Rusheen alleged that defendant Cohen had obtained a default judgment against him based on a perjured declaration. As a result of the default judgment, Cohen had begun executing on Rusheen's property. After the court vacated the default judgment, Rusheen brought an abuse of process claim based on the issuance of the writ of execution. The California Supreme Court held that the litigation privilege applied. It explained:

> Extending the litigation privilege to postjudgment enforcement activities that are necessarily related to the allegedly wrongful communicative act [here, the perjured declaration] is consistent with public policy considerations. The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being *harassed subsequently by derivative tort actions*, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, *to give finality to judgments,* and *to avoid unending litigation*.

*Id*., at 1063 (emphasis added). The court added: "Rusheen's abuse of process claim—a derivative tort for litigation-related misconduct—would be another round of litigation to decide the same issue

---

[2] While none of Counterdefendant's cases is on point, his repeated reliance on unpublished decisions is particularly troubling. Rule 8.1115(a) of the California Rules of Court provides that "an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or party in any other action."

-4-

1  that had already been decided." *Id*., at 1064. The court was concerned that allowing an abuse of process claim based on post-judgment collection activities "would impermissibly burden, if not inundate, our judicial system." *Id*.

*Brown* involved a set of circumstances similar to *Rusheen*. Kennard sought to enforce a judgment by levying on Brown's deposit account pursuant to a writ of execution. Brown, who was not a party to the earlier litigation that gave rise to the judgment, brought suit for abuse of process on the ground that the writ of execution pertained to exempt funds. The court held that the litigation privilege barred Brown's claim. As in *Rusheen*, the court based its decision on public policy, i.e., "the policy goal of encouraging free access to the courts by discouraging derivative litigation." *Id*., at 46. It concluded: "Here, then, the policy underlying the litigation privilege of encouraging free access to the courts by discouraging derivative litigation simply outweighs the policy of providing Brown with a tort remedy for an allegedly wrongful enforcement of a judgment." *Id*., at 50.

The public policy considerations emphasized by the courts in *Rusheen* and *Brown* do not apply in the context of a writ of attachment or temporary protective order, which are here (and invariably) pre-judgment components of a single, ongoing lawsuit. Indeed, the *Rusheen* court observed that "modern public policy seeks to encourage free access to the courts and finality of judgments by limiting derivative tort claims arising out of litigation-related misconduct and by *favoring sanctions within the original lawsuit*." *Id*., at 1063. That is precisely what Counterclaimants seek here.

The *Rusheen* court noted that its holding "necessarily narrows the scope of the tort of abuse of process in the judgment enforcement context." *Id*., at 1063 (emphasis added).[3] *Rusheen* has no impact, however, on abuse of process claims in the context of a writ of attachment or temporary

---

[3] *See also Rusheen*, 37 Cal. 4th at 1065 ("[W]e agree with those cases that have applied the litigation privilege to limit the availability of the tort of abuse of process in the judgment enforcement context"). Likewise, in *Brown*, the court made clear that its analysis was limited to the "judgment enforcement context." *Brown*, 94 Cal. App. 4th at 47.

COUNTERCLAIMANTS' BRIEF RE LITIGATION PRIVILEGE        Case No.: C 07-2769 JL

protective order occurring within the lawsuit in which the abuse of process claim is raised. In the latter context, *White Lighting* remains the leading authority.[4]

In addition to *Rusheen* and *Brown*, the Court's Briefing Order asks the parties to address *Profile Structures v. Long Beach Bldg. Material Co.*, 181 Cal. App. 3d 437 (1986). In *Profile Structures*, plaintiff Profile sued defendant Long Beach alleging that in an earlier suit, Long Beach had obtained a temporary protective order for $54,704.32 which it then published to two creditors who held a total of $78,704.32 of Profile's funds. Profile alleged that Long Beach did so with the ulterior motive of forcing Profile to pay Long Beach's claim in the underlying case in full. The court held that Profile's subsequently-filed abuse of process claim based on these facts was barred by the litigation privilege.

*Profile Structures* involved paradigmatic "litigation about litigation." Profile sought, in a second lawsuit, to attack Long Beach's publication of the TPO to Profile's creditors in the first lawsuit. The time to have raised this challenge was in the case in which the TPO was secured, not in a second case, filed after the first one was concluded. In the latter context, the court concluded, Long Beach's communication to Profile's creditors was privileged under California Civil Code § 47(b). In

---

[4] As noted above, none of the cases cited by Counterdefendant involves an abuse of process claim based on an excessive attachment or temporary protective order. Many do not even raise or address an abuse of process claim at all. *See Blanchard v. DirecTV, Inc.*, 123 Cal. App.4th 903 (no abuse of process claim); *Kashian v. Harriman,* 98 Cal. App. 4th 892 (2002) (same); *Rothman v. Jackson,* 49 Cal. App. 4th 1134 (1996) (same*); Rubin v. Green,* 4 Cal. 4th 1187 (1993) (same); *Silberg v. Anderson*, 50 Cal. 3d 205 (1990) (same). The others consistently involve abuse of process claims raised in cases filed after judgment in the underlying case and are thus purely derivative "litigation about litigation." *See* discussion of *Brown* and *Rusheen*, in text *supra*, and *see also, O'Keefe v. Kompa,* 84 Cal. App. 45h 130 (2000) (privilege bars subsequent abuse of process claim based on allegedly improper bank levy after judgment); *Pollock v. University of Southern California,* 112 Cal. App. 4th 1416 (2003) (allegedly false statements in declarations filed in earlier case privileged against abuse of process claim in subsequent action); *Ramona Unified School District v. Tsiknas,* 135 Cal. App. 4th 510 (2005) (subsequent lawsuit asserting abuse of process claim based on motion for attorneys' fees in earlier case barred by litigation privilege). Even *Sabul v. Pillsbury Winthrop LLP*, the unpublished case that Counterdefendant cites in support of his unfounded position that *White Lighting* is not controlling, involved an abuse of process claim based on an excessive writ of execution and notice of lien following judgment.

short, the *Profile Structures* court held that a subsequently-filed abuse of process claim, brought in a second litigation, attacking actions undertaken in a first litigation, was barred by privilege.

