UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK NEMIROFSKY, | No. C 07-2769 JL |
| Plaintiff, | **ORDER GRANTING PLAINTIFF NEMIROFSKY'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM** |
| v. | |
| SEOK KI KIM, et al. | Docket #85 |
| Defendants. | |

### Introduction

Plaintiff Frank Nemirofsky's motion to dismiss Defendant Seok Ki Kim's abuse of process counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) came on for hearing. Robyn Callaghan of Winston & Strawn LLP appeared on behalf of Plaintiff Frank Nemirofsky. D. Peter Harvey of Harvey Siskind LLP appeared on behalf of Defendant Seok Ki Kim.

IT IS HEREBY ORDERED that Nemirofsky's motion to dismiss for failure to state a claim is granted without leave to amend.

### Factual and Procedural Background

Seok Ki Kim ("Kim") is the founder and owner of STV Asia. On March 2, 2006, STV Asia filed a lawsuit for patent infringement in the United States District Court for the

1  Northern District of California (Case No. C 06 1664 JCS) against PRN Corporation (PRN)
2  and other entities involved in the alleged infringement (PRN Litigation).
3        Frank Nemirofsky ("Nemirofsky") assisted STV Asia with the PRN Litigation.  In
4  return, Kim and Nemirofsky agreed that the latter would receive a percentage of STV Asia's
5  net proceeds derived from any judgment or settlement.  The PRN Litigation was settled in
6  mediation.  The amount of the settlement was confidential.
7        Nemirofsky and Kim disagree over the percentage of the litigation proceeds which
8  Nemirofsky is entitled to receive.  STV alleges that its agreement with Nemirofsky was for
9  15% of STV's net proceeds.  Nemirofsky alleges that the original agreement for 15% was
10  subsequently modified to 50% of the proceeds.
11        On May 16, 2007, Nemirofsky filed a Complaint against Kim and STV Asia
12  ("Defendants") in the San Francisco Superior Court (Case No. CGC 07-463428).
13  Nemirofsky alleges, among other things, breach of contract.  He contends he is entitled to
14  50%, not 15%, of the proceeds of the STV-PRN settlement.  Also, on May 16, 2007,
15  Nemirofsky filed ex parte applications for a right to attach order and writ of attachment
16  against Kim and STV.  Nemirofsky submitted proposed orders along with his ex parte
17  applications.  The proposed orders prohibited Squire, Sanders, & Dempsey LLP ("SSD"),
18  which holds money in trust for STV Asia, from transferring "[a]ny property of the
19  Defendant."
20        On May 16, 2007, the Superior Court issued temporary protective orders (TPOs)
21  based on Nemirofsky's ex parte applications, using his proposed language.  Thus,
22  according to the TPOs, SSD cannot transfer any money to defendants.  The Defendants
23  allege that the amount frozen by the TPO is more than double the entire amount
24  Nemirofsky claims he is entitled to receive from the STV-PRN settlement.
25        Defendants filed a counterclaim for abuse of process.  They allege that the TPOs
26  are excessive and are the result of deliberate action intended to coerce a favorable
27  settlement in the breach of contract suit in Superior Court (Case No. CGC 07-463428).
28

Subsequently, Nemirofsky filed a motion to dismiss the counterclaim. Nemirofsky for the first time in his Reply brief in support of the motion, raised the litigation privilege as an affirmative defense to Defendants' abuse of process counterclaim. Because the litigation privilege defense was not raised until Nemirofsky's Reply, Defendants obviously did not brief the issue in their Opposition. This Court issued a Briefing Order to the parties on February 21, 2008. STV was granted twenty days to respond to the litigation privilege defense. Nemirofsky was given fourteen days, from service of STV's response, to submit its own response. The matter was then deemed submitted.

## Legal Analysis

### I. Standard for Dismissal under Federal Rule of Civil Procedure 12(b)(6)

Federal courts are reluctant to grant a motion to dismiss for failure to state a claim. *Gilligan v. Jamco. Develop. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997). The complaint must be construed in the light most favorable to the nonmoving party and need only give the defendant notice of a claim and the grounds upon which it rests. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *see also Bell. Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

The dismissal of a complaint for failure to state a claim is appropriate only when the plaintiff can prove no set of facts supporting relief. *Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2004); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003). A motion to dismiss for failure to state a claim is appropriate only in certain, limited situations, such as when an affirmative defense or other bar to relief is apparent from the face of the complaint. *See Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency. *Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003); *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962).

## II. Defendants' Abuse of Process Claim and the Litigation Privilege

The litigation privilege, California Civil Code Section 47(b), provides absolute immunity from liability where a party's "communication" falls within the privilege. The threshold issue in determining whether the privilege applies is "whether the injury resulted from communicative acts or noncommunicative conduct." *Brown v. Kennard*, 94 Cal. App. 4th 40, 45 (2001). The privilege "applies only to torts arising from communicative acts; it does not protect purely noncommunicative tortious conduct." *Id.* It applies to all torts except malicious prosecution. *Rusheen v. Cohen*, 37 Cal.4th 1048, 1057 (2006). If the acts meet the "communicative" threshold, then four additional conditions must be met for the privilege to apply.

(1) The publication was made in a judicial proceeding;
(2) It had some connection or logical relation to the action;
(3) It was made to achieve the objects of the litigation; and
(4) The publication involved litigants or other participants authorized by law.
*Id.*

This Court's analysis begins with the threshold issue of whether Nemirofsky's acts giving rise to Defendants' abuse of process counterclaim were "communicative."

### a. The Act was Communicative

The California Supreme Court has held that "if the gravamen of the action is a communicative act, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct, including acts necessary to enforce a judgment." *Rusheen,* 37 Cal. 4th at 1065. "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action." *Id.* at 1058.

Defendants' abuse of process claim is based on Nemirofsky's use of TPOs to attach an allegedly excessive amount of funds from the PRN Litigation settlement. The threshold issue is whether the "gravamen" of Defendants' claim is communicative. In *Brown v. Kennard*, Brown sued for abuse of process after Kennard enforced a money judgment by levying on Brown's deposit account pursuant to a writ of execution. 94 Cal. App. 4th at 42-

43. Brown alleged that Kennard abused the process by "causing a wrongful writ of execution to be levied on 'categorically exempt funds' *i.e.*, Social Security retirement benefits and personal retirement benefits." Brown also argued that Kennard refused to release the levy after Brown notified Kennard of the exempt status of the attached funds. *Id.* at 43. Kennard demurred, claiming that the issuance of the writ was privileged and that the communicative act of causing the writ to be issued occurred during a judicial proceeding (under Cal. Civ. Code. § 47(b)). *Id.* at 44. Brown unsuccessfully tried to distinguish between *applying* for a writ (communicative) and the wrongful levy *effected* by the application of the writ (noncommunicative). *Id.* at 50. The court found that it was a distinction without a difference. It held:

> [T]he act of applying for a writ is privileged. The privilege extends to torts arising from the privileged statement or publication. As such, not only does the privilege protect the application for the writ of execution, it also extends to the act of carrying out the directive of the writ. To hold otherwise would effectively strip the litigation privilege of its purpose.

*Id.*

After *Brown* extended the litigation privilege to related noncommunicative conduct a split developed in the California appellate courts. *Brown* was decided in the third appellate district. The second appellate district in *Drum v. Bleau, Fox & Associates*, 107 Cal. App. 4th 1009 (2003) reached a different conclusion. *Drum* held that wrongfully *levying* on property pursuant to a writ of execution is NOT subject to the litigation privilege. The court's holding in *Drum* was subsequently disapproved, in part, and the scope of the privilege delineated by the California Supreme Court in *Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006).

In *Rusheen*, the court held that "if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct." This includes acts necessary to enforce the judgment and carry out the directive of the writ. *Id.* at 1065. The abuse of process claim in *Rusheen* was premised on the communicative act of filing allegedly false declarations of service to obtain

United States District Court
For the Northern District of California

1  a default judgment. Consequently, post-judgment enforcement efforts, including the
2  application for writ of execution and act of levying on property, were covered by the
3  litigation privilege. *Id.* at 1062-1063. The process of enforcing money judgments was
4  related to communicative conduct. *Id.* at 1062.
5       In the case at bar, the complained-of conduct was the use of a TPO to attach an
6  allegedly excessive amount of Defendants' funds (the full amount of the PRN settlement).
7  The writ of attachment and TPO were used to secure the funds Defendant received from
8  the PRN litigation settlement. There is not a meaningful distinction between the use of a
9  writ, or other process, to enforce a judgment and the use of such process to preserve funds
10 for a later judgment. This is especially true where, as here, the dispute is only over the
11 *amount* of the PRN litigation settlement money to which Nemirofsky is entitled.
12      The Court finds that the filing of the TPO in the case at bar was communicative
13 action, and that the relevant case law, as articulated in *Brown* and *Rusheen*, demonstrates
14 that any conduct that results from communicative action is also necessarily covered.
15 Satisfied that this threshold requirement has been met, the Court now turns to the elements
16 of the litigation privilege.
17      **b. Communication was a Publication Made in a Judicial Proceeding**
18      The litigation privilege is broadly applied to protect most publications within lawsuits,
19 as long as there is some connection between the lawsuit and the publication. *Adams v.*
20 *Superior Court*, 2 Cal. App. 4th 521, 529 (1992). Any doubt whether the privilege applies is
21 resolved in favor of applying it. *Id.* Temporary Protective Orders have been considered
22 publications protected by the privilege. *Profile Structures, Inc. v. Long Beach Bldg. Material*
23 *Co.,* 181 Cal. App. 3d 437, 443 (1986). Writs have also been considered publications in a
24 judicial proceeding within the meaning of the privilege. *Brown*, 94 Cal. App. 4th at 49
25 (enforcement proceedings are an extension of the judicial process and related to the
26 realization of a litigation objective).
27      Defendants' counterclaim arises from Nemirofsky's use of a TPO to secure funds
28

from the PRN litigation settlement so that they would remain available to satisfy a judgment in the underlying breach of contract litigation between the parties. TPOs and writs are considered publications in a judicial proceeding within the context of the litigation privilege. This element is satisfied.

### c. The Communication Had a Connection or Logical Relation to the Action.

The TPOs were used to preserve the PRN Litigation settlement proceeds. "The publication need only have 'some connection or relation to the proceedings.'" *Profile*, 181 Cal. App. 3d at 442-443. Since TPOs are considered communications under the privilege, their use for this purpose is clearly related to Nemirofsky's breach of contract claim.

### d. The Communication was Made to Achieve the Objects of the Litigation

The object of Nemirofsky's breach of contract claim is to obtain the percentage of the PRN Litigation settlement money he claims he is owed. "The privilege is denied to any participant in legal proceedings only when the matter is so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety." *Id.* at 443. Using a TPO to make sure that the settlement money is still there pending the final outcome of the litigation is plainly relevant to the object of the litigation.

### e. Communication Involved Litigants or Other Participants

Lastly, in order for the litigation privilege to apply, the "publication" must involve litigants or "other participants authorized by law." *Rusheen*, 37 Cal.4th at 1057. The communicative act of filing the TPO and the related conduct (enforcement) were brought against the Defendants in the underlying breach of contract litigation. This element is satisfied.

### III. Counterclaimants' Arguments Presented After Briefing Order

Defendants rely heavily on *White Lighting Co. v. Wolfson*, 68 Cal. 2d 336 (1968) to support their abuse of process counterclaim. In *White Lighting*, Plaintiff White Lighting sued its former employee, Wolfson, to recover $850. *Id.* at 341. As part of the suit, White Lighting attached Wolfson's 5,000 shares of White Lighting stock, (allegedly worth $15,000) and his 1963 Porsche automobile (allegedly worth $4,500). *Id.* at 347. It also attempted to attach Wolfson's bank account ($ 250) and threatened Wolfson that it would garnish his

wages (allegedly in excess of $ 200 per week). *Id.* White Lighting knew that the assets which had been attached bore no relation to the sum of White's claim against Wolfson. *Id.* Wolfson cross-complained for abuse of process, alleging that White Lighting knew the assets it was attaching greatly exceeded the value of its claim and was doing so in order to "restrain him by extortion from bringing his cross-claims." *Id.*

The California Supreme Court found that Wolfson had a claim for abuse of process based on the excessive attachment. *Id.* Defendants, like White Lighting, allege that an excessive attachment constituted the abuse of process. However, *White Lighting* is distinguishable. The litigation privilege was not raised as a defense to the abuse of process claim in *White Lighting*. Subsequently, the California Supreme Court in *Rusheen* clearly established that the litigation privilege is a defense to an abuse of process claim.

Defendants also argue that its abuse of process claim is consistent with the public policy underlying the litigation privilege because the abuse of process counterclaim "is a sanction within the original litigation." In *Rusheen*, the court stated "modern public policy seeks to encourage free access to the courts and finality of judgments by limiting derivative tort claims arising out of litigation-related misconduct and by *favoring sanctions within the original lawsuit*." 37 Cal. 4th at 1063. The litigation-related misconduct alleged by Defendants which gave rise to their abuse of process counterclaim stems from the allegedly excessive amount of the TPO. The abuse of process claim is a *counterclaim*. It is not a sanction within the original lawsuit. It is "derivative" litigation.

Additionally, Defendants assert that *Rusheen* is not applicable to the case at bar because *Rusheen* involved *post-judgment* collection activities. This is not a meaningful distinction. "Moreover, that these actions [efforts to secure payment in law suit] occurred after trial (rather than before or during trial, as in the vast majority of Civ. Code, § 47 cases) is not significant. Numerous cases apply the privilege to pretrial conduct, some even going so far as to apply it to precomplaint activities." *O'Keefe v. Kompa*, 84 Cal. App. 4th 130, 134 (2000). The timing of the attachment or actions giving rise to the abuse of process claim is immaterial.

### IV. Timeliness of Nemirofsky's Assertion of the Litigation Privilege

Nemirofsky asserted in his Reply that the Defendants' counterclaim for abuse of process was barred by the litigation privilege. This was the first time Nemirofsky raised this defense. If a plaintiff's claim in federal court is based on substantive state law grounds, federal procedural law and the state substantive law govern affirmative defenses. 11 James WM. Moore, Allan D. Vestal, Philip B. Kurland, *Moore's Manual - - Federal Practice and Procedure* § 11.53 2008)(citing *Palmer v. Hoffman*, 318 U.S. 109, 117 (1943)). Under the federal rules, "a party shall set forth affirmatively all affirmative defenses or avoidances." Fed. R. Civ. P. 8(c).

The litigation privilege constitutes an avoidance under California law. The privilege, under subsection (b), provides absolute immunity from liability where a party's "communication" falls within the privilege and is statutorily based. Cal. Civ. Code § 47(b). Statutory immunity is not an enumerated affirmative defense under Fed. R. Civ. Proc. 8(c) but it is considered an "avoidance." Moore, *supra* at § 9.10. An avoidance is "any matter asserted by the defense that effectively precludes the pleader's ability to recover on the claim." *Id.* The litigation privilege, if it applies, would preclude recovery on the abuse of process counterclaim. Therefore, the same procedure applies as for an affirmative defense.

Affirmative defenses must be raised in a party's initial responsive pleading. *Id.*; Fed. R. Civ. Proc. 8(c). Failure to raise them can amount to waive. Moore, *supra* at § 9.10. However, in some circumstances affirmative defenses may also be raised in a pre-answer motion. *Id.* The litigation privilege may be raised by demurrer (the state law equivalent of a 12(b)(6) motion) where the grounds for asserting the privilege appear on the face of the complaint. *Irwin v. Newby*, 102 Cal. App. 110 (1929). The facts alleged in Defendants' counterclaim reveal the availability of the privilege to Nemirofsky upon motion. Consequently, raising the privilege in a 12(b)(6) motion to dismiss was justifiable.

However, Nemirofsky did not raise the litigation privilege defense in its motion. The privilege was not asserted until his Reply to the Defendants' Opposition to the motion. Reply papers should only address issues raised in the moving papers. It is improper to

1  introduce new facts or a different legal argument in the reply brief. *Lujan v. National*
2  *Wildlife Fed'n*, 497 US 871, 894-895 (1990); 4 Kendall et al., *Matthew Bender Practice*
3  *Guide: Federal Pretrial Civil Procedure in Cal.*, § 26.50 (2007).  Consequently, Nemirofsky
4  may not be able to avail himself of the litigation privilege at this stage of the litigation.
5        Defendants acknowledge that this Court has discretion to consider the litigation
6  privilege, raised for the first time in Nemirofsky's Reply.  The general purpose behind the
7  prohibition on raising new arguments in a Reply is to prevent surprise, and any resulting
8  prejudice, to the other side.  "The requirement of pleading affirmative defenses and
9  avoidances is to prevent surprise to the opposition and to give the opposition an
10 opportunity to respond."  Moore, *supra* at § 9.10 (discussing the general policy requiring
11 that a party plead affirmative defenses and avoidances in its initial responsive pleading);
12 *see also Hargett v. Valley Fed'l Sav. Bank*, 60 F.3d 754, 763 (11th Cir. 1995).  The
13 reasoning behind this requirement applies equally in the context of pre-answer motions as
14 well as a party's initial responsive pleading.  This Court provided an opportunity for both
15 sides to brief the litigation privilege issue for the Court.  Both sides timely submitted briefs.
16 The Court carefully considered each brief.  Consequently, no prejudice resulted from the
17 "lateness" of Nemirofsky's litigation privilege argument.
18       As discussed above, the litigation privilege bars Defendants' abuse of process
19 counterclaim.  Denying Nemirofsky' 12(b)(6) motion on the basis that the litigation privilege
20 was not raised as a defense until the Reply is not in the interest of judicial economy.  The
21 defense could still be asserted in Nemirofsky's answer or in a summary judgment motion.

**Conclusion and Order**

23 Plaintiff Nemirofsky's motion to dismiss for failure to state a claim upon which relief
24 can be based is hereby granted.  The litigation privilege is applicable to, and bars,
25 Defendants' abuse of process counterclaim.  The basis for the counterclaim was
26 Nemirofsky's use of a TPO and writ of attachment.  The use of such process is considered
27 communicative conduct within the privilege, and subject to its protection.  Defendants could
28 not allege any additional facts consistent with the stated basis for the counterclaim that

would entitle them to relief. The litigation privilege is a complete bar to Defendants' counterclaim; therefore, the motion to dismiss is granted without leave to amend.

IT IS SO ORDERED.

Dated: April 22, 2008

_____
James Larson
Chief Magistrate Judge