The result in *Profile Structures* is entirely consistent with *White Lighting* and in no way requires a different result here – indeed, to the contrary. Here, precisely because Counterclaimants' challenge has been timely asserted in the same case in which the abuse occurred, permitting the Counterclaim "will promote the policy of avoiding circuity and multiplicity of litigation which underlies the cross-claim." *White Lighting*, 68 Cal. 2d at 351 n. 10.

**3.    Counterclaimants Exhausted the Non-Litigation Alternatives to Their Abuse of Process Claim.**

In both *Rusheen* and *Brown*, the courts noted that the abuse of process claimant had adequate alternative remedies to bringing an abuse of process claim. *Rusheen*, 37 Cal. 4th at 1064; *Brown*, 94 Cal. App. 4th at 50. For example, in each case the claimant could have moved to quash the writ of execution. Here, by contrast, Counterclaimants tried, unsuccessfully, alternative non-litigation remedies and had no other reasonable recourse.

Upon issuance of the excessive TPOs, Counterclaimants promptly asked Counterdefendant's counsel to stipulate to modify the TPOs to reflect the amount to which Counterdefendant claimed he was entitled, rather than more than double that amount. Counterdefendant never did so. *See, e.g.,* Decl. D. Peter Harvey in Supp. Mot. to Vacate TPOs, filed May 31, 2007, Docket No. 12.

Counterclaimants also applied *ex parte* to vacate or modify the TPOs, seeking the earliest possible hearing date, but the Court was unable to consider Counterclaimants' application for nearly two months.[5] Having exhausted all remedies available, Counterclaimants had no way of freeing their funds—totalling several million dollars—until the TPOs expired.

**4.    The Court Should Disregard Counterdefendant's Litigation Privilege Argument Because it was Raised for the First Time in his Reply Brief.**

For the reasons discussed above, the litigation privilege is inapplicable to Counterclaimants' abuse of process claim. Assuming *arguendo* the privilege applies, however, Counterdefendant

---

[5] Counterclaimants' *ex parte* application and supporting documents, filed on May 31, 2007, are included in the Court's electronic docket as Nos. 6 through 15.

-7-

should have raised it in his motion to dismiss rather than waiting until his reply brief. The leading California practice guide states: "Reply papers should be limited to matters raised in the opposition papers. It is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than presented in the moving papers." Schwarzer, *et al.*, *California Practice Guide: Federal Civil Procedure Before Trial*, §12:107 at 12-46 (The Rutter Group 2007). Because Counterdefendant did not mention the litigation privilege until his reply brief, the Court has discretion to disregard it. *Id*.

Courts regularly disregard arguments raised for the first time in a reply brief. "It is well established in this circuit that courts typically do not consider arguments raised for the first time in a reply brief, as doing so may unfairly deprive defendant of its opportunity to make a meaningful response." *Rose v. Beverly Health & Rehab. Services*, Case No. CV F 06-0067 AWI DLB, 153 Lab. Cas. (CCH) P10,778, 2006 U.S. Dist. LEXIS 91740, at *22 (E.D. Cal. Dec. 7, 2006) (finding waiver). *See*, *e.g.*, *Montgomery v. eTreppid Techs., LLC*, Case No. 3:06-CV-00056-PMP-VPC, 2007 U.S. Dist. LEXIS 20206, at *4 n.3 (D. Nev. Mar. 20, 2007) ("The Court will not consider issues raised for the first time in a reply brief."); *Carver v. Gonzales*, Case No. No. C06-1045MJP, 2006 U.S. Dist. LEXIS 87020 (W.D. Wash. Nov. 30, 2006) ("It is well-established that courts will not consider new arguments raised for the first time in a reply brief."); *In re DDi Corp. Securities Litigation*, 2005 U.S. Dist. LEXIS 28216, at *69 n.19 (C.D. Cal. July 20, 2005) ("The court need not consider this argument because it was raised for the first time in Defendants' reply brief."); *Stewart v. Wachowski*, Case No. CV 03-2873 MMM (VBKx), 2004 U.S. Dist. LEXIS 26608, at *40 (C.D. Cal. Sept. 28, 2004) ("Courts decline to consider arguments that are raised for the first time in reply.").[6]

*Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2007) is particularly relevant to the present case. There, the Ninth Circuit affirmed the district court's denial of defendant's motion to dismiss and motion for reconsideration. It held that the district court did not abuse its discretion by disregarding

---

[6] While the Court has given Counterclaimants an opportunity to brief the litigation privilege, the hearing on Counterdefendant's motion to dismiss has already taken place.

defendant's litigation privilege argument because it was raised for the first time in defendant's reply brief. *Id.*, at 997.

## **CONCLUSION**

Counterdefendant's untimely argument concerning the litigation privilege has no merit. The Court should deny Counterdefendant's motion to dismiss and require Counterdefendant to answer the Counterclaim.

Dated: March 12, 2008                    Respectfully submitted,

                                         HARVEY SISKIND LLP


                                         By: _____/s/_____
                                                     D. Peter Harvey

                                         Attorneys for Defendants and Counterclaimants
                                         SEOK KI KIM and STV ASIA, LTD